```
1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
2                        SOUTHERN DIVISION

3
   UNITED STATES OF AMERICA,     )
4                                )
            Plaintiff,           )
5                                ) Case Number: 8:19-cr-0603-PX
            vs.                  )
6                                ) Day 1 - Voir Dire
   JOSE DAVID NAVARRO-CERVELLON, )
7                                )
            Defendant.           )
8
                  TRANSCRIPT OF PROCEEDINGS - JURY TRIAL
9                  BEFORE THE HONORABLE PAULA XINIS
                     UNITED STATES DISTRICT JUDGE
10                MONDAY, JULY 11, 2022; 9:30 A.M.
                        GREENBELT, MARYLAND
11
                    A P P E A R A N C E S
12
   FOR THE PLAINTIFF:
13
        OFFICE OF THE UNITED STATES ATTORNEY
14           BY:  WILLIAM DAVIS MOOMAU, ESQUIRE
             6500 CHERRYWOOD LANE, SUITE 200
15           GREENBELT, MARYLAND 20770
             (301) 344-0105
16
             BY:  LEAH  BLOM GROSSI, ESQUIRE
17           6406 IVY LANE, SUITE 800
             GREENBELT, MARYLAND 20770
18           (301) 344-4235

19
   ALSO PRESENT: Special Agent Karen Cody - FBI
20             Jose Lopez - Certified Spanish Interpreter
               Paul Sadur - Certified Spanish Interpreter
21
        ***Proceedings Recorded by Mechanical Stenography***
22      Transcript Produced By Computer-Aided Transcription

23  _____
                MARLENE KERR, RPR, RMR, CRR, FCRR
24              FEDERAL OFFICIAL COURT REPORTER
                 6500 CHERRYWOOD LANE, STE 200
25                GREENBELT, MARYLAND 20770
                        (301)344-3499
```

1                        A P P E A R A N C E S
                               (continued)

2

3    FOR THE DEFENDANT:

4        DAVIS and DAVIS
                BY:  CHRISTOPHER MICHAEL DAVIS, ESQUIRE
5               1350 CONNECTICUT AVENUE, NW, SUITE 202
                WASHINGTON, DC 20036
                (202) 234-7300

6

7        ANTHONY D. MARTIN, P.C.
                BY:  ANTHONY DOUGLAS MARTIN, ESQUIRE
                7474 GREENWAY CENTER DRIVE, SUITE 150
8               GREENBELT, MARYLAND 20770
                (301) 220-3700

9

10   ALSO PRESENT:  Matilda Farren - Certified Interpreter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2        (Call to Order of the Court.)
 3             THE COURTROOM DEPUTY:  May I have your attention,
 4    please.
 5        The United States District Court for the District of
 6    Maryland is now in session, the Honorable Paula Xinis
 7    presiding.
 8             THE COURT:  Good morning, everybody.
 9        (Counsel reply, "Good morning, Your Honor.")
10             THE COURT:  You all can have a seat.
11        All right.  Would the government call the case.
12             MR. MOOMAU:  May it please the Court.  The government
13    calls the case of United States of America vs. Jose David
14    Navarro-Cervellon, Criminal Case No. PX-19-603.  The matter
15    comes on this morning for a jury selection and then trial by
16    jury.
17        Good morning, Your Honor.  William Moomau and Leah Grossi
18    on behalf of the United States.  Also at counsel table is FBI
19    Special Agent Karen Cody and Postal Inspector Adam Scheps.
20             THE COURT:  Okay.  Good morning.
21             MR. MARTIN:  Good morning, Your Honor.  Anthony
22    Martin and Chris Davis present on behalf of Mr. Jose David
23    Navarro who is present in the courtroom.
24             THE COURT:  Okay.  Good morning.
25        And let's swear in the certified court interpreters.
```

1          MR. DAVIS:  Your Honor, we're having a problem with

2     the earphone.  I'm trying to figure it out.  It's not working.

3          THE COURT:  All right.  Let Mr. Ulander give you a

4     hand.  There's always an IT issue.  No matter how many times we

5     check it, it's just the IT universe at work.  They'd like to

6     make sure we really want to do this today.

7          (Brief pause.)

8          THE COURT:  All right, great.

9     Okay.  Could we swear in the court interpreters then.

10          THE COURTROOM DEPUTY:  Please raise your right hand.

11          (Interpreters complied.)

12          THE COURTROOM DEPUTY:  You do solemnly swear AND

13     affirm under the penalties of perjury that you will justly,

14     truly, fairly, and impartially act as an interpreter in the

15     case now before the Court?

16          INTERPRETER LOPEZ:  I do.  Jose Lopez, interpreter

17     certified by the Administrative Office of the United States

18     Courts.

19          INTERPRETER SADUR:  I do.  Paul Sadur, certified

20     interpreter also.

21          THE COURT:  Okay.  Thank you so much, gentlemen, for

22     joining us today.  And I know that we are also joined by

23     Matilda Farren for the defense.  Good morning and thank you for

24     joining us.

25          MS. FARREN:  Good morning, Your Honor.

1          THE COURT:  Okay.  I understand that we have a --

2          INTERPRETER LOPEZ:  I'm sorry, Your Honor.  The

3    defendant is indicating again that he is having trouble hearing

4    once again.

5          THE COURT:  All right, let's get that fixed.

6        (Brief pause.)

7          INTERPRETER LOPEZ:  Once again, we're ready, Your

8    Honor.

9          THE COURT:  Okay.  Are we good?

10          INTERPRETER LOPEZ:  Yes, Your Honor.

11          THE COURT:  Okay.  Mr. Cervellon, if at any point you

12    cannot hear -- or Mr. Navarro, I should say, at any point you

13    can't hear, you just raise your hand so we know, okay, if the

14    equipment is not working.  Is the equipment not working right

15    now, or are you good?

16          INTERPRETER LOPEZ:  It's good.

17          THE COURT:  Okay, great.  Thank you.

18        All right, Counsel, are there any preliminary matters?

19          MR. MOOMAU:  Your Honor, we're a little early for

20    this, but we do have two case agents at the table.

21          THE COURT:  Okay.

22          MR. MOOMAU:  One of them might be testifying during

23    the trial or will be testifying during the trial.  I spoke to

24    Mr. Davis about that, about him being able to be here during

25    the trial and jury selection.  He did not object to that.

1          THE COURT:  Okay.

2          MR. DAVIS:  I didn't object but I only thought one

3    case agent was going to be at counsel table.

4          THE COURT:  Yeah, I'm not sure why we have two.

5    Typically there's just one that is at counsel table.

6          MR. DAVIS:  I must have misunderstood, Mr. Moomau.  I

7    thought that one was going to be at counsel table.

8          MR. MOOMAU:  Whatever you want, Your Honor.  We can

9    just have one sitting at counsel table.

10          THE COURT:  Yeah, I mean, customarily there's one.

11    The case agent is the case agent.  I understand why the

12    government needs them at counsel table, and there is usually an

13    exception for the rule on witnesses, but I don't, I don't see

14    why we need two.

15          MR. MOOMAU:  Okay.

16          THE COURT:  Yeah, so if you'd make your choice in

17    that regard.

18       Let me ask the next question.  The witness list that I

19    have here, is that the complete witness list?  Mr. Davis, do

20    you have any names to add?

21          MR. DAVIS:  I don't have any names to add, but there

22    is one name that may come up during the case that isn't on the

23    list, and that is Hector Moreno.

24          THE COURT:  Hector?

25          MR. DAVIS:  Yes.  Last name Moreno, M-o-r-e-n-o.

1          THE COURT:  Moreno.  Okay.  All right, well, then I

2     will add to the other names.

3          And then it appears as if this is organized quite nicely.

4     Thank you.  So I'll just -- for the names that are under Prince

5     George's County Police Department, I'll say the following are

6     from Prince George's County Police Department, name, read off

7     the name and so on, and then we'll get to others.

8          Okay.  All right, great.  That's very helpful.

9          I believe we have a jury pool ready to go.  I know

10     Mr. Ulander talked to you about this, so I just want to put it

11     on the record that we're going to try to ascertain after the

12     first round of voir dire questioning while the jurors are still

13     down in the jury room how many individuals we have who note

14     that they are not vaccinated and where they fall in the lineup

15     so that you all can make a decision as to whether I can just

16     release them.  If there are, you know, few enough, I can just

17     let them go; or do you wish to have individual follow-up voir

18     dire.

19          So we can't know that until we ask all the questions and

20     collect the questionnaires, but jury knows that we're

21     interested in that information.  So they will get it to us as

22     quickly as possible.

23          All right.  Anything else before we go live?

24          MR. DAVIS:  Nothing from Mr. Navarro, Your Honor.

25          THE COURT:  Okay.  All right, great.

1          Oh, you know what, I have one question for you all,

2     actually, before we do this.  Have you all had the opportunity

3     to see the voir dire panel?  And do you wish -- if not, do you

4     wish to do that?  So the only way we can make that available to

5     you is you go downstairs.  You lay your eyes on the panel.

6          Likewise, when -- I believe we can do this.  We have done

7     this.  Let me confirm that IT is prepared to do this.  When it

8     is time to introduce you all, that there is actually a camera

9     on you so that the jury venire can see you.  Are we able to do

10    that?  Okay.  All right, we can do that if you step to the

11    podium.  So do be sure when your name is called to step to the

12    podium.  We're not going to be able to do that for Mr. Navarro,

13    but, in any event, I think we'll be okay in that regard.  Okay?

14              MR. DAVIS:  Mr. Martin and I just discussed amongst

15    ourselves.  We do not need to go down and see the panel.

16              THE COURT:  Okay.  You have enough demographic

17    information?

18              MR. DAVIS:  We can do it individually as they come

19    up.

20              THE COURT:  Okay.  All right, great.

21         All right.  So with that, I think we're ready.

22         (Brief pause.)

23              THE COURTROOM DEPUTY:  Good morning, Ms. Thomas.  Can

24    you hear me all right?

25              MS. THOMAS:  I can hear you.  Good morning,

1    Mr. Ulander.  Good morning, Your Honor.

2                THE COURT:  Good morning.

3                THE COURTROOM DEPUTY:  The matter now pending before

4    the Court is Criminal Action No. PX-19-0603, the United States

5    of America vs. Jose David Navarro-Cervellon.

6        Members of the petit jury, as I call your juror number,

7    please stand, vocally acknowledge your presence, please be

8    seated.  And then, Ms. Thomas, if you could vocally acknowledge

9    their presence.

10        Juror number five.

11                MS. THOMAS:  Present.

12                THE COURTROOM DEPUTY:  Juror number nine.

13                MS. THOMAS:  Present.

14                THE COURTROOM DEPUTY:  Juror number 11.

15                MS. THOMAS:  Present.

16                THE COURTROOM DEPUTY:  Juror number 14.

17                MS. THOMAS:  Present.

18                THE COURTROOM DEPUTY:  Juror number 15.

19                MS. THOMAS:  Present.

20                THE COURTROOM DEPUTY:  Juror number 25.

21                MS. THOMAS:  Present.

22                THE COURTROOM DEPUTY:  Juror number 30.

23                MS. THOMAS:  Present.

24                THE COURTROOM DEPUTY:  Juror number 31.

25                MS. THOMAS:  Present.

```
 1              THE COURTROOM DEPUTY:  Juror number 36.
 2              MS. THOMAS:  Present.
 3              THE COURTROOM DEPUTY:  Juror number 38.
 4              MS. THOMAS:  Present.
 5              THE COURTROOM DEPUTY:  Juror number 49.
 6              MS. THOMAS:  Present.
 7              THE COURTROOM DEPUTY:  Juror number 57.
 8              MS. THOMAS:  Present.
 9              THE COURTROOM DEPUTY:  Juror number 64.
10              MS. THOMAS:  Present.
11              THE COURTROOM DEPUTY:  Juror number 67.
12              MS. THOMAS:  Present.
13              THE COURTROOM DEPUTY:  Juror number 70.
14              MS. THOMAS:  Present.
15              THE COURTROOM DEPUTY:  Juror number 72.
16              MS. THOMAS:  Present.
17              THE COURTROOM DEPUTY:  Juror number 78.
18              MS. THOMAS:  Present.
19              THE COURTROOM DEPUTY:  Juror number 85.
20              MS. THOMAS:  Present.
21              THE COURTROOM DEPUTY:  Juror number 87.
22              MS. THOMAS:  Present.
23              THE COURTROOM DEPUTY:  Juror number 88.
24              MS. THOMAS:  Present.
25              THE COURTROOM DEPUTY:  Juror number 89.
```

```
 1              MS. THOMAS:  Present.

 2              THE COURTROOM DEPUTY:  Juror number 96.

 3              MS. THOMAS:  Present.

 4              THE COURTROOM DEPUTY:  Juror number 104.

 5              MS. THOMAS:  Present.

 6              THE COURTROOM DEPUTY:  Juror number 110.

 7              MS. THOMAS:  Present.

 8              THE COURTROOM DEPUTY:  Juror number 125.

 9              MS. THOMAS:  Present.

10              THE COURTROOM DEPUTY:  Juror number 126.

11              MS. THOMAS:  Present.

12              THE COURTROOM DEPUTY:  Juror number 131.

13              MS. THOMAS:  Present.

14              THE COURTROOM DEPUTY:  Juror number 133.

15              MS. THOMAS:  Present.

16              THE COURTROOM DEPUTY:  Juror number 136.

17         (No response.)

18              THE COURTROOM DEPUTY:  Juror number 136.

19         (Brief pause.)

20              MS. THOMAS:  Present.

21              THE COURTROOM DEPUTY:  Juror number 137.

22              MS. THOMAS:  Present.

23              THE COURTROOM DEPUTY:  Juror number 139.

24              MS. THOMAS:  Present.

25              THE COURTROOM DEPUTY:  Juror number 146.
```

1      MS. THOMAS:  Present.

2      THE COURTROOM DEPUTY:  Juror number 154.

3      MS. THOMAS:  Present.

4      THE COURTROOM DEPUTY:  Juror number 172.

5      MS. THOMAS:  Present.

6      THE COURTROOM DEPUTY:  Juror number 173.

7      MS. THOMAS:  Present.

8      THE COURTROOM DEPUTY:  Juror number 179.

9      MS. THOMAS:  Present.

10     THE COURTROOM DEPUTY:  Juror number 183.

11     MS. THOMAS:  Present.

12     THE COURTROOM DEPUTY:  Juror number 187.

13     MS. THOMAS:  Present.

14     THE COURTROOM DEPUTY:  Juror number 211.

15     MS. THOMAS:  Present.

16     THE COURTROOM DEPUTY:  Juror number 223.

17     MS. THOMAS:  Present.

18     THE COURTROOM DEPUTY:  Juror number 227.

19     MS. THOMAS:  Present.

20     THE COURTROOM DEPUTY:  Juror number 230.

21     MS. THOMAS:  Present.

22     THE COURTROOM DEPUTY:  Juror number 234.

23     MS. THOMAS:  Present.

24     THE COURTROOM DEPUTY:  Juror number 236.

25     MS. THOMAS:  Present.

1           THE COURTROOM DEPUTY:  Juror number 240.

2           MS. THOMAS:  Present.

3           THE COURTROOM DEPUTY:  Juror number 252.

4           MS. THOMAS:  Present.

5           THE COURTROOM DEPUTY:  Juror number 260.

6           MS. THOMAS:  Present.

7           THE COURTROOM DEPUTY:  Juror number 262.

8           MS. THOMAS:  What number did you answer to?  What was

9    the previous number that you answered to?  Do you remember?

10   You stood up before, though.  So you are 11?  But you stood up

11   for another number, correct?

12          THE COURTROOM DEPUTY:  Juror number 262?

13          MS. THOMAS:  226, not seat number 11, right?

14       Present.

15          THE COURTROOM DEPUTY:  Can I confirm we have juror

16   number 11 as well?

17          MS. THOMAS:  Juror number 11.  That's 11.

18          THE COURTROOM DEPUTY:  Perfect.

19          MS. THOMAS:  Present.

20          THE COURTROOM DEPUTY:  Juror number 274.

21          MS. THOMAS:  Present.

22          THE COURTROOM DEPUTY:  Juror number 283.

23          MS. THOMAS:  Present.

24          THE COURTROOM DEPUTY:  Juror number 288.

25          MS. THOMAS:  Present.

```
1              THE COURTROOM DEPUTY:  Juror number 301.
2              MS. THOMAS:  Present.
3              THE COURTROOM DEPUTY:  Juror number 307.
4              MS. THOMAS:  Present.
5              THE COURTROOM DEPUTY:  Juror number 312.
6              MS. THOMAS:  Present.
7              THE COURTROOM DEPUTY:  Juror number 314.
8              MS. THOMAS:  Present.
9              THE COURTROOM DEPUTY:  Juror number 320.
10             MS. THOMAS:  Present.
11             THE COURTROOM DEPUTY:  Juror number 322.
12             MS. THOMAS:  Present.
13             THE COURTROOM DEPUTY:  Juror number 333.
14             MS. THOMAS:  Present.
15             THE COURTROOM DEPUTY:  Juror number 340.
16             MS. THOMAS:  Present.
17             THE COURTROOM DEPUTY:  Juror number 344.
18             MS. THOMAS:  Present.
19             THE COURTROOM DEPUTY:  Juror number 350.
20             MS. THOMAS:  Present.
21             THE COURTROOM DEPUTY:  Juror number 358.
22             MS. THOMAS:  Present.
23             THE COURTROOM DEPUTY:  Juror number 362.
24             MS. THOMAS:  Present.
25             THE COURTROOM DEPUTY:  Juror number 369.
```

1              MS. THOMAS:  Present.

2              THE COURTROOM DEPUTY:  Juror number 379.

3              MS. THOMAS:  Present.

4              THE COURTROOM DEPUTY:  Juror number 386.

5              MS. THOMAS:  Present.

6              THE COURTROOM DEPUTY:  Juror number 389.

7         (Brief pause.)

8              MS. THOMAS:  Present.

9              THE COURT:  All right.  So, Counsel, we've gotten

10    word that there was some confusion among the jury pool

11    regarding whether they should stand for their seat number or

12    their juror number.  So we're going to start the roll over out

13    of an abundance of caution.

14        Ms. Thomas, if you could make sure that the jurors

15    understand what we are --

16             MS. THOMAS:  Yes, Your Honor.

17             THE COURT:  -- asking.

18             MS. THOMAS:  So remember when I explained during the

19    orientation to remember your four digit number on the summons

20    or the reimbursement form?  I need you to do that.  Okay?  Not

21    your seat number but your juror number.  I explained that, the

22    four digit number.  Okay?  Thank you.

23        Okay, we're ready, Your Honor.

24             THE COURT:  All right, thanks.

25        Mr. Ulander.

1          THE COURTROOM DEPUTY:  Yes, Your Honor.

2     Juror number five.

3          MS. THOMAS:  Present.

4          THE COURTROOM DEPUTY:  Juror number nine.

5          MS. THOMAS:  Present.

6          THE COURTROOM DEPUTY:  Juror number 11.

7          MS. THOMAS:  Present.

8          THE COURTROOM DEPUTY:  Juror number 14.

9          MS. THOMAS:  Present.

10          THE COURTROOM DEPUTY:  Juror number 15.

11          MS. THOMAS:  Present.

12          THE COURTROOM DEPUTY:  Juror number 25.

13          MS. THOMAS:  Present.

14          THE COURTROOM DEPUTY:  Juror number 30.

15          MS. THOMAS:  Present.

16          THE COURTROOM DEPUTY:  Juror number 31.

17          MS. THOMAS:  Present.

18          THE COURTROOM DEPUTY:  Juror number 36.

19          MS. THOMAS:  Present.

20          THE COURTROOM DEPUTY:  Juror number 38.

21          MS. THOMAS:  Present.

22          THE COURTROOM DEPUTY:  Juror number 49.

23          MS. THOMAS:  Present.

24          THE COURTROOM DEPUTY:  Juror number 57.

25          MS. THOMAS:  Present.

1        THE COURTROOM DEPUTY:  Juror number 64.

2        MS. THOMAS:  Present.

3        THE COURTROOM DEPUTY:  Juror number 67.

4        MS. THOMAS:  Present.

5        THE COURTROOM DEPUTY:  Juror number 70.

6        MS. THOMAS:  Present.

7        THE COURTROOM DEPUTY:  Juror number 72.

8        MS. THOMAS:  Present.

9        THE COURTROOM DEPUTY:  Juror number 78.

10       MS. THOMAS:  Present.

11       THE COURTROOM DEPUTY:  Juror number 85.

12       MS. THOMAS:  Present.

13       THE COURTROOM DEPUTY:  Juror number 87.

14       MS. THOMAS:  Present.

15       THE COURTROOM DEPUTY:  Juror number 88.

16       MS. THOMAS:  Present.

17       THE COURTROOM DEPUTY:  Juror number 89.

18       MS. THOMAS:  Present.

19       THE COURTROOM DEPUTY:  Juror number 96.

20       MS. THOMAS:  Present.

21       THE COURTROOM DEPUTY:  Juror number 104.

22       MS. THOMAS:  Present.

23       THE COURTROOM DEPUTY:  Juror number 110.

24       MS. THOMAS:  Present.

25       THE COURTROOM DEPUTY:  Juror number 125.

```
 1              MS. THOMAS:  Present.
 2              THE COURTROOM DEPUTY:  Juror number 126.
 3              MS. THOMAS:  Present.
 4              THE COURTROOM DEPUTY:  Juror number 131.
 5              MS. THOMAS:  Present.
 6              THE COURTROOM DEPUTY:  Juror number 133.
 7              MS. THOMAS:  Present.
 8              THE COURTROOM DEPUTY:  Juror number 136.
 9              MS. THOMAS:  Present.
10              THE COURTROOM DEPUTY:  Juror number 137.
11              MS. THOMAS:  Present.
12              THE COURTROOM DEPUTY:  Juror number 139.
13              MS. THOMAS:  Present.
14              THE COURTROOM DEPUTY:  Juror number 146.
15              MS. THOMAS:  Present.
16              THE COURTROOM DEPUTY:  Juror number 154.
17              MS. THOMAS:  Present.
18              THE COURTROOM DEPUTY:  Juror number 172.
19              MS. THOMAS:  Present.
20              THE COURTROOM DEPUTY:  Juror number 173.
21              MS. THOMAS:  Present.
22              THE COURTROOM DEPUTY:  Juror number 179.
23              MS. THOMAS:  Present.
24              THE COURTROOM DEPUTY:  Juror number 183.
25              MS. THOMAS:  Present.
```

1       THE COURTROOM DEPUTY:  Juror number 187.

2       MS. THOMAS:  Present.

3       THE COURTROOM DEPUTY:  Juror number 211.

4       MS. THOMAS:  Present.

5       THE COURTROOM DEPUTY:  Juror number 223.

6       MS. THOMAS:  Present.

7       THE COURTROOM DEPUTY:  Juror number 227.

8       MS. THOMAS:  Present.

9       THE COURTROOM DEPUTY:  Juror number 230.

10      MS. THOMAS:  Present.

11      THE COURTROOM DEPUTY:  Juror number 234.

12      MS. THOMAS:  Present.

13      THE COURTROOM DEPUTY:  Juror number 236.

14      MS. THOMAS:  Present.

15      THE COURTROOM DEPUTY:  Juror number 240.

16      MS. THOMAS:  Present.

17      THE COURTROOM DEPUTY:  Juror number 252.

18      MS. THOMAS:  Present.

19      THE COURTROOM DEPUTY:  Juror number 260.

20      MS. THOMAS:  Present.

21      THE COURTROOM DEPUTY:  Juror number 262.

22      MS. THOMAS:  Present.

23      THE COURTROOM DEPUTY:  Juror number 274.

24      MS. THOMAS:  Present.

25      THE COURTROOM DEPUTY:  Juror number 283.

1            MS. THOMAS:  Present.

2            THE COURTROOM DEPUTY:  Juror number 288.

3            MS. THOMAS:  Present.

4            THE COURTROOM DEPUTY:  Juror number 301.

5            MS. THOMAS:  Present.

6            THE COURTROOM DEPUTY:  Juror number 307.

7            MS. THOMAS:  Present.

8            THE COURTROOM DEPUTY:  Juror number 312.

9            MS. THOMAS:  Present.

10           THE COURTROOM DEPUTY:  Juror number 314.

11           MS. THOMAS:  Present.

12           THE COURTROOM DEPUTY:  Juror number 320.

13           MS. THOMAS:  Present.

14           THE COURTROOM DEPUTY:  Juror number 322.

15           MS. THOMAS:  Present.

16           THE COURTROOM DEPUTY:  Juror number 333.

17           MS. THOMAS:  Present.

18           THE COURTROOM DEPUTY:  Juror number 340.

19           MS. THOMAS:  Present.

20           THE COURTROOM DEPUTY:  Juror number 344.

21           MS. THOMAS:  Present.

22           THE COURTROOM DEPUTY:  Juror number 350.

23           MS. THOMAS:  Present.

24           THE COURTROOM DEPUTY:  Juror number 358.

25           MS. THOMAS:  Present.

1          THE COURTROOM DEPUTY:  Juror number 362.

2          MS. THOMAS:  Present.

3          THE COURTROOM DEPUTY:  Juror number 369.

4          MS. THOMAS:  Present.

5          THE COURTROOM DEPUTY:  Juror number 379.

6          MS. THOMAS:  Present.

7          THE COURTROOM DEPUTY:  Juror number 386.

8          MS. THOMAS:  Present.

9          THE COURTROOM DEPUTY:  Juror number 389.

10         MS. THOMAS:  Present.

11         THE COURTROOM DEPUTY:  Juror number 391.

12         MS. THOMAS:  Present.

13         THE COURTROOM DEPUTY:  Juror number 396.

14         MS. THOMAS:  Present.

15         THE COURTROOM DEPUTY:  Juror number 406.

16         MS. THOMAS:  Present.

17         THE COURTROOM DEPUTY:  Juror number 409.

18         MS. THOMAS:  Present.

19         THE COURTROOM DEPUTY:  Juror number 410.

20         MS. THOMAS:  Present.

21         THE COURTROOM DEPUTY:  Juror number 413.

22         MS. THOMAS:  Present.

23         THE COURTROOM DEPUTY:  Juror number 416.

24         MS. THOMAS:  Present.

25         THE COURTROOM DEPUTY:  Juror number 423.

1           MS. THOMAS:  Present.

2           THE COURTROOM DEPUTY:  Juror number 425.

3           MS. THOMAS:  Present.

4           THE COURTROOM DEPUTY:  Are there any other jurors

5    present whose juror number I have not called?

6       (No response).

7           THE COURTROOM DEPUTY:  Members of the jury panel,

8    would you please stand and raise your right hand.

9       Do you and each of you solemnly promise, declare, and

10   affirm, that the answers you shall give touching your present

11   propounded service -- to the questions to be propounded to you,

12   touching your present proposed service as petit juror in this

13   court shall be the truth, the whole truth, and nothing but the

14   truth?

15      Please state, "I do."  And, Ms. Thomas, if you can confirm

16   our jury has sworn in.

17          MS. THOMAS:  Confirmed.

18          THE COURTROOM DEPUTY:  Thank you.

19          THE COURT:  All right.  You can all have a seat.

20      Good morning.  My name is Judge Paula Xinis, and I am

21   presiding over this case today, and I want to welcome you and

22   thank you in advance for your service today.  I cannot

23   overemphasize, and this is on behalf of everyone here, how

24   critical your jury service is.  It is the cornerstone of our

25   system of justice, and it means a great deal to this Court, as

1 well as to the parties, that you are here, ready, willing, and

2 able for service.

3      So this first part of our what is called voir dire -- and

4 voir dire simply is a fancy word for "to tell the truth."  The

5 first part we're going to conduct remotely, meaning you all

6 will stay in your seats, and I'm going to have a number of

7 questions for you.

8      You should have in front of you an answer sheet, and that

9 answer sheet should have 36 separate entries for your ability

10 to put either a "yes" or a "no" to each question that I give

11 you.  Have that right in front of you, and the first thing I

12 would like you to do with a working pen is put your juror

13 number, that four-digit number that we just talked about, in

14 the center of the answer sheet where it says "juror number."

15 Do not put your name; put your number.

16      Next, as I go through each question, I'm going to first

17 give you the number of the question.  Then I'm going to give

18 you the question.  And if you are not sure whether to put yes

19 or no, always put yes.  So when in doubt of how to answer, put

20 yes.

21      After we go through all of the questions, if any of you

22 need a question read back to you, Ms. Thomas will be there, and

23 we'll go through that process.  You just raise your hand, tell

24 her which question you need back, read back, and I will do that

25 for you.  Once everyone has heard every question and understood

1   every question and answered every question, we'll collect those

2   answer sheets.  That will conclude phase one.

3       Phase two then, we'll have each of you come up

4   individually to the courtroom for follow-up questions regarding

5   your yes answers.  That's why if you're in doubt, just answer

6   yes, because the whole purpose of why we're doing this is to

7   make sure that when we select this jury for this very important

8   case, that we do not put anyone on the jury who can't serve

9   because maybe they have a relationship with someone in the case

10  or they have views that may affect the case.  This is why we go

11  through that process.

12      So you'll come up for individual voir dire, and our jury

13  committee will make sure that you know exactly where to go and

14  when.

15      Okay.  So with that, let's begin.  Again, if you have your

16  answers in front of you -- raise your hand if you cannot hear.

17  And I don't see Ms. Thomas coming to the podium, so I'll take

18  that to mean no hands are raised, and we will start.

19      Question No. 1:  Ladies and gentlemen, this is a criminal

20  case in which the defendant, Jose David Navarro-Cervellon is

21  served -- is charged with three counts.  One, conspiracy to use

22  facilities of interstate commerce in the commission of murder

23  for hire; two, use of facilities of interstate commerce in the

24  commission of murder for hire; and three, murder resulting from

25  the use, carrying, brandishing, and discharging of a firearm

1   during and in relation to a crime of violence.

2        These charges relate to the murder of Ramiro Moya that

3   occurred on November 30, 2016, on Crittenden Street in

4   Hyattsville, Maryland.

5        Here's the question, question number one:  Have you read

6   or heard anything about this case from any source?

7        Question No. 2:  Do you know or have you had any dealings

8   with the defendant, Jose David Navarro-Cervellon, or any of his

9   friends, associates, or family members?

10       Question No. 3:  Do you know or have you had any dealings

11  with any of the following persons or members of their families?

12       Now, this is going to be a long list.  So what I suggest

13  you do is if you hear any name you recognize as possibly your

14  having any contact with them, make a note on your sheet so

15  later on when we come up for individual discussion, you

16  remember who it was that caused you to check yes.

17       So here is the list.  And, again, the question is:  Do you

18  know or have you had any dealings with any of the following

19  persons or members of their families:  Counsel for the United

20  States of America, Assistant United States Attorney William

21  Moomau or Assistant United States Attorney Leah Grossi; Erek L.

22  Baron, the United States attorney for the District of Maryland,

23  or any member of the United States Attorney's Office for the

24  District of Maryland.

25       Federal Bureau of Investigation Special Agent Karen Cody,

1    FBI Special Agent John Kareta, that's K-a-r-e-t-a; United

2    States Postal Service Postal Inspector Adam Scheps.  That's

3    S-c-h-e-p-s.

4         Counsel for the defendant:  Christopher Davis or Anthony

5    Martin.

6         Me, my staff, or anyone that you have seen in the

7    courthouse.  Now take a look around the room, and if you

8    recognize anyone in the jury pool.

9         The following are a list of individuals who may either be

10   witnesses or be mentioned during the trial.  From the Prince

11   George's County Police Department:  Jose Chinchilla, Tahicia L.

12   McCaskill, Brandon Moroney, John C. Wood.

13        From the Montgomery County Police Department:  Michael

14   Zito.  That's Z-i-t-o.

15        From the Calvert County Sheriff's Office:  Michael Daily,

16   D-a-i-l-y.

17        From the Federal Bureau of Investigation:  Nancy Rittie,

18   that's R-i-t-t-i-e; Rich Fennern, F-e-n-n-e-r-n.

19        From the United States Postal Inspection Service:  Adam

20   Scheps.

21        From the Maryland Office of the Chief Medical Examiner:

22   Dr. Carol Allan, that's A-l-l-a-n.

23        And other witnesses not affiliated with an agency or

24   department:  Miguel Ayala-Rivera, Pedro Cruz, Luis

25   Cruz-Hernandez, Concepcíon Hernandez de Galindo, Ermilda Moya

1  Guillen, G-u-i-l-l-e-n; Gloribel Moya, Ramiro Moya, Natin,

2  N-a-t-i-n, Patel, Miguel Renderos, Zaira Renderos, Jesus Rivas,

3  Hector Moreno.

4      Okay, that concludes the list.  Moving on to the next

5  question.

6      Question No. 4:  This trial is estimated to take up to

7  nine days, starting today.  We will sit from 9:30 to 5 p.m.

8  every day.  Generally, we'll take one morning break and one

9  afternoon break, each about 15 minutes, and an hour for lunch.

10 We will not be sitting for trial on Friday, July 15th, or

11 Friday July 22nd.

12     Is there any reason why you cannot serve as a juror for

13 these dates and times?  That's question number four.  Is there

14 any reason why you cannot serve as a juror for these dates and

15 times?

16     Question No. 5:  Are you taking any medication that could

17 affect your ability to pay full attention during trial?

18     Question No. 6:  Do you suffer from any physical or mental

19 illness or impairment that may make it difficult to sit as a

20 juror?

21     Question 7:  Are you fully vaccinated against COVID-19?

22 Meaning at least 14 days have passed after receiving a second

23 dose of a two-dose vaccine or 14 days have passed after

24 receiving a single dose of a single-dose vaccine?

25     Question No. 8:  Do you have any difficulty understanding

1  English such that it may be difficult to follow the testimony

2  in this case?

3      Question 9:  Have you ever served as a juror for a grand

4  jury or a criminal trial in any court?

5      Question 10:  Are you presently a party in any case

6  pending in this or any other federal or state court?

7      Question 11:  Have you or a member of your immediate

8  family ever attended law school, received legal training, taken

9  a paralegal course, or worked with a lawyer, law firm, in a

10  courthouse, or as a paralegal, legal secretary, or private

11  investigator?

12      Question 12:  Have you or any member of your family ever

13  been employed by or sought employment with the United States

14  Courts, the United States District Court for the District of

15  Maryland, the United States Department of Justice, any United

16  States Attorney's Office or State's Attorney's Office, any

17  other prosecutor's office, FBI, United States Postal Service,

18  or any other court system or law enforcement agency, whether

19  local, state, or federal?

20      Question 13:  Have you, any member of your family, or

21  close friend ever been employed by any organization or firm

22  involved in criminal defense work?

23      Question 14:  Have you, any member of your family, or

24  close friend ever been employed by state or federal

25  court-related agencies, such as the Maryland Department of

1   Parole and Probation, the United States Pretrial Services

2   Office, the United States Probation Office, or the United

3   States Bureau of Prisons?

4       15:  Have you, any member of your family, or close friends

5   ever been involved in any legal dispute with the United States

6   Government or any agency of the government, including the FBI,

7   the United States Postal Service, or any state or local

8   government?

9       Question 16:  Do you have any opinions, favorable or

10  unfavorable, about the FBI, the United States Postal Service,

11  Prince George's County Police Department, Montgomery County

12  Police Department, any other law enforcement personnel, or the

13  administration of criminal justice in the courts that would

14  prevent you from rendering a fair and impartial verdict in this

15  case?

16      17:  Do you have any opinions about prosecutors, law

17  enforcement agents, or other law enforcement personnel,

18  favorable or unfavorable, that would prevent you from rendering

19  a fair and impartial verdict in this case?

20      Question 18:  Would you tend to give greater or lesser

21  weight to the testimony of witnesses from the FBI, U.S. Postal

22  Service, Prince George's County Police Department, Montgomery

23  County Police Department, or any other law enforcement agency

24  simply because they worked in law enforcement?

25      19:  During this trial, the defendant may call witnesses.

Although the defendant has no obligation to call any witnesses,
if he does, would you tend to give greater or lesser weight to
the testimony of a defense witness simply because he or she is
a defense witness?

Question No. 20:  This case will involve the testimony of
witnesses who have been convicted of crimes and who have
cooperated with law enforcement in exchange for the possibility
of receiving reduced sentences.  Do you have any views about
the use of such cooperators in connection with investigating
crime or giving testimony at trial that may affect your ability
to be fair and impartial in this case?

Question 21:  In this case, there may be evidence that
some of the persons involved in this crime were associated with
La Mara Salvatrucha, or MS-13.  Do you have any views about
MS-13 that may affect your ability to be a fair and impartial
juror in this case?

Question 22:  Do you have any views about violent crime or
the government's enforcement of such crime that may affect your
ability to be a fair and impartial juror in this case?

23:  Some of the victims and witnesses in this case may be
in this country without authorization.  Do you have any views
about undocumented immigrants or the government's immigration
policies that may affect your ability to be a fair and
impartial juror in this case?

24:  In this case, the defendant is Latino, and his family

1  origin is from El Salvador.  Some of the victims and witnesses

2  will also be Hispanic or Latino.  Do you have any beliefs or

3  attitudes about persons of Hispanic or Latino lineage that may

4  affect your ability to be a fair and impartial juror in this

5  case?

6       25:  Some of the witnesses in this case speak Spanish and

7  will testify with the assistance of a Spanish translator.  Will

8  that fact affect your ability to be fair and impartial in this

9  case?

10      26:  Do you have read, write, or speak Spanish?

11      27:  Do you have any views or opinions, favorable or

12 unfavorable, about witnesses who wear a mask or face shield

13 while testifying that will make it difficult to be fair and

14 impartial in this case?

15      28:  Criminal investigative techniques portrayed in books,

16 newspapers, movies or TV shows such as CSI or Law and Order may

17 be fictional or unreasonable or inapplicable to a real court

18 case.  If you are selected, I will instruct you that you must

19 decide this case based solely on the evidence presented in this

20 court, and you cannot consider anything you have read about or

21 have seen on TV or in the movies.  Would you have any

22 difficulty following this instruction?

23      29:  Do you have any religious, moral, or other beliefs

24 that would make it difficult for you to judge the conduct of

25 another person or to reach a verdict as a juror?

30:  Do you have any attitudes or feelings with regard to race, ethnicity, religion, national origin, gender, or age that may prevent you from serving fairly and impartially as a juror in this case?

Question 31:  Have you, any member of your family, or close friends ever been convicted of a crime, been accused of criminal conduct, or been the subject of a criminal investigation?

32:  Have you, any member of your family, or close friend ever been the victim of a crime, a witness to a crime, or a witness for the prosecution or defense in any criminal trial?

33.  Do you, any member of your family, or close friends belong to any group that advocates for change in our criminal justice system or our criminal sentencing guidelines?

34:  At the close of this case, I will instruct you on the law that you are required to apply to the facts of the case. Would you have any difficulty following my instructions on the law even if you disagree with any of them?

35:  If selected to serve as a juror in this case, you will be instructed that you are not to consider punishment in deciding whether the government has proven its case against the defendant.  Would you have any difficulty following this instruction?

Last question, 36:  Do you know of any other reason why you may not be able to serve with absolute impartiality to both

1   sides as a juror in this case?

2        Okay, those are all the questions.  Ms. Thomas, if you

3   would come to the podium.  And jurors, if any of you need any

4   of the questions read back, please raise your hand, give your

5   juror number, and then Ms. Thomas will help me out with the

6   question that I need to read back.

7            MS. THOMAS:  Okay.  Would you please stand.  Your

8   juror number?  211.  And which question would you like to be

9   repeated?  No. 13.

10           THE COURT:  Okay.  Question No. 13:  Have you, any

11  member of your family, or any close friends ever been employed

12  by any organization or firm involved in criminal defense work?

13           MS. THOMAS:  Juror number?  358.  And can you please

14  repeat Question No. 7.

15           THE COURT:  Question No. 7:  Are you fully vaccinated

16  against COVID-19?  Meaning at least 14 days have passed after

17  receiving a second dose of a two-dose vaccine or 14 days have

18  passed after receiving a single dose of a single-dose vaccine?

19           MS. THOMAS:  Juror number?  Nine.  That's your juror

20  number?  Number nine?  And what's your question?  Number one --

21  21, I'm sorry.

22           THE COURT:  21?

23           MS. THOMAS:  Yes, please.

24           THE COURT:  Okay.

25       In this case, there may be evidence that some of the

1   persons involved in this crime are associated with La Mara

2   Salvatrucha, or MS-13.  Do you have any views about MS-13 that

3   may affect your ability to be a fair and impartial juror in

4   this case?

5           MS. THOMAS:  0064?  And Question No. 10.

6           THE COURT:  No. 10:  Are you presently a party in any

7   case pending in this or any other federal or state court?

8           MS. THOMAS:  Juror number?  146?  Question 14.

9           THE COURT:  14:  Have you, any member of your family,

10  or any close friends ever been employed by state or federal

11  court-related agencies such as the Maryland Department of

12  Parole and Probation, the United States Pretrial Services

13  Office, the United States Probation Office, or the United

14  States Bureau of Prisons.

15          MS. THOMAS:  Juror number 0358.  Question No. 15.

16          THE COURT:  15:  Have you, any member of your family,

17  or any close friends ever been involved in any legal dispute

18  with the United States Government, or any agency of the

19  government, including the FBI, the U.S. Postal Service, or any

20  state or local government?

21          MS. THOMAS:  Your juror number is number five?

22      And Question No. 17, Your Honor.

23          THE COURT:  17:  Do you have any opinions about

24  prosecutors, law enforcement agents, or other law enforcement

25  personnel, favorable or unfavorable, that would prevent you

1    from rendering a fair and impartial verdict in this case?

2              MS. THOMAS:  Juror number?  Juror number 30.

3    Questions No. 11 and 12, please.

4              THE COURT:  Okay.  No. 11:  Have you or a member of

5    your immediate family ever attended law school, received legal

6    training, taken a paralegal course, or worked with a lawyer,

7    law firm, in a courthouse or as a paralegal, legal secretary,

8    or private investigator?  That's question No. 11.

9              MS. THOMAS:  Juror number?

10             THE COURT:  Oh, wait a minute.  Don't I have to do 12

11   as well?

12             MS. THOMAS:  Oh, I'm sorry, yes.

13             THE COURT:  12:  Have you, any member of your family,

14   or friend ever been employed by or sought employment with the

15   United States Courts, United States District Court for the

16   District of Maryland, United States Department of Justice, any

17   United States Attorneys' Office, State Attorney Office, or

18   other prosecutor's office, FBI, U.S. Postal Service, or any

19   other court system or law enforcement agency, local, state, or

20   federal.  Have you ever sought employment or been employed by.

21   That's No. 12.

22        Next one?

23             MS. THOMAS:  What's your juror number?  Juror number

24   252.  Question No. 30 -- 32 -- 32.

25             THE COURT:  32?

1            MS. THOMAS:  Question No. 32, Your Honor, yes.

2            THE COURT:  Okay.  32:  Have you, any member of your

3    family, or any close friends ever been the victim of a crime, a

4    witness to a crime, or a witness for the prosecution or defense

5    in any criminal trial?

6            MS. THOMAS:  Juror number?  Juror number 386.

7    Questions 23 and 31.

8            THE COURT:  Okay.  23:  Some of the victims and

9    witnesses in this case may be in this country without

10   authorization.  Do you have any views about undocumented

11   immigrants or the government's immigration policies that may

12   affect your ability to be a fair and impartial juror in this

13   case?  That's Question 23.

14      Question 31:  Have you, any member of your family, or any

15   close friends ever been convicted of a crime, accused of

16   criminal conduct, or been the subject of a criminal

17   investigation?

18            MS. THOMAS:  Juror number 236.  Questions 4 and 5.

19            THE COURT:  All right.  Question No. 4:  This trial

20   is estimated to take up to nine days, beginning today.  We will

21   sit from 9:30 to 5 p.m.  Generally, we'll take a morning break

22   and an afternoon break, each about 15 minutes, and an hour for

23   lunch.  We will not be sitting on Friday, July 15th, or Friday,

24   July 22nd.  Is there any reason why you cannot serve as a juror

25   for these dates and times?  That's No. 4.

1      No. 5:  Are you taking any medication that could affect

2  your ability to pay full attention during trial?

3          MS. THOMAS:  Juror number?  0230.  Question No. 8.

4          THE COURT:  No. 8:  Do you have any difficulty

5  understanding English such that it may be difficult to follow

6  the testimony in this case?

7          MS. THOMAS:  Thank you, Your Honor.

8          THE COURT:  All right.  Thank you all.  We're going

9  to take a short break.  The Jury Committee will collect your

10  questionnaires.  So just sit tight and make sure that they get

11  them in the order that they need them, and then we'll resume

12  with individual voir dire.

13      All right.  Counsel, anything before we -- it looks like

14  the connection is -- we're off.

15      Anything before we take our quick break?  I would imagine

16  it will take 15, 20 minutes.

17          THE COURTROOM DEPUTY:  It may be quicker.

18          THE COURT:  It may be less than that?  Okay, great.

19  Then sit tight.  Maybe we can get this going even faster.

20  Okay, great.  Thanks so much.

21          THE COURTROOM DEPUTY:  This Honorable Court now

22  stands in recess.

23      (Recess taken, 10:33 A.M. - 10:54 A.M.)

24          THE COURTROOM DEPUTY:  May I have your attention,

25  please.

```
 1            This Honorable Court now resumes in session.

 2            THE COURT:  All right.  Are we ready?

 3            THE COURTROOM DEPUTY:  Your Honor, are you ready for

 4    our first juror?

 5            THE COURT:  I am.  Everybody ready?

 6            MR. MOOMAU:  Yes, Your Honor.

 7            THE COURT:  Okay.

 8        (Enter juror number 5.)

 9            THE COURTROOM DEPUTY:  Your Honor, can the jurors

10    take off their mask when they come to the microphone?

11            THE COURT:  Yes, please.  If you're comfortable, we

12    are too.  All right, great.

13                        PROSPECTIVE JUROR NO. 5

14    a prospective juror, having been first duly sworn to answer

15    questions, was examined as follows:

16                            EXAMINATION

17                           BY THE COURT:

18    Q.   Good morning.

19    A.   Good morning.

20    Q.   Juror number 5.

21         All right.  I want to follow up with you on some of your

22    "yes" answers.  You answered yes to No. 9, which is whether

23    you've ever served as a juror in any grand jury or criminal

24    case.  Can you tell us a little bit about that?

25    A.   Well, it seems like it was a hundred years ago.  It was in
```

1  the '80s, and it was in Washington, D.C., and it was an assault

2  case, and we found the defendant not guilty.

3  Q.    Okay.

4  A.    That's all I remember.

5  Q.    All right.  Is there anything then about that experience

6  that would affect your ability to be a fair and impartial juror

7  if selected in this case?

8  A.    No.

9  Q.    Okay.  All right, then I'll go through all of the yes

10  answers and then turn it over to the parties for follow-up.

11        You also answered yes to 11, which is whether you, a

12  family member ever attended law school, received any training

13  in the law, worked for a law firm.  What is -- why did you

14  check yes to that?

15  A.    I do have family members.  I have two stepsisters that are

16  attorneys and a nephew that attended law school.

17  Q.    Can you speak a little -- or maybe we can turn the --

18  A.    I don't think it's on.

19  Q.    It may not be on, because I can barely hear you.

20  A.    I have two stepsisters that are attorneys here in the DMV,

21  and I have a nephew that attended law school.  I mean, he

22  didn't finish but --

23  Q.    Okay.  So stepsisters who are lawyers.  Are they in

24  criminal law?

25  A.    No, not now.

1   Q.   All right.  Do you speak with them about their jobs in

2   particular?

3   A.   Yes.

4   Q.   All right.  Anything about the conversations that you have

5   would affect your ability to be fair and impartial in this

6   case, or influence you in any way about the criminal justice

7   system?

8   A.   No.

9   Q.   Okay.

10       All right, No. 12 you checked yes, and this is whether a

11   family member or friend or you sought employment with,

12   essentially, any federal, state, or local agency.

13   A.   Yeah.

14   Q.   Or are employed.

15   A.   That would be my brother-in-law, and he worked for them,

16   too.

17   Q.   He worked for who?

18   A.   He worked for the Maryland prison system.

19   Q.   Okay.

20   A.   And then he was a federal parole officer.

21   Q.   And a federal parole officer?

22   A.   Yes.

23   Q.   Is he currently employed in either of those places?

24   A.   That was his career, and he retired a few years ago.

25   Q.   Okay.  Again, would you talk with him about the

1    particulars of his job?

2    A.    Yep, a lot.  He talked about it a lot.

3    Q.    All right.  Did anything that he shared with you, would it

4    affect your ability to be fair and impartial in this case?

5    A.    I don't think so, no.

6    Q.    So you hesitated a little bit and thought about it.  What

7    were you thinking about?

8    A.    I was just thinking about conversations that we have, you

9    know, and I heard a little bit about what this case is about.

10   I don't recall him saying anything that would affect this case.

11   Q.    Okay.

12   A.    But he does have a lot of opinions about the system.

13   Q.    Would you be able to keep his voice and his opinions out

14   of your head and judge this case based solely on the evidence

15   you hear in this court and the instructions I give you?

16   A.    I think so.

17   Q.    All right.  Do you have any hesitation in that regard?

18   A.    No.  I mean, I can't guarantee that, you know, something I

19   heard might be relative to something that comes up in the

20   future, and I might recall something I heard and think about

21   it; but, I mean, I'm intelligent.  So I can make my own

22   decision.

23   Q.    And that's the bottom line is we're human.  So things may

24   fly into your head about personal experiences that you had as

25   the trial goes on, but it's the willingness and ability to put

1    those out of your head once they happen and focus just on the

2    evidence and the instruction I give you.  And I'm hearing you

3    that you'll be able to do that?

4    A.    I think so, yes.

5    Q.    All right.

6          Okay.  And then you also answered yes to No. 15, which is

7    whether you, a family member, or close friend had ever been

8    employed by -- and it lists a number of court agencies,

9    including parole.  Did you check yes because of your

10   brother-in-law?

11   A.    That's correct.

12   Q.    Okay.

13         And then 16, you checked yes but then said, "don't know."

14   And this is the question about whether you have any opinions,

15   favorable or unfavorable about a number of government agencies;

16   FBI, postal service, police department, Prince George's County,

17   Montgomery County Police Department, or law enforcement.  And

18   you checked yes, but then you put "don't know."

19   A.    Right.  So I do have a little bit of a bad taste because

20   my son was a victim, and the encounter we had with Montgomery

21   County Police was very unpleasant.

22   Q.    Okay.

23   A.    We were not happy with the outcome.  We're not happy with

24   the attention they gave the case.  It was traumatic for the

25   whole family, and we didn't think it was important to them.

1   Q.    And are you talking about the police involved or the

2   prosecutors or both?

3   A.    The police.  It did not go to trial.

4   Q.    Okay.

5   A.    So I can't remember if your question pertained to that.

6   It never went to trial.

7   Q.    All right.  Well, I'm sorry about that, and that is

8   another example of what I'll be asking you to do, which is put

9   these personal experiences to the side and judge this case and

10  the witnesses who are called solely on what you hear and what

11  you see in this court.  Would you be able to do that if any

12  Montgomery County Police were called to the stand?

13  A.    Yes.

14  Q.    Okay.  All right, and that's No. 16.

15        You also checked 18 -- no, 19.  You checked yes as to

16  whether you would tend to give greater or lesser weight to the

17  testimony of a defense witness simply because the person is a

18  defense witness.  Do you recall why you checked yes to that?

19  A.    I know that I shouldn't have.  That's the wrong answer.

20  Q.    That's okay.  That's why -- you're being honest, and so

21  we've got to talk about this.

22  A.    I just know that I find it difficult to understand why a

23  defendant doesn't want to take the stand, but I understand

24  that's their right.

25  Q.    Well, and so I'll let you know, this is the instruction

1  you'll be given.  It's a constitutional right.  It's

2  fundamental.  And that's because the government has to bear the

3  burden.  They bear the burden of proof.  As citizens accused,

4  we're presumed innocent, and we don't have anything to prove.

5  That's just the structure of the system.  So that is

6  fundamentally why a defendant does not have to testify, and you

7  will be specifically instructed in the beginning of the case

8  not to hold any of that against the defendant if he chooses not

9  to testify.

10        Now, I know you checked yes to this, but knowing where

11  this constitutional principle comes from, could you follow my

12  instruction in that regard?

13  A.    Sure.  I mean, you just explained it.  It makes sense.  If

14  the government is not proving their case, I probably wouldn't

15  want to take the stand if I was a defendant.

16  Q.    Right.  Okay.  All right, any questions about that before

17  we move on?

18  A.    No.

19  Q.    You also checked yes to 20, which is whether you have any

20  views about cooperators who may be testifying in exchange for

21  possibly a reduced sentence, and you checked yes to that.  What

22  were you thinking about?

23  A.    I just find it highly suspect.

24  Q.    Okay.

25  A.    And it would be really hard to -- for me, I think.  I

1  mean, I haven't heard the testimony.  So I'm just imagining.

2  But, I mean, if you're promised a gift in return for testimony,

3  I don't know how much weight I would give what they said.

4      Now, if they wanted to testify and they are not giving

5  anything, you know, like someone in the jailhouse wants to come

6  forth and they are not given any favors to testify, I would

7  like at that differently.

8  Q.   Okay.  So, again, there will be instructions about this.

9  You will get instructions about how you can consider how a

10  person testifies and whether they are what's called credible,

11  which is believable.

12      You'll get instructions on what it means to possibly be

13  given something in exchange for testimony, that it's perfectly

14  legitimate for the government to make these deals.  But at the

15  same time, you can consider it.  You're not to ignore it.

16      And so these are just the rules of the road in terms of

17  being able to assess if you believe the witnesses?

18  A.   Okay.

19  Q.   Would you be able to take these thoughts that you had

20  before coming in, put them to the side, and follow my

21  instructions on how you would assess the credibility of every

22  witness, including those who may be cooperating?

23  A.   Sure.

24  Q.   Okay.  Any concern or hesitation in that regard?

25  A.   No.  I mean, I was answering the questions just based on

1    what I'm thinking at the moment.

2    Q.    All right.

3    A.    But if the judge is going to explain, you know, the rules,

4    then I'm going to listen to the judge.

5    Q.    Okay.  All right, great.  Thank you.

6          All right.  With regard to 21, this question asked about

7    whether you have any views about MS-13 that may affect your

8    ability to be fair and impartial.  What were you thinking about

9    that?

10   A.    Well, I mean, what I know of MS-13 is what I hear in the

11   news.  So it's a gang and, you know, they're up to no good.  So

12   if you're a member of a gang, then I'm automatically looking at

13   you as a bad guy.  You know, so I don't know if that answers

14   that question.

15   Q.    So that's another area, again, where you might come in

16   with things you've learned from the outside that make you feel

17   a certain way, but my question is going -- my instruction is

18   going to be you have to leave all of that on the front steps of

19   the courthouse and judge the case on the evidence that you hear

20   in this case about what people did and did not do and draw your

21   own conclusions based on that evidence and the law that I give

22   you.

23   A.    Correct.

24   Q.    Would you be able to do that?

25   A.    Sure.

1  Q.   Okay.

2  A.   Yeah.

3  Q.   22:  You checked yes about your views about violent crime

4  or the government's enforcement of that crime that may affect

5  your ability to be fair.  What were you thinking about there?

6  A.   I think I was just thinking about my son's case.

7  Q.   Your son?

8  A.   Yeah.

9  Q.   Okay.  All right.  Nothing else that we haven't already

10  talked about?

11  A.   No.

12  Q.   Okay.  Is there anything else you want to add to that

13  answer?

14  A.   No.

15  Q.   Okay.

16       All right.  And I believe those are all of your yes

17  answers.

18            THE COURT:  Let me turn to the government for any

19  follow-up and then the defense.

20            MR. MOOMAU:  Do we stay seated when asking the

21  questions?

22            THE COURT:  Sure.  I think that's safest if you can

23  do it, Mr. Moomau, because I know that the microphone is behind

24  you.  So it's a little bit wonky.  I don't know if you want

25  to --

```
 1   BY MR. MOOMAU:
 2   Q.   I just have one question for juror number 5.  In the case
 3   involving your son --
 4             THE COURT:  Can you maybe move the microphone.  Take
 5   it with you.
 6   BY MR. MOOMAU:
 7   Q.   The case involving your son, ma'am, how many years ago was
 8   that?
 9   A.   Five, six.
10             MR. MOOMAU:  That's all the questions I have, Your
11   Honor.  Thank you.
12             THE COURT:  Okay, thank you.
13             MR. DAVIS:  We have no questions for this witness,
14   Your Honor.
15             THE COURT:  All right.  Thank you, juror number 5.
16   You're free to go.
17             JUROR NUMBER FIVE:  Okay.
18        (Exit juror number 5.)
19        (Enter juror number 9.)
20                    PROSPECTIVE JUROR NO. 9
21   a prospective juror, having been first duly sworn to answer
22   questions, was examined as follows:
23                         EXAMINATION
24                        BY THE COURT:
25   Q.   Hi there.  Juror number nine?
```

1   A.    Yes.

2   Q.    Good to meet you.  You don't have to take your mask off.

3   You can if you want.  And just be sure to speak clearly into

4   the microphone?  Okay?

5   A.    Okay.

6   Q.    All right, great.

7         I just want to follow up with you on some of your yes

8   answers.  You answered yes about having a family member who

9   either attended law school or received legal training, and I do

10  note you're -- am I getting it right?  Your spouse is a lawyer?

11  A.    Correct.

12  Q.    All right.  Is that what caused you to check yes, or is

13  there more?

14  A.    Just my husband.

15  Q.    Okay.  What kind of law does he practice?

16  A.    Government contracts.

17  Q.    Okay, so not in court, in criminal cases, or anything like

18  that?

19  A.    No.

20  Q.    So would anything about your husband's job affect you in

21  terms of being fair in this case?

22  A.    No.

23  Q.    Okay.

24        All right, and then you also checked yes to 12, which is

25  you, a member of your family employed by the government, the

1    federal government; U.S. Courts, U.S. Attorney's Office, FBI.

2    Were you thinking about your husband or somebody else?

3    A.    Yeah, he -- like, in law school, he did like an internship

4    or something in Chicago, and I couldn't really recall exactly

5    what that was, whether it was for -- I think it was with the

6    state, though.

7    Q.    Got it.  So there's nothing else that caused you to check

8    yes to that question?

9    A.    No.

10   Q.    Okay.

11         And then you also checked yes to No. 21, which is the

12   question about MS-13, whether you have any views about MS-13

13   that may affect your ability to be fair and impartial.

14   A.    Yes.

15   Q.    Okay.  Can you tell us about that?

16   A.    Just my limited knowledge on what the MS-13 is and that

17   they're a gang and kind of scary.

18   Q.    All right.  So I take it you've never served in a criminal

19   trial before?

20   A.    No.

21   Q.    Okay.  So one of the things that you will get in the

22   beginning and at the end of the case is instructions about how

23   to be a juror in the case.  One of the important instructions

24   is as a juror, you leave any of the stuff you've learned in

25   life or the feelings that you may have, personal feelings, at

1   the door, and you judge the case based only on the evidence

2   that you hear in this courtroom and the instructions that I

3   give you about how to look at that evidence.

4        Would you be able to follow my instruction in that regard?

5   A.   Yes.

6   Q.   Okay.  Any hesitation or concern about that?

7   A.   No, I think that's why I originally checked like no and

8   then --

9   Q.   Okay.  All right.

10           THE COURT:  Let me turn to counsel if they have any

11   follow-up for you.  Government?

12           MR. MOOMAU:  No questions for the government, Your

13   Honor.  Thank you.

14           THE COURT:  Defense?

15           MR. DAVIS:  No questions, Your Honor.

16           THE COURT:  All right.

17        Thank you, juror number 9.  You're free to leave.

18        (Exit juror number 9.)

19           THE COURT:  Okay.  So, Counsel, when we have someone

20   with no "yes" answers, I leave it largely up to you to explore

21   whatever you need to explore with that witness.  Okay -- or

22   juror.

23        (Enter juror number 11.)

24

25

1          PROSPECTIVE JUROR NO. 11

2  a prospective juror, having been first duly sworn to answer

3  questions, was examined as follows:

4                    EXAMINATION

5                  BY THE COURT:

6  Q.    Good morning.  Juror number 11?

7  A.    Good morning, Your Honor.

8  Q.    Okay, good morning.  And if you want, you can take off

9  your mask to talk.  You don't have to.  We wipe down the mic

10  every time.  It's totally up to you.

11  A.    I'm fine.

12  Q.    You're good?

13  A.    Yes.

14  Q.    Okay.

15      I see that you did not check any yeses except to the

16  question about vaccination.  So I'm going to ask the lawyers if

17  they have any follow-up questions for you.  Okay?

18  A.    Okay.

19            THE COURT:  All right.  Government?

20            MR. MOOMAU:  No questions, Your Honor.  Thank you.

21            THE COURT:  Okay.  Defense?

22            MR. DAVIS:  Briefly.

23  BY MR. DAVIS:

24  Q.    Are you a civilian with the -- as naval air traffic, or

25  are you military?

1   A.   I'm retired Navy; working for the government.

2            MR. DAVIS:  I have nothing further.  Thank you.

3            THE COURT:  Okay.  Thank you, juror number 11.  I

4   appreciate your time.  Oh, wait a minute.

5            MR. DAVIS:  Sir, what was your specialty in --

6   actually, I'm going to defer to my co-counsel.

7   BY MR. MARTIN:

8   Q.   What was your specialty code when you were in the Navy?

9   What did you do?

10  A.   I was an aviation special mechanic, hydraulics.

11  Q.   Thank you, sir.

12  BY THE COURT:

13  Q.   So you know all about how to keep planes in the air?

14  A.   Yes, ma'am.

15  Q.   Very much appreciate that.  Thank you so much.

16  A.   Thank you.

17            (Exit juror number 11.)

18            THE COURT:  Counsel, before we go on to our next

19  potential juror, we did receive that 66 jurors are vaccinated;

20  10 are not.  So we have 76 total.  Are you comfortable with

21  releasing the jurors?  And I can give you their numbers so that

22  you know where they come in the lineup:  15, 70, 137, 139, 179,

23  252, 307, 333, 358, 362.  And so that would bring us, if we

24  did, that would bring us down to 66 to choose.

25            Brian, give me the golden number.

```
 1              THE COURTROOM DEPUTY:  We need 35 good jurors.

 2              THE COURT:  35 for 3 alternates.

 3              THE COURTROOM DEPUTY:  Correct.

 4              THE COURT:  36 for 4.

 5              THE COURTROOM DEPUTY:  Correct.

 6              THE COURT:  We already have three in the box.

 7              THE COURTROOM DEPUTY:  Can I just confirm that it's

 8   just 179 and not 170 and 179?

 9              THE COURT:  Yes, it's just 179.  That was my mistake.

10   Did you all get those numbers?  You need them again?  15, 70,

11   137, 139, 179, 252, 307, 333, 358, 362.

12         So, you know, this is intended to be a timesaver.  If you

13   all have concerns about it, we can keep them, and you can

14   follow up with individual voir dire.  Know this, though, I

15   think with the numbers being what they are in terms of Covid,

16   we are better served, at least with respect to the numbers

17   above 300 or lower than 300, to let those folks go so that we

18   are all as safe as we can be.

19         But, you know, if we let go the first one, two, three,

20   four, five, we still have five in the lower half in case we

21   need them, but we're not risking any additional danger that

22   comes with unvaccinated folks in the courthouse or with us.

23   But with that, I leave it totally up to you.  Your show.

24              MR. DAVIS:  We're inclined to release them, Your

25   Honor.
```

1          THE COURT:  Government?

2          MR. MOOMAU:  I couldn't tell what Mr. Davis said.

3          THE COURT:  I think he said he's fine to release

4   them.  So we would release 15 through 179.  See where we are

5   when we get, you know, to the 100s.  If we can get through 179,

6   we're --

7          MR. MOOMAU:  That's fine, Your Honor.

8          THE COURT:  Okay.

9          MR. MOOMAU:  We're good with that.

10         THE COURT:  All right.  So let's do that.

11  Mr. Ulander, let's release and me not question 15, 70, 137,

12  139, 179.  And then we will revisit when we get past the 100s

13  if we do.

14         THE COURTROOM DEPUTY:  Yes, Your Honor.

15         THE COURT:  Okay, great.  Thanks.

16     And for the record, we'll release them for cause/hardship

17  in terms of their vaccination status.  Okay, let's get those

18  crossed out.

19         THE COURTROOM DEPUTY:  And I will go get juror number

20  14.

21         THE COURT:  Okay, great.  Thanks.

22     (Enter juror number 14.)

23              PROSPECTIVE JUROR NO. 14,

24  a prospective juror, having been first duly sworn to answer

25  questions, was examined as follows:

1                          EXAMINATION

2                        BY THE COURT:

3   Q.    Good morning, juror number 14.  I want to follow up with

4   you on your yes answers.  You answered yes to number eight

5   about whether understanding English might be hard for you.

6   A.    Not really but I cannot write well.

7   Q.    You cannot write well.  How about reading?  Can you read

8   okay?

9   A.    I can -- yeah, I can, I can read.

10  Q.    Okay, because you're -- I see that you work at McDonald's?

11  A.    Yes, ma'am.

12  Q.    And you have to, I would imagine, read some English to be

13  able to do your job?

14  A.    Of course, yes.

15  Q.    Okay.

16  A.    Yes, I do.  Yes.  Yes, in the place where I work, yes,

17  I -- yes, I speak English, and also I take the order from the

18  screen.

19  Q.    Okay.  So you do have to be able to read all of that?

20  A.    Yes.

21  Q.    Okay.

22        Now, since you take orders from a lot of different people,

23  is it fair that you understand people talking okay?  So

24  witnesses that might testify, you would be able to understand

25  them all right?  Or do you have concern about that?

1    A.    It depends.

2    Q.    What do you think it depends on?

3    A.    Based on, I mean, the way that they speak the language,

4    like English.  Because many people, they have a different way

5    to speak English.  You know, it doesn't sound -- let's say like

6    me.  I was not born here, but I'm American citizen.  My English

7    is not the same like somebody who was born here in America.

8    Q.    Right.

9    A.    And that's, you know, a little bit of, you know -- that's

10   the difference.

11   Q.    Okay.

12   A.    You know, to understand a little bit.  People from

13   Jamaica, they are born in Jamaica, but they are here.  They are

14   American citizen.

15   Q.    Yes.

16   A.    The way they speak English is not, you know, the same

17   again.  That's -- yeah.

18   Q.    Are you talking about accents?

19   A.    Exactly.  That's where I'm coming from.

20   Q.    How long have you been in the United States?

21   A.    Over 30 years.

22   Q.    Thirty years?

23   A.    Yes, over.  Yes.

24   Q.    Okay.  All right, and you said you're a citizen?

25   A.    Yeah, I am citizen because if I was not a citizen, I would

1   not be here.  Right?

2   Q.    Well, good point.  Very good point.  Okay.

3         If you were able during trial to raise your hand if you

4   didn't understand something, so it could either be said louder

5   or more slowly, would that --

6   A.    That would be fine.

7   Q.    Would that take care of any concerns you have?

8   A.    (Nodding head).

9   Q.    Okay.  All right.  Was that a yes?  I'm sorry.

10  A.    Yes.

11  Q.    Okay, wonderful.

12        Okay.  With respect to -- you also checked yes to 21,

13  which is the question about MS-13 and whether you have views

14  about MS-13 that would affect your ability to be a fair juror?

15  A.    No, no, no.  That one I didn't understand.  It would not

16  affect.  Right.

17  Q.    Okay.  So the question was about if you've heard or read

18  things about MS-13, would you be able to forget about those

19  things when you're sitting as a juror and decide this case only

20  on the evidence you hear in this courtroom.  Could you do that?

21  A.    Yes.

22  Q.    Okay.  Any concern or hesitation about that?

23  A.    No.

24  Q.    Okay.

25        All right.  Now, it looks like you originally checked yes

1   for 22 but then checked no.

2   A.    Right.

3   Q.    Okay.  And so let me make sure I'm clear with you.  22

4   asks if you have any views about violent crime or the

5   government's enforcement of the crimes that may affect your

6   ability to be fair and impartial.  Do you have any concerns

7   about that?  Any views about violent crime or how the

8   government prosecutes people?

9   A.    No.

10  Q.    Okay.

11        All right.  You also checked yes to number 28, which is

12  whether you would have difficulty following my instruction

13  about the following:  If you've seen programs about crime,

14  crime shows, how things work in the lab, how crimes are solved,

15  my instruction to you would be you can't use any of that.  You

16  have to put it out of your head.  That's all fictional and it

17  doesn't belong in this court.

18        Would you be able to follow my instruction in that regard?

19  A.    Yes.

20  Q.    Okay.  Any concern about that?

21  A.    No.

22  Q.    Okay.  And then 35 asks you if -- I'm going to instruct

23  you, if you're a juror, that you can't consider if a person is

24  convicted what sentence they might get.  You can't consider

25  punishment.  Punishment is not your concern as a juror.  Would

1   you be able to follow my instruction?

2   A.   Yes.

3   Q.   And not think about punishment as you're sitting,

4   listening to the case?

5   A.   Yes.

6   Q.   All right.

7           THE COURT:  Government, follow-up?

8           MR. MOOMAU:  Your Honor, normally we don't do this,

9   but because of the juror's employment, and there might be a

10  particular address and a McDonald's that comes up during the

11  testimony, I need to ask a question about if she is employed at

12  a McDonald's at a particular address.

13          THE COURT:  So can you ask -- right.  Can you give

14  the address?

15          MR. MOOMAU:  Yes.

16          THE COURT:  Sure.  That's fair.

17  BY MR. MOOMAU:

18  Q.   Ma'am, there may be some testimony about a McDonald's at

19  5600 Riverdale Road, Riverdale Park, Maryland.

20  A.   Say that again.

21  Q.   There may be some testimony about a McDonald's at 5600

22  Riverdale Road in Riverdale Park.  That's not the McDonald's

23  you work at?

24  A.   No.

25  Q.   All right.

1        MR. MOOMAU:  Okay.  That was my only question, Your

2  Honor.

3        THE COURT:  Okay.  Defense?

4        MR. DAVIS:  Your Honor, just briefly.

5  BY MR. DAVIS:

6  Q.    Ma'am, what is your native tongue?

7  A.    I'm sorry, sir?

8  Q.    What language do you speak?

9  A.    Oh!  I speak -- I mean, the language I was born with is

10 called Lingala.

11 Q.    Lingala?

12 A.    Lingala, yes.  But French is like my second language.

13 Q.    And what do you speak at home?

14 A.    I'm sorry?

15 Q.    At home what do you speak?

16 A.    Oh, at home?  You mean here or --

17 Q.    No, no, in your house.  At night when you go home after

18 work?

19 A.    Oh, no, English.

20 Q.    English?

21 A.    Yes.

22 Q.    And how -- and this case is going to involve Spanish

23 speaking individuals with English translations.  I mean, is it

24 going to be difficult for you to kind of follow all of this?

25 A.    I'm not -- I don't know how -- I don't know anything about

1    Spanish.

2    Q.    No, I'm just talking about --

3    A.    Yeah.  The English, yes.  I mean --

4    Q.    With no problem?  You'll be able to --

5    A.    Right.  Yes.

6    Q.    Thank you.

7              THE COURT:  Okay.  Thank you, ma'am.  I appreciate

8    your time.

9              JUROR NUMBER 14:  Okay.  Thank you.

10             THE COURT:  Have a good day.

11             MR. DAVIS:  Your Honor, I know that the witness

12   indicated that she --

13             THE COURT:  She's still here.  Wait one second.

14        (Exit juror number 14.)

15             THE COURT:  Okay, go ahead.

16             MR. DAVIS:  Your Honor, I know that the juror

17   indicated that she can understand English, but I noticed

18   hesitation whenever anyone said something, and I'm concerned

19   with a nine-day trial that she's not going to be able to keep

20   up; and I think what's going to happen is she's just going to

21   follow the crowd.

22             THE COURT:  Well, I disagree.  I think that this

23   witness is highly intelligent.  She speaks more than one

24   language.  She understood my questions perfectly, and she was

25   quite candid, which is what we want; but in the end, she made

1    it quite clear that she understands English, and to the extent

2    there will be any Spanish issues, we have English interpreters.

3    So I'm going to deny the for-cause challenge, and she will be

4    in our potential pool.  Okay.

5              MR. MARTIN:  Your Honor, Your Honor, if I may?

6              THE COURT:  Yes.

7              MR. MARTIN:  I think it's just -- it's more than just

8    a question of whether or not she understands.  It's also a

9    question of during deliberations, whether she can be

10   persuasive; and my impression was that she did not have

11   sufficient command of the English language to play that role.

12   We want each member of the jury to be able to engage.

13             THE COURT:  I understand the issue.  Government?

14             MR. MOOMAU:  Your Honor, I think -- I have concerns

15   about it.  Just not that she'll -- not about her ability to

16   understand.  I think it puts a lot on her to have to stand up

17   and raise her hand whenever there's an issue, and I'm worried

18   that if she's the only one that's doing that --

19             THE COURT:  Well, I was curious as to whether she

20   would do it, frankly, if it presented a problem, but she didn't

21   strike me as someone who would need to do it.  However, if

22   you're jointly asking for her to be stricken, I'm not going to

23   upset progress.

24             MR. MOOMAU:  Okay.

25             THE COURT:  I mean, If you're both in agreement that

```
1   she's just not worth taking the risk, I'll strike her.

2            MR. MOOMAU:  All right.

3            THE COURT:  Okay.

4            MR. MARTIN:  Thank you.

5            THE COURT:  All right, no worries.  Thank you for

6   that.

7        (Enter juror number 25.)

8                         PROSPECTIVE JUROR NO. 25,

9   a prospective juror, having been first duly sworn to answer

10  questions, was examined as follows:

11                          EXAMINATION

12                          BY THE COURT:

13  Q.   Juror number 25?

14  A.   Yes, Your Honor.

15  Q.   Good morning.

16  A.   Good morning, Your Honor.

17  Q.   I wanted to follow up with you about some of your yes

18  answers.  You checked yes to number three, which is the long

19  list of people do you know.  Who caused you to check yes to

20  that question?

21  A.   I forgot what the long list of people were now.

22  Q.   That's why -- yep.  That was one of the reasons why I said

23  jot it down because --

24  A.   Yes, you did, Your Honor.

25  Q.   -- you won't be able to recall.  It was a long list.  Was
```

1   it someone in the room?  If you look around, anybody here that

2   caused you to check yes?

3   A.    No, Your Honor.

4   Q.    Or anybody downstairs in the jury pool?

5   A.    I did recognize one individual in the jury pool.

6   Q.    Okay.  Tell me about that.  How do you know the person?

7   Who is it?

8   A.    Well, I didn't, obviously, talk to him, but he looked like

9   a member of Montgomery County Police Department that I knew.

10  Q.    Okay.  So were you employed in the Montgomery County

11  Police Department?

12  A.    No, Your Honor.

13  Q.    Okay.  Then tell me about how you -- you said he looks

14  like someone you know?

15  A.    Yes.

16  Q.    Is it someone from your neighborhood?  Or just tell us

17  about that.

18  A.    I've seen him on duty before.  I have a lot of interface

19  with a lot of Montgomery County Police officers.

20  Q.    As part of your job or as --

21  A.    No, just as a friendly gesture.

22  Q.    I see.  So as part of like in your community do you mean?

23  A.    Yes, Your Honor.

24  Q.    Okay.  All right, so now that we've talked about it, does

25  this jog your memory?  Was there anybody else?

1    A.    That was the only individual, Your Honor.

2    Q.    That was the only person, okay.

3          So let me ask you, if you were both selected to be jurors,

4    would the fact that you know him outside of this proceeding

5    affect how you serve as jurors together?

6    A.    No, Your Honor.

7    Q.    All right.  Would you be able to follow instructions as to

8    not talking about the case until you all retire for

9    deliberating?  Would you be able to follow my instruction in

10   that respect?

11   A.    Yes, Your Honor.

12   Q.    Okay.

13         All right.  You also checked yes to number four, which is

14   whether the dates and times of this trial may pose a problem

15   for you.

16   A.    Yes, it would, Your Honor.

17   Q.    Can you tell us about that?

18   A.    Certainly.  I'm 71 years old, and I'm a caretaker for my

19   wife.  She has a lot of conditions.  She's recovering from

20   cancer and heart surgery, and I'm the sole provider.

21   Q.    So there is no one else who can take care of her if you're

22   not there?

23   A.    Exactly.

24   Q.    Okay.  All right, and is she home-bound?

25   A.    Most of the time that's a correct statement.

1    Q.    Okay.  All right, do you have concerns about COVID as

2    well?  Do you all stay pretty much in the house?

3    A.    No, I have no concerns.  We have both been vaccinated and

4    boostered twice.

5    Q.    Okay.  All right, not that that isn't enough, but is there

6    anything else that concerns you about the dates and times of

7    this trial?

8    A.    No, Your Honor.

9    Q.    Okay.  All right.

10         All right.  Sir, if you would step out for a moment, I

11   would appreciate it.

12   A.    Yes, Your Honor.  Certainly.

13         (Exit juror number 25.)

14           THE COURT:  All right, before I went on and spent a

15   lot of time with follow-up questions, the sole caretaker of an

16   elderly person with these kind of health conditions seems to be

17   worthy of a for-cause strike, but I wanted to see where you all

18   are with that.

19           MR. DAVIS:  I agree.

20           MR. MOOMAU:  The government agrees.

21           THE COURT:  Okay.

22           MR. MOOMAU:  We make the motion if the defense

23   doesn't make it.

24           THE COURT:  All right.  Okay, so then we'll strike

25   25.  Okay.

1          THE COURTROOM DEPUTY:  So for Counsel, this is juror

2   number 30, but he wrote some notes so I'm going to slide it up.

3   (Enter juror number 30.)

4                    PROSPECTIVE JUROR NO. 30,

5   a prospective juror, having been first duly sworn to answer

6   questions, was examined as follows:

7                         EXAMINATION

8                        BY THE COURT:

9   Q.   Hi, juror number 30.

10  A.   Hi.

11  Q.   All right.  Thank you so much for being here today, and I

12  want to just follow up with you on your yes answer, which it

13  looks like it was to number 12.

14  A.   Yes.  I have an aunt that works in the Department of

15  Justice.

16  Q.   Okay.  So that was the person you were thinking of?

17  A.   Yes.

18  Q.   Okay.  Do you know what she does at the Department of

19  Justice?

20  A.   Well, she's a retired paralegal.

21  Q.   Okay.  Was she in the criminal, if you know?

22  A.   No.  She's in Chapter 13 bankruptcy.

23  Q.   Is there anything then about anything your aunt has ever

24  shared with you about her job that would affect your ability to

25  be a fair juror in this case?

```
1   A.    No, Your Honor.
2   Q.    Okay.
3         I think that was the only yes answer you had.  So let me
4   turn to the government first and see if they have any follow-up
5   for you.
6             MR. MOOMAU:  No questions, Your Honor.  Thank you.
7             THE COURT:  Okay.  Defense?
8             MR. DAVIS:  No questions, Your Honor.
9             THE COURT:  All right.  Thank you, sir.
10        (Exit Juror number 30.)
11        (Enter juror number 31.)
12                     PROSPECTIVE JUROR NO. 31,
13   a prospective juror, having been first duly sworn to answer
14   questions, was examined as follows:
15                          EXAMINATION
16                          BY THE COURT:
17   Q.   Good morning.  Juror number 31?
18   A.   Yes.
19   Q.   I wanted to follow up with you about some of your yes
20   answers -- number 12 -- you answered yes to, which is whether
21   you, a family member, or friend ever been employed by -- and it
22   lists a number of agencies, the courts, FBI, U.S. Attorney's
23   Office.  What caused you to check yes to number 12?
24   A.   I work for CSOSA, Court Services Offender Services Agency.
25   Q.   How long have you been with CSOSA?
```

1   A.    Fourteen years.

2   Q.    And what do you do for them?

3   A.    I'm a case manager.

4   Q.    So what does case management entail?

5   A.    I'm like a counselor.  I'm like a counselor, and I work on

6   a mental health/drug and alcohol unit.

7   Q.    Okay.  So you provide counseling services to individuals

8   under CSOSA's supervision?

9   A.    Yes.  And I place them in the community and so on.

10  Q.    Okay.  And have you done that your whole time, 14 years?

11  A.    Yes.  I'm also retired military.  So I did it in the

12  military as well.

13  Q.    Same thing?

14  A.    Yes.

15  Q.    Okay.  And are the individuals you assist, are they in

16  pretrial or post conviction or both?

17  A.    Both.

18  Q.    All right.  So if you're selected as a juror, one of the

19  instructions I'll give you is to take all of your experiences

20  that you've had in your current job, put them out of your mind,

21  and decide this case based solely on the evidence you hear in

22  this courtroom.  Would you be able to do that?

23  A.    Yes, ma'am.  I believe so.

24  Q.    Okay.  Any cause for concern given that you're employed

25  basically in the Criminal Justice System?

1  A.    No.

2  Q.    Okay.  All right, and then you also answered yes to number

3  14, which is whether you, a family member, or close friend had

4  ever been employed by -- and this talked about parole and

5  probation.  Is your job the same reason why you checked yes to

6  that?

7  A.    Yes.

8  Q.    Okay.

9        All right, let me ask the government if they have any

10 follow-up for you.

11        MR. MOOMAU:  No questions for juror 31.  Thank you.

12        THE COURT:  Okay, thanks.

13 BY MR. DAVIS:

14 Q.    Ma'am, you indicated you did the same thing in the

15 military.

16 A.    Yes.

17 Q.    How long were you in the military?

18 A.    I'm retired military.  So 21 years and like 6 months.

19 Q.    Thank you.

20        THE COURT:  All right.  Thank you, ma'am.  Appreciate

21 your time.

22     (Exit juror number 31.)

23     (Enter juror number 36.)

24

25

1              PROSPECTIVE JUROR NO. 36,

2    a prospective juror, having been first duly sworn to answer

3    questions, was examined as follows:

4                          EXAMINATION

5                          BY THE COURT:

6    Q.   Hi, sir.

7    A.   Hi.

8    Q.   Juror 36?

9    A.   Yes.

10   Q.   All right.  I'm going to follow up on some of your yes

11   answers.

12   A.   Okay.

13   Q.   I'm going to take number 4 and number 36 together, because

14   I think they might have something to do with each other.

15   A.   Okay.

16   Q.   Number four was about whether the dates and times --

17   A.   Yes.

18   Q.   -- might affect your ability to serve.  And number 36 was

19   is there anything else that might affect your ability to serve.

20   Is my hunch right, that they might have something to do with

21   each other?

22   A.   Well, yeah.  I guess so, yeah.

23   Q.   All right.  Well, you tell me.  What's going on?

24   A.   It's kind of the same thing.  So I just answered yes to

25   both of them, I guess.

```
 1   Q.   Sure.
 2   A.   So my family is currently in New York, and they are there
 3   for a wedding, which is going to be this Saturday coming up,
 4   and it's her cousin's wedding.  And it's a -- you know, a very
 5   just small group of people, but I'm supposed to be doing all of
 6   the grilling and cooking there this Saturday.  So that's like
 7   one of the things why.
 8   Q.   Okay.
 9   A.   And I know you -- so it would be going through on Saturday
10   too, right?
11   Q.   Oh, no, no, no.
12   A.   Oh, no?
13   Q.   As a matter of fact, I was going to ask you if you're
14   planning to go up on Friday, for example.
15   A.   Right.
16   Q.   You're in luck.
17   A.   Okay.
18   Q.   Because we will not be sitting --
19   A.   I just heard every day.  So I wasn't sure.  You didn't say
20   anything about weekends.
21   Q.   Yeah, no.
22   A.   Okay.
23   Q.   We'll sit -- this week Thursday will be our last day this
24   week.
25   A.   Okay.
```

1  Q.  And then we'll start up on Monday.

2  A.  Okay.

3  Q.  Does that answer your concerns about that?

4  A.  Yeah, for that question, yes.

5  Q.  Okay, great.

6      And is there anything else about the dates or times that

7  would affect your ability to serve?

8  A.  Other than that, if I don't -- which I'm sure a bunch of

9  people are the same way.  I'm in the restaurant business.  So

10 if I don't work, I don't get any money, and it's -- you know,

11 the 15th is coming up, which is Friday, which is one of the

12 reasons why it's going to be really hard for me to miss work

13 because I'm still trying to get my money for the mortgage

14 together.

15 Q.  Okay.  And when do you usually work?

16 A.  Monday through Friday during the day.

17 Q.  During the day, of course.

18 A.  Yep.

19 Q.  Do you have any ability -- I know it would be a sacrifice

20 --

21 A.  Right.

22 Q.  -- and I'm not minimizing it, but if you were selected,

23 could you shift hours and work after court or is --

24 A.  Yeah, I could probably work something out with my owners

25 and the rest of the people I work with.

1  Q.    Okay.  All right, you do receive, it's not a lot --

2  A.    Right.

3  Q.    -- but you do receive a stipend to help, you know --

4  A.    Right.

5  Q.    -- defray the cost.

6  A.    Right.

7  Q.    But we're mindful of that.

8  A.    Okay.

9  Q.    So I appreciate that.

10  A.    Yep.

11  Q.    Anything else with respect to question four?

12  A.    No, that was it.

13  Q.    All right.

14        You also answered yes to number 12 and 14, which might be

15  related.  It's about whether you, a family member, or friend is

16  employed by federal government agencies, state, local?

17  A.    Right.  I think one of the -- it said -- well, my wife

18  applied for FBI.

19  Q.    Your wife applied for the FBI?

20  A.    Applied for the FBI, yes.

21  Q.    Okay.

22  A.    And then I have a lot of friends that are in the --

23  with -- I have one friend that's in the FBI and a couple other

24  ones that are in -- like a detective from Montgomery County and

25  then some other Montgomery County cops.

1  Q.    Okay.  So let's start with your wife.  The fact that she

2  applied to the FBI, would that affect your ability to be fair

3  and impartial in this case?

4  A.    No.

5  Q.    How about the friends who are in law enforcement?  Do they

6  talk to you about their jobs?

7  A.    Yeah, and they have talked about MS-13 quite a bit so --

8  Q.    Okay.  All right, and I take it you -- let's see -- yep,

9  you answered that question yes as well.

10  A.    Yeah.

11  Q.    So if you are selected, one of the instructions that I

12  would give you is anything you've learned --

13  A.    Right.

14  Q.    -- from your friends in law enforcement about MS-13,

15  anything, you have to check it at the door --

16  A.    Right.

17  Q.    -- and not consider it.

18  A.    Right.

19  Q.    Decide this case only on the evidence you hear in the

20  court and my instructions.

21  A.    Right.

22  Q.    Would you be able to do that?

23  A.    I mean, I would like to say I would, but I -- I'm not a

24  hundred percent.  It's just they have talked not about cases or

25  like stuff but just about instances that have happened and

1   stuff like that.  So I just -- I don't know how to say it.  I'm

2   not a fan of MS-13.  I don't know how else to say that.  But I

3   would like to say I would be impartial but I don't know.  I'm

4   not a hundred percent positive.

5   Q.   Understood.

6        How about number 23, which is -- you answered yes to that

7   one, which is about whether you have any views about persons

8   who are here without authorization that might affect your

9   ability to be fair and impartial.

10  A.   Right.  So, again --

11  Q.   Is that similar information?

12  A.   Pretty much.  Yeah, it's not that I don't like immigrants

13  or undocumented workers.  It's just they're kind of tied

14  together I guess with MS-13.

15  Q.   Okay.  Got it.

16       How about -- you answered yes to 26, which is reading,

17  writing, and speaking Spanish.  Can you tell us about that?

18  A.   I didn't know what else to say.  I mean, I work in the

19  restaurant business.  So I work with a lot of Spanish -- so I

20  know some like broken Spanish and a little Spanish here and

21  there.

22  Q.   Okay.

23  A.   But I couldn't follow a conversation if someone talked to

24  me like strictly in Spanish.

25  Q.   Got it.  So if I were to instruct you, you would listen

1  only to the English translation?

2  A.    Yes.

3  Q.    You're good with that?

4  A.    Yes, perfectly fine with that.

5  Q.    All right.

6      Let me turn to the government and see if they have any

7  follow-up for you.

8            MR. MOOMAU:  No questions, Your Honor.  Thank you.

9            THE COURT:  Defense?

10           MR. DAVIS:  No questions.

11           THE COURT:  Okay.  Thank you, sir.

12           JUROR NUMBER 36:  Okay.

13     (Exit juror number 36.)

14           MR. DAVIS:  Your Honor, honestly I think he would

15  probably make a good juror, and I think his answers are partly

16  influenced by the fact that he's not going to be able to work

17  when he's here, and I don't think anybody wants to work

18  80 hours a week, 8 hours on the jury and 8 hours at night.  So

19  for that reason, I would ask that he be stricken.

20           THE COURT:  Government, any position --

21           MR. MOOMAU:  The government is not going to oppose

22  it, Your Honor.

23           THE COURT:  Okay.  All right, then 36 is stricken.

24     (Enter juror number 38.)

25

1                    PROSPECTIVE JUROR NO. 38,

2    a prospective juror, having been first duly sworn to answer

3    questions, was examined as follows:

4                         EXAMINATION

5                         BY THE COURT:

6    Q.    Hi there.  How are you?

7    A.    I'm fine.  Thank you.

8    Q.    Good.  Juror number 38?

9    A.    Yes, ma'am.

10   Q.    I'm just going to follow up with you on some of your yes

11   answers.

12   A.    Yep.

13   Q.    You answered yes to whether you, a family member, or

14   friend has been involved in a legal dispute with the

15   government.  And then you also very clearly referenced to 31 as

16   well, which was about whether you, a family member, or friend

17   had been convicted, accused of a crime.  So I'm assuming the

18   answer is that -- your follow-up is yes as to both?

19   A.    Yes, correct.

20   Q.    Okay.  Can you tell us about that?

21   A.    Yes.  Just in full transparency, my former husband,

22   divorced for seven years, but in 2005, he was indicted for wire

23   fraud through the FBI, pled guilty.  So I don't feel like it

24   affects my judgment, but I wanted to be transparent.

25   Q.    I appreciate that.

1    A.    You're welcome.

2    Q.    Was his case in this court?

3    A.    No, it was in Philadelphia.

4    Q.    Okay.  So safe to say you don't know anybody, any of the

5    lawyers or government --

6    A.    No.  No, ma'am.

7    Q.    Okay.  All right, and you said there's nothing about that

8    experience that would affect your ability to be fair and

9    impartial in this case?

10   A.    No.  No, not at all.

11   Q.    Okay.

12         All right, and then you also answered yes to 26, which is

13   whether you read, write, or speak Spanish.

14   A.    Minored in college.  It's been a long time.  I can

15   understand a little bit.

16   Q.    Well, you just graduated.  This is obvious --

17   A.    Of course.  I'm like -- yeah, a couple years ago, yep.

18   Q.    All right.  So Spanish minor.  There will be

19   Spanish-speaking witnesses; however, there will be an English

20   translation.

21   A.    Okay.

22   Q.    Will you be able to put the Spanish out of your mind and

23   listen only to the English translation?

24   A.    Absolutely.  I mean, I just -- I don't speak Spanish.  I

25   can understand it, but I would certainly focus on the

1  translator for accuracy, knowing how important that is.

2  Q.    Okay.

3        Same with regard to transcripts that might go back.  So

4  the transcripts of -- that have been done by official court

5  interpreters.  Would you be able to look only at the English

6  and not try to translate yourself?

7  A.    Absolutely.

8  Q.    Okay.

9             THE COURT:  All right, Government, any follow-up?

10            MR. MOOMAU:  Yes, just a couple of questions.

11  BY MR. MOOMAU:

12  Q.    And I hate to turn my back to you, but I have to talk into

13  the microphone.

14            THE COURT:  Well, we're going to -- Ms. Grossi keeps

15  trying to give you a microphone that might make it -- let's

16  see.

17            MR. MOOMAU:  There we go.  All right.

18            THE COURT:  Okay.

19  BY MR. MOOMAU:

20  Q.    For the case involving your former husband, were you

21  married at the time?

22  A.    I was.

23  Q.    And as part of that case, did the law enforcement talk to

24  you?

25  A.    No.  They did not.

 1  Q.    Okay.  All right, that's all I have.

 2  A.    I was not directly a part of it.

 3  Q.    No, I just didn't know if you were interviewed or

 4  questioned.  That was it.  Thank you.

 5  A.    You're welcome.  My pleasure.

 6          THE COURT:  Defense?

 7          MR. DAVIS:  No questions, Your Honor.

 8          THE COURT:  Okay.

 9      All right.  Thank you, ma'am.  I appreciate your time.

10          JUROR NUMBER 38:  Thank you.

11          THE COURT:  Take care.

12          JUROR NUMBER 38:  Thank y'all.

13      (Exit juror number 38.)

14          THE COURT:  I'm sorry, which number was that?

15          THE COURTROOM DEPUTY:  38.

16          THE COURT:  38?

17          THE COURTROOM DEPUTY:  Yes, Your Honor.

18          THE COURT:  Before we get the next person in, close

19  the door for a second.  Am I reading it right that the person's

20  name is Lawrence?  I guess it could be a woman, but I just

21  wanted to make sure I was on the same -- that my 38 --

22          THE COURTROOM DEPUTY:  Yes, Your Honor.

23          THE COURT:  Okay.  Do you see that, All?  Can we just

24  confirm that the person's name is that, just out of an

25  abundance of caution?

1        THE COURTROOM DEPUTY:  Yes, Your Honor.

2        THE COURT:  All right, thanks.

3        THE COURTROOM DEPUTY:  Do you want the next juror

4   now?

5        THE COURT:  Let's just do this first to make sure we

6   don't have an issue.

7     (Brief pause.)

8        THE COURTROOM DEPUTY:  Your Honor, I confirmed with

9   the juror myself that that is her name.

10        THE COURT:  Okay, great.  Perfect.

11     (Enter juror number 49.)

12                  PROSPECTIVE JUROR NO. 49,

13   a prospective juror, having been first duly sworn to answer

14   questions, was examined as follows:

15                        EXAMINATION

16                      BY THE COURT:

17   Q.   All right.  Good morning, still.  Juror 49, I wanted to

18   follow up with you on some of your yes answers.  You checked

19   yes to number four, which is whether the dates and times of

20   this trial might pose some difficulty.

21   A.   Yes.

22   Q.   Can you tell us about that?

23   A.   So currently I'm working for a non-profit organization

24   during the summer.  So we're very understaffed.  So it's very

25   difficult to keep up with that.

1   Q.   And it's -- am I seeing it right, it's a summer camp?

2   A.   Yes.

3   Q.   So presumably you're there during work hours, like 9 to 5?

4   A.   I'm there 24/7, actually.

5   Q.   Oh, it's like a sleep-away camp?

6   A.   Yes.

7   Q.   Okay.  All right, let me just follow up.  You answered yes

8   to only one other question, which is whether you, a family

9   member, or close friend has been accused, convicted, or subject

10  of a criminal investigation?

11  A.   Yes.  I believe at some point in time in the past my dad

12  got convicted.

13  Q.   Okay.

14  A.   I'm not sure how long but --

15  Q.   And no real details about that?

16  A.   No.

17  Q.   Okay.

18          THE COURT:  All right.  Government, any follow-up for

19  this witness?

20          MR. MOOMAU:  No, Your Honor.  Thank you.

21          THE COURT:  Defense?

22          MR. DAVIS:  No, Your Honor.

23          THE COURT:  Okay.  Thank you, sir.  I appreciate your

24  time.  Good luck with the kids.

25      (Exit juror number 49.)

1          MR. DAVIS:  I make a motion.

2          THE COURT:  Yeah, are you all right striking?

3          MR. MOOMAU:  Yes.

4          THE COURT:  He's in battle 24/7 in summer camp.

5     Thank you, but no.  All right, 49 is stricken.

6          (Enter juror number 57.)

7                    PROSPECTIVE JUROR NO. 57,

8     a prospective juror, having been first duly sworn to answer

9     questions, was examined as follows:

10                    EXAMINATION

11                    BY THE COURT:

12    Q.    Good morning, juror 57.

13    A.    Good morning, ma'am.

14    Q.    I just want to follow up with you on some of your yes

15    answers.

16    A.    Sure.

17    Q.    You checked yes to both 11 and 13.  11 asks whether you, a

18    family member, or friend attended law school, received any

19    training in the law, worked with a lawyer, et cetera; and 13

20    asks whether you, a family member, or friend has been employed

21    by a firm involving criminal defense work.

22    A.    Yes, ma'am.

23    Q.    The things you were thinking about, are they responsive to

24    both?

25    A.    Yes, ma'am.

1    Q.    Okay.  Tell us about that.

2    A.    Sure.  My mother-in-law was a legal secretary and a

3    paralegal for I think it was at the time two law firms.  Within

4    the last two years she recently is deceased.

5    Q.    Okay.

6    A.    And that was basically it.

7    Q.    And did your mom, mother-in-law, work for a criminal

8    defense firm?  Did they do criminal law?

9    A.    Yes, ma'am.

10   Q.    Okay.  Do you remember the name of the law firm?

11   A.    Rome and Haas.

12   Q.    I'm sorry?

13   A.    Rome and Haas.

14   Q.    Rome and Haas?

15   A.    Yes.

16   Q.    Okay.  Where was that located?

17   A.    Annapolis.

18   Q.    Did your mother-in-law talk to you about the details of

19   her job?

20   A.    No, ma'am.

21   Q.    Is there anything about your mother-in-law's prior

22   employment that would affect your ability to be fair and

23   impartial in this case?

24   A.    No, ma'am.

25   Q.    Okay.  All right, that is 11 and 13.

1      31 you checked yes to, which asked if you, a family

2  member, or close friend had ever been convicted of a crime,

3  accused of criminal conduct, or been the subject of a criminal

4  investigation.

5  A.    Yes, ma'am.

6  Q.    Can you tell us about that?

7  A.    Sure.  My brother was convicted of three DWIs, and so he

8  served time for that.

9  Q.    Okay.

10 A.    The only other question I have was the -- I guess my

11 wife's ex-husband was convicted of a double homicide.

12 Q.    Okay.

13 A.    This was before --

14 Q.    Did you know him or her at the time?

15 A.    So I did not know him at the time.  This was while I was

16 in military service so.

17 Q.    So is it many years ago?

18 A.    Yes, ma'am.

19 Q.    Is there anything about your wife's ex-husband's

20 experience that you know that would affect your ability to be

21 fair and impartial in this case?

22 A.    No, ma'am.

23 Q.    Okay.  How about your brother's experience --

24 A.    No, ma'am.

25 Q.    -- with his DUI's?

1   A.    No, ma'am.

2   Q.    Anything that would affect your ability to be a fair juror

3   in this case?

4   A.    No, ma'am.

5   Q.    Okay.  Anything else you were thinking of?

6   A.    No, ma'am.

7   Q.    Okay.

8              THE COURT:  Let me turn to the government.

9              MR. MOOMAU:  Yes, Your Honor.

10  BY MR. MOOMAU:

11  Q.    Sir, you had mentioned your wife, but I didn't see any

12  information on the questionnaire about your wife's occupation.

13  A.    Oh, so my wife is retired.  She was previously a -- she

14  worked with healthcare, health insurance, but now she's

15  retired.  She's been retired for the past three or four years

16  now, since we were taking care of my mother-in-law.

17  Q.    All right.  Thank you, sir.

18             THE COURT:  Defense?

19             MR. MARTIN:  Just briefly, Your Honor.

20             THE COURT:  Yep.

21  BY MR. MARTIN:

22  Q.    Did you say that you were in the service?

23  A.    Yes, sir.

24  Q.    And what was your special code?

25  A.    I was a Gunner's Mate.  I worked in the United States

1    Navy.

2    Q.   Okay.

3            THE COURT:  Did you say Gunner's Mate?

4            MR. MARTIN:  Gunners Mate, yeah.

5            JUROR NUMBER 57:  Gunner's Mate, yes, ma'am.  I was a

6    weapons specialist.  So I worked with heavy guns.

7    BY MR. MARTIN:

8    Q.   Okay.  And you never had an aside -- you know, you didn't

9    work in law enforcement or investigations or anything like

10   that?

11   A.   No, sir.  I actually got out of that because of the fact

12   with the military, I felt like I needed to get away from guns.

13           MR. MARTIN:  Very good.  I have nothing further.

14   Thank you.

15           THE COURT:  All right.  Thank you, sir.

16       (Exit juror number 57.)

17           THE COURT:  All right.  Are we ready for our next

18   juror?

19       (Enter juror number 64.)

20                   PROSPECTIVE JUROR NO. 64,

21   a prospective juror, having been first duly sworn to answer

22   questions, was examined as follows:

23                       EXAMINATION

24                       BY THE COURT:

25   Q.   Hi sir.

1   A.   Hi.

2   Q.   Juror number -- I can't see it.  Are you 64?

3   A.   0064.

4   Q.   All right.  I want to follow up on your yes answer to

5   number ten, which you say you're presently a party in a case

6   pending in a court.  Can you tell us a little bit about that?

7   A.   Yes.  My wife and I rented an apartment like five years

8   ago.

9   Q.   Okay.

10  A.   They didn't want to pay us back our deposit.  So we went

11  to court in Upper Marlboro.  The verdict was in our favor the

12  first time.  They still didn't want to pay.  Took him back.  In

13  our favor the second time.  Still didn't want to pay.  Then he

14  sent a check with 50 bucks to us, which is way less than what

15  the judge ordered before.

16  Q.   I see.  So this was about your security deposit?

17  A.   Yes.

18  Q.   Landlord didn't give it back?

19  A.   He just gave us 50 bucks no matter what the judge ordered

20  him to pay.  So my wife and I are trying to take him back once

21  more.

22  Q.   Okay.  And the case is still going on?

23  A.   Well, we didn't go back the third time, but we are

24  planning to because we need our money.

25  Q.   All right.  And where is that case?  In D.C.?

1   A.    Upper Marlboro.

2   Q.    I'm sorry.  Upper Marlboro?

3   A.    Yes.

4   Q.    Okay.  And are you representing yourself?

5   A.    Yeah, my wife and I are representing ourselves.  We won

6   twice.

7   Q.    All right.  Now, this is a very different case.

8   A.    Okay.

9   Q.    Would anything about your experience in your

10  landlord/tenant case affect your ability to be a fair and

11  impartial juror in this case?

12  A.    Oh, no.  I'll be all right.

13  Q.    Okay.

14          THE COURT:  All right.  Government, any follow-up for

15  juror 64?

16          MR. MOOMAU:  No questions, Your Honor.  Thank you.

17          THE COURT:  Defense?

18          MR. DAVIS:  No questions, Your Honor.

19          THE COURT:  All right.  Thank you, sir.

20          JUROR NUMBER 64:  Okay, thanks.

21          THE COURT:  I appreciate it.

22      (Exit juror number 64.)

23      (Enter juror number 67.)

24

25

1                     PROSPECTIVE JUROR NO. 67,

2    a prospective juror, having been first duly sworn to answer

3    questions, was examined as follows:

4                          EXAMINATION

5                          BY THE COURT:

6    Q.    Hi there.  Jury 67?

7    A.    Hello.

8    Q.    Hello.  I just wanted to follow up with you on some of

9    your yes answers.  You checked yes to number four, which is

10   about whether the dates and times of this trial might pose a

11   problem.

12   A.    Correct.  So I understood the question as nine days was

13   allocated for the trial starting today.

14   Q.    Yep.

15   A.    No sessions on this -- two Fridays, this Friday coming up

16   and the one after.

17   Q.    That's right.  And no weekends.

18   A.    And no weekends, right.

19         But if you guys do get through voir dire, which is this

20   process today or tomorrow, you guys will start trial on

21   Wednesday, and I have a -- my daughter is having a medical

22   procedure Thursday morning.

23   Q.    Okay.  So --

24   A.    That's the only reason.

25   Q.    Okay.  So in any event, this Thursday you have to be with

1    your daughter for her procedure?

2    A.    In the morning, yeah.

3    Q.    In the morning?

4    A.    Um-hum.

5    Q.    When would you be available?  Say we were able to just

6    start late on Thursday, when --

7    A.    Afternoon, midday afternoon.  We report first thing in the

8    morning.

9    Q.    I'm sorry?

10   A.    We report first thing in the morning.  So I'm assuming by

11   midday or after.

12   Q.    You would -- okay.

13   A.    Yeah, I would be available.

14   Q.    All right.  Is that the only thing you were thinking

15   about?

16   A.    For that question, yes.

17   Q.    Okay.  All right.  And then you also answered yes to

18   number 18.  Well, there's a question mark next to it.  So let's

19   make sure.  It says, "Would you tend to give greater or lesser

20   weight to the testimony of witnesses from the FBI, postal

21   service, police department, or other law enforcement agencies

22   simply because they work in law enforcement?"

23   A.    Right.  So, actually, it's a no.  Now that you --

24   Q.    It's a no?

25   A.    Yeah.  Now that you repeated the question, I understand

1  it, and it's a no.

2  Q.    Okay.  So just to be clear, because one instruction I

3  would give you is every witness is judged on the content of

4  their testimony and how they deliver it.  You don't give any

5  presumption or any like special treatment because of where the

6  person comes from.

7  A.    Correct.

8  Q.    You would be able to follow my instruction?

9  A.    Absolutely.  Yeah, I put a question mark there because I

10 didn't really quite hear you, and we moved on to the next one,

11 and I didn't get a chance to follow up, and I knew you would

12 ask me here.

13 Q.    Got it.  Okay, very good.  Thank you.

14       All right, and then you also answered yes to number 26,

15 which is whether you read, write, or speak Spanish.

16 A.    I do.  I speak Spanish.

17 Q.    Okay.  Are you fluent?

18 A.    Speaking it, yes; reading and writing it, no.

19 Q.    So one of the things that will definitely occur in this

20 trial is we'll have Spanish-speaking witnesses whose testimony

21 will be translated into English.

22 A.    I would still need a translation.

23 Q.    That's -- well, would you be able to follow my instruction

24 that you follow only the English translation?  You don't try to

25 translate yourself.

1  A.    Yeah, I would still need the translations because I'm

2  still not confident in my Spanish.

3  Q.    Got it.  Okay, very good.  Okay, thank you.

4       And then you checked yes with a question mark to 32, which

5  is whether you, a family member, or close friend had ever been

6  the victim of a crime, witness to a crime, or witness for the

7  prosecution or defense.

8  A.    Correct.  So the question mark is there because I wasn't

9  sure how to answer.  So I have been assaulted.  And during the

10  process, the individual did a PBJ.  So it didn't actually go to

11  trial.  So I wasn't sure how to answer that.

12  Q.    Okay.  Well, so if you were the person assaulted --

13  A.    Um-hum.

14  Q.    -- I think you did right and answered yes because you

15  would be considered the victim, right?

16  A.    Yes.

17  Q.    Was there anything about that case, the way you were

18  treated, that would affect your ability to be fair in this

19  case?

20  A.    No, not at all.  No.

21  Q.    Okay.  All right, you also checked yes and then crossed it

22  out; so let's just make sure.  31, whether you, a family

23  member, or close friend had ever been convicted of a crime,

24  accused of criminal conduct.

25  A.    Right.  I misunderstood the question.  So one of the

1  jurors -- excuse me.  One of the other potential jurors asked

2  it, and so I got clarification.

3  Q.    I see.

4  A.    And that's why I tried to initial it to try to let you

5  know.

6  Q.    All right, thank you.

7         Follow-up question for you about the procedure on

8  Thursday.  Is it an elective procedure that could be moved or

9  is it something that can't --

10 A.    It can't be moved.  We've been actually on hold for almost

11 eight months for this procedure.

12 Q.    Yep.  I understand.  Okay.

13            THE COURT:  All right.  Government, any follow-up?

14            MR. MOOMAU:  Just one question.

15 BY MR. MOOMAU:

16 Q.    The questionnaire doesn't list any information for your

17 spouse's employment.

18 A.    I'm widowed.  So I'm not --

19 Q.    Oh, okay.  I'm sorry.

20 A.    No, that's okay.

21            MR. MOOMAU:  That's it, Your Honor.

22            THE COURT:  Defense?

23            MR. DAVIS:  No questions, Your Honor.

24            THE COURT:  Okay.  Thank you.  Thank you so much.

25            JUROR NUMBER 67:  Sure.  Thank you.

1          THE COURT:  I appreciate your time.

2      (Exit juror number 67.)

3          THE COURT:  I'm hesitant.  I know you all are

4  thinking about whether to move for cause.

5          MR. MOOMAU:  Yes.

6          THE COURT:  I'm hesitant with an otherwise qualified

7  juror to say that in the event she's not peremptorily stricken

8  or, you know, that we can't accommodate her because of an

9  appointment on a single day, but I'll hear you all on it.

10          MR. MOOMAU:  I mean, Your Honor --

11          THE COURT:  We can reserve, too, and see where we

12  are.

13          MR. MOOMAU:  We know how it is with doctors'

14  appointments, and a short appointment can go into a long

15  appointment.  We didn't ask her where it was.  I noted where

16  she lived at.  I don't know if there is any way we can move her

17  down to the bottom or something.

18          THE COURT:  That's what I was thinking is just put

19  her in reserve, put an asterisk, and if we're really hurting at

20  the end; but if we get to 35 or 36 -- 35 is for 15; 36 is for

21  16.  And if we get there and we don't need her, I can strike

22  her.  Does that work for both sides?

23          MR. DAVIS:  That works for us.

24          THE COURT:  Put her in reserve?

25          MR. DAVIS:  We agree.  She would be a good juror,

1    too.

2            THE COURT:  She would, which is why I'll -- you know,

3    I'm happily -- I'll happily entertain whether you want to keep

4    her, and we just have to be efficient.  We've got, you know,

5    we've got some wiggle -- so anyway, think about it.  I'll put

6    her in reserve.  I won't count her in yet.

7            (Enter juror number 72.)

8                        PROSPECTIVE JUROR NO. 72,

9    a prospective juror, having been first duly sworn to answer

10   questions, was examined as follows:

11                        EXAMINATION

12                        BY THE COURT:

13   Q.   All right.  Good afternoon, juror number 72.

14   A.   Good afternoon.

15   Q.   I want to follow up with you on some of your yes answers.

16   You answered yes to number five, which is whether you're taking

17   any medication that might affect your ability to serve.  You

18   also answered six, which is about whether you have any

19   impairments.  Can you tell us about that?

20   A.   Yes.  I take a medication for cholesterol, which I take at

21   night, and one of the side effect is I don't sleep enough.

22   Usually I get like two hour's sleep.

23   Q.   And does that -- do you work during the day?

24   A.   Yes.

25   Q.   Does that affect your ability to do your job?

1    A.    Sometimes I get tired midday; so I have to take naps.

2    Q.    During the day?

3    A.    Yes.

4    Q.    What's your job?

5    A.    I'm an accountant.

6    Q.    Okay.  Do you work from your house or do you actually --

7    A.    Yes, I work from home.

8    Q.    Okay.  So you're able to stop and take a rest and then go

9    back to your job?

10   A.    Yes.

11   Q.    All right.  Yeah, if we were in court, we probably

12   couldn't take those kinds of breaks.  You would get a morning

13   break and an afternoon break and a lunch break.  Is your

14   concern that would not be enough for you to be able to pay

15   attention?

16   A.    Yes.  And sometimes I have to drink a lot of water and a

17   lot of coffee, too, so I can stay alert.

18   Q.    Okay.

19   A.    I'm the only one in the office that I do the accounting

20   work.

21   Q.    I'm sorry.  Can you speak up just a little bit?

22   A.    Yes.  That I do drink a lot of water and coffee during the

23   day so I can stay alert.

24   Q.    Okay.  All right, is there anything else about your health

25   that you're concerned about?

1  A.    I usually get some panic attacks sometimes and some

2  anxiety when -- it depends on the day or -- you know, I just

3  get anxious.

4  Q.    I'm sorry.  The last part?

5  A.    I get anxious.

6  Q.    Anxious?  Is there something in particular that is a

7  trigger for you, like being inside or being around --

8  A.    It can be anything.

9  Q.    It could be anything?

10  A.    Yeah.

11  Q.    How often does that happen?

12  A.    Sometimes maybe twice a week.

13  Q.    Okay.

14          THE COURT:  All right.  Counsel, any follow-up on

15  those issues?

16          MR. MOOMAU:  Nothing for the government, Your Honor.

17  Thank you.

18          MR. DAVIS:  Nothing, Your Honor.

19          THE COURT:  All right.

20      Ma'am, if you wouldn't mind just stepping outside for a

21  second, that would be great.

22      (Exit juror number 72.)

23          THE COURT:  I wanted to ask you all if you wanted to

24  go further with a witness who says that insomnia makes it

25  impossible to pay attention.

1    MR. DAVIS:  I mean, I really hate to let her go

2  because she's one of the few Hispanics that have been showing

3  up in the jury --

4    THE COURT:  I'm happy to continue.  I just wanted to

5  check in with you all.

6    MR. DAVIS:  I mean, I'm wondering if there are other

7  factors going on here for her not wanting to sit.  I mean, I'm

8  not --

9    THE COURT:  Sure.  Do you want me to continue?  I

10  sure can.

11    MR. DAVIS:  No.  Court's indulgence.  Let me consult

12  with my co-counsel.

13    THE COURT:  Sure.

14    (Brief pause.)

15    MR. DAVIS:  We have no objection to letting her go,

16  Your Honor.

17    THE COURT:  Government?

18    MR. MOOMAU:  The government feels the same, Your

19  Honor.  If someone needs to move, the government would move

20  just based on her medical issues.

21    THE COURT:  Okay.  All right, then we will strike 72

22  and move on to 78.

23    THE COURTROOM DEPUTY:  And Counsel, the jury -- or,

24  Your Honor, the jury department wants to know what the Court's

25  lunch plans are.

1    THE COURT:  We'll stop at 1:00 for -- I want to make

2    it brief because I really want us to get through this.  So a

3    half hour.

4    THE COURTROOM DEPUTY:  Yes, Your Honor.

5    (Enter juror number 78.)

6    PROSPECTIVE JUROR NO. 78,

7    a prospective juror, having been first duly sworn to answer

8    questions, was examined as follows:

9    EXAMINATION

10    BY THE COURT:

11   Q.   Hi there.  Juror 78?

12   A.   Yes.

13   Q.   I want to follow up with you on your yes answers.  You

14   checked yes to reading, writing, and speaking Spanish.

15   A.   Yes.

16   Q.   Can you tell us a little bit about that?

17   A.   I grew up in Guatemala, and I lived there for 15 years and

18   I came here.

19   Q.   Okay.  You also sound like you speak and read and write

20   English very well.  Is that fair?

21   A.   Yes.

22   Q.   Okay.  Now, in this case, there will be Spanish speaking

23   witnesses, but we will have an English translator, and that

24   person is certified to translate in English.  If you were a

25   juror, would you be able to listen only to the English, put the

1   Spanish out of your mind, and not translate it yourself?

2   A.   Yes.

3   Q.   Okay.  Same with the written word.  There may be

4   transcripts that are translated into English, and the

5   instruction will be you follow only the written English word.

6   Would you be able to do that?

7   A.   Yes.

8   Q.   Okay.

9        And then you also checked yes to number 31, which is

10  whether you, a family member, or close friend had ever been

11  convicted of a crime, accused of a crime, or the subject of an

12  investigation.

13  A.   Yes.

14  Q.   Can you tell us about that?

15  A.   Yes.  My ex-boyfriend was -- he was charged for rape of a

16  minor, but that was five years ago, I believe.

17  Q.   Okay.  Were you together at the time?

18  A.   No.

19  Q.   Did you have any involvement in that case?

20  A.   No.

21  Q.   Anything about that experience of your ex-boyfriend that

22  would affect your ability to be fair and impartial in this

23  case?

24  A.   No.

25  Q.   Okay.

1          THE COURT:  All right.  Government, any follow-up?

2          MR. MOOMAU:  No questions, Your Honor.  Thank you.

3          THE COURT:  Defense?

4          MR. DAVIS:  No questions, Your Honor.

5          THE COURT:  All right.  Thank you so much.

6          JUROR NUMBER 78:  Thank you.

7     (Exit juror number 78.)

8     (Enter juror number 85.)

9                    PROSPECTIVE JUROR NO. 85,

10    a prospective juror, having been first duly sworn to answer

11    questions, was examined as follows:

12                         EXAMINATION

13                        BY THE COURT:

14    Q.   Good afternoon, juror 85.

15    A.   Good afternoon, Your Honor.

16    Q.   I just wanted to follow up with you about one of your yes

17    answers about whether you, a family member, or friend has any

18    training in the law.

19    A.   Well, I was a legal technician with the Department of

20    Labor, and also, with the U.S. Department of Education, a

21    paralegal specialist.

22    Q.   A paralegal specialist?

23    A.   Yes.

24    Q.   For both departments?

25    A.   For the Department of Labor is the paralegal.

1    Q.    Okay.  Are you still employed with either of them now?

2    A.    No, I'm retired.

3    Q.    Congratulations!

4    A.    Thank you.

5    Q.    Is there anything about your past employment that would

6    affect your ability to be a fair and impartial juror in this

7    case?

8    A.    No, not that I know of.  I have 42 years at the U.S.

9    Department of Education and Labor.

10   Q.    No involvement in any criminal law; is that correct?

11   A.    No.  No criminal.

12   Q.    Any court experience where you guys would go to court?

13   A.    No.  In the Office of Administrative Law Judges we would

14   work on workmen's comp cases.

15   Q.    Okay.

16   A.    Longshore and Black Lung.

17   Q.    All right.  Okay, good work but not relevant here.

18           THE COURT:  Government?  Any follow-up, Government?

19           MR. MOOMAU:  No questions, Your Honor.  Thank you.

20           MR. DAVIS:  No questions, Your Honor.

21           THE COURT:  All right.  Thank you so much.

22           JUROR NUMBER 85:  Thank you.

23       (Exit juror number 85.)

24       (Enter juror number 87.)

25

```
 1                       PROSPECTIVE JUROR NO. 87,

 2   a prospective juror, having been first duly sworn to answer

 3   questions, was examined as follows:

 4                            EXAMINATION

 5                           BY THE COURT:

 6   Q.   Hi, juror 87.

 7   A.   Yeah.

 8   Q.   How are you?

 9   A.   Good.  How are you?

10   Q.   Good.  I'm going to ask the lawyers if they have any

11   follow-up questions for you, starting with the government.

12            MR. MOOMAU:  Based on the questionnaire, Your Honor,

13   no questions.

14            THE COURT:  Okay.  Defense?

15            MR. DAVIS:  No questions.

16            THE COURT:  All right.

17   BY THE COURT:

18   Q.   Let me ask you, Mr. -- well, juror 87, sorry.  How long

19   have you been a technical account manager with Design Data?

20   A.   Just about a year.

21   Q.   And has that been -- before that was this your line of

22   work?

23   A.   Yes.

24   Q.   Okay.  So you've been employed in this -- are you -- did

25   you go to high school?  College?  Tell me a little bit about
```

1    your education.

2    A.    Oh, yeah.  I went to high school in West Virginia and

3    college at West Virginia University.

4    Q.    Okay.  And, yeah, good football team back in the day.  I

5    don't know what you think about them now but, or if you care.

6    A.    I can only hope.

7    Q.    All right.  Thank you so much, juror 87.  I appreciate it.

8    A.    Yep.  Thank you.

9          (Exit juror number 87.)

10         (Enter juror number 88.)

11                        PROSPECTIVE JUROR NO. 88,

12   a prospective juror, having been first duly sworn to answer

13   questions, was examined as follows:

14                        EXAMINATION

15                        BY THE COURT:

16   Q.    Hi there.

17   A.    Hello.

18   Q.    Jury 88?

19   A.    That's correct.

20   Q.    All right.  I want to follow up with you on one of your

21   yes answers.  You checked yes to number four, which is whether

22   the dates and times of this trial might pose a problem.

23   A.    Yeah, I was wondering if I could get an excuse for a

24   religious obligation that I have this Wednesday.

25   Q.    Okay.  Can you tell us a little bit about when, how, like

1  what are the logistics of it?

2  A.    Yeah, it's a Hindu ritual.  You know, I think it's to

3  celebrate the full moon.  And also, it's my daughter's 16th

4  birthday.  So it's sort of like a combination celebration of

5  the two.

6  Q.    So your current plans were to start when and end when?  In

7  other words, like, what we're trying to figure out is if you're

8  selected, is there a way we could ask you to accommodate us a

9  little bit and us accommodate you.  Like, if it's at the end of

10 the day or something like that.  So just wanted to get a little

11 more detail on that.

12 A.    Yeah, so how long is the -- I'm sorry.  The service,

13 again, I think you said it was Monday through Friday, 9 to 5?

14 Q.    Customarily, it's 9:30 to 5:00.  But if we had to, for

15 example, if you were chosen and we had to break a little early,

16 that could be accommodated.  Maybe we would -- I've done this

17 before.

18 A.    Sure.

19 Q.    Counsel is like, what is she about to say?

20        We may cut lunch short and give an additional break and

21 then get you out earlier.

22 A.    Yeah, that would work.  That would work.  Just because the

23 conflict is just on this Wednesday.

24 Q.    It's just Wednesday?

25 A.    Just Wednesday, right, yeah, for this week.

1    Q.    Okay.

2    A.    Right.  So, yeah, if you could accommodate, if I could

3    leave a little early, that could be possible.

4    Q.    Okay.  So in a perfect world, if we were out by 4:00,

5    4:30, that would work for you?  Or were you thinking --

6    A.    Yeah, I mean, 4:00, 4:30 is fine.  I think earlier would

7    be even better, like 3:00, 3:30; but, you know, I'm sure I

8    could try to accommodate you.

9    Q.    Okay.

10            THE COURT:  All right.  Government, any follow-up for

11   this juror?

12            MR. MOOMAU:  No questions, Your Honor.  Thank you.

13            THE COURT:  Defense?

14            MR. DAVIS:  No questions.

15            THE COURT:  All right.  Thank you, sir.

16            JUROR NUMBER 88:  Okay, thank you.

17      (Exit juror number 88.)

18            THE COURT:  All right.  Counsel, any issues with 88?

19            MR. MOOMAU:  No, Your Honor.

20            THE COURT:  Okay.

21            MR. MOOMAU:  I don't think he's one -- I mean, the

22   conflict doesn't seem that great that we would need to move him

23   like the other.

24            THE COURT:  I agree with you.  And if we get to it

25   and he's in, we can start a half hour early and, you know, we

1    could shave off time and figure it out.

2            MR. MOOMAU:  Yes.

3            THE COURT:  Okay.

4            THE COURTROOM DEPUTY:  Your Honor, we went through

5    that last bit a little bit quick; so the other jurors are on

6    their way up now.

7            THE COURT:  Okay.

8            THE COURTROOM DEPUTY:  Just for the record, that gets

9    us to 12 good jurors I believe.

10           THE COURT:  Yes.  I have 12 and that is excluding 67

11   right now.

12           THE COURTROOM DEPUTY:  Correct.

13           THE COURT:  Yes.

14      (Enter juror number 89.)

15                     PROSPECTIVE JUROR NO. 89,

16   a prospective juror, having been first duly sworn to answer

17   questions, was examined as follows:

18                     EXAMINATION

19                     BY THE COURT:

20   Q.   Hello, sir.

21   A.   Hello.

22   Q.   Juror 89?

23   A.   Yes.

24   Q.   Okay.  I wanted to follow up with you on some of your yes

25   answers.  You checked yes to number nine, which is whether you

1   have ever served as a juror on a grand jury or in any criminal

2   trial.

3   A.    Yes.

4   Q.    Can you tell us about that?

5   A.    It was probably about -- it was over 30 years ago.  I was

6   a juror for a court.  I can't even remember what it was but --

7   Q.    Do you remember anything about the case?

8   A.    I think it was a robbery.

9   Q.    Okay.  Do you remember what -- did you go all the way to

10   the verdict?

11   A.    Yes.

12   Q.    Do you remember what that was?

13   A.    The verdict was not guilty.

14   Q.    Okay.  Anything about that experience that would affect

15   your ability to be a fair and impartial juror in this case?

16   A.    No.

17   Q.    Okay.

18       All right.  You also answered yes to number 11, which is

19   whether you, a family member, or friend have any training in

20   the law.

21   A.    Yes.

22   Q.    Okay.  Tell us about that.

23   A.    My wife is a paralegal, and my son just graduated from

24   college with criminal justice.

25   Q.    Okay.  Congratulations.

1    A.    Thank you.

2    Q.    Does he talk to you about his major, what he's learning?

3    A.    Sometimes.

4    Q.    Okay.  Well, then you're ahead of the game because I know

5    mine won't talk to me about school.

6         Is there anything about what your son has shared with you

7    that would affect your ability to be fair in this case?

8    A.    No.  I mean, the things he's told me made me an open mind,

9    clear person.

10   Q.    Okay.  And that is one of the instructions that you would

11   get if you were a juror, to keep an open mind and consider the

12   evidence only in this case and apply the law.

13   A.    Right.

14   Q.    So it sounds like he's telling you the same thing.

15   A.    Yes, he has.

16   Q.    All right.

17        How about your wife's job as a paralegal?  In what field

18   has she worked?

19   A.    Well, she went to school for a paralegal.  She never

20   worked in a law office or anything.

21   Q.    She has not?

22   A.    No.

23   Q.    Okay.

24   A.    But she has a paralegal background.

25   Q.    Does she ever talk to you about that?  Does it come up?

1   A.    No.

2   Q.    All right.  Anything else you were thinking of when you

3   answered yes to number 11?

4   A.    No.

5   Q.    All right.  You also checked yes to 22, which is whether

6   you have any views about violent crime or the government's

7   enforcement of the criminal law and whether it would affect

8   your ability to be fair and impartial.

9   A.    No, I wouldn't.

10  Q.    Okay.  So do you have any views that caused you to check

11  yes for that question?

12  A.    What was the question again?

13  Q.    Sure.  So do you have views about violent crime or the

14  government's enforcement of criminal law that would affect your

15  ability to be fair as a juror in this case?

16  A.    No, it wouldn't affect my ability to be fair about it,

17  but, I mean, my views are that the law isn't above the law.  I

18  mean, I've always, you know, said that.

19  Q.    And that -- so what I take that to mean is that law

20  enforcement, they are people, too --

21  A.    Correct.

22  Q.    -- and they must be judged based on --

23  A.    Be accountable for what they do.

24  Q.    Okay.  So one of the instructions that I will give you is

25  that all witnesses stand equal before a court of law, meaning

1    you don't give any less or more consideration to law

2    enforcement simply because they are law enforcement.

3    A.    No, I don't.

4    Q.    You would be able to follow my instruction?

5    A.    Yes, I would.

6    Q.    Okay.

7          All right, and then you also answered yes to 32, which is

8    whether you, a family member, or close friend had ever been the

9    victim of a crime, witness to a crime, or witness in a criminal

10   case.

11   A.    Yes.  Again, this was a long time ago.  I was in a bank

12   when it got held up.

13   Q.    And did you have to testify in a trial?

14   A.    Yes, yes.

15   Q.    Okay.  Do you remember what court that was in?

16   A.    That's been probably about 40 years ago.

17   Q.    So safe to say nobody in this room was part of the

18   prosecution or the defense?

19   A.    No.

20   Q.    Okay.  All right.  Anything about that experience would

21   affect your ability to be a fair juror in this case?

22   A.    No.

23   Q.    Okay.

24             THE COURT:  Government, any follow-up for this

25   witness?

1          MR. MOOMAU:  No, Your Honor.  Thank you.

2          THE COURT:  Defense?

3          MR. DAVIS:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  Thank you, sir.  I appreciate

5    your time.

6          JUROR NUMBER 89:  All right, you're welcome.

7    (Exit juror number 89.)

8    (Enter juror number 96.)

9                    PROSPECTIVE JUROR NO. 96,

10   a prospective juror, having been first duly sworn to answer

11   questions, was examined as follows:

12                    EXAMINATION

13                    BY THE COURT:

14   Q.   Hi, sir.  Number 96?

15   A.   Yes, 96.

16   Q.   All right.  I want to follow up with you on some of your

17   yes answers.  You answered yes to number ten, which is whether

18   you're currently a party in a case pending in this court or any

19   other court.

20   A.   I don't think I answered yes to that.

21   Q.   Oh, my bad.  You're right.  I need to follow my own

22   numbers here.

23        Okay, 11.  You did answer yes to 11, which is whether you

24   or a family member, or friend have any legal education or

25   training.

1  A.    Yeah, I'm a retired patent lawyer, and my wife is a lawyer

2  as well.

3  Q.    What kind of law does your wife practice?

4  A.    She's a trademark attorney at the Trademark Office.

5  Q.    Okay, so say to say neither of you have ever done any

6  criminal law?

7  A.    No criminal.  She actually was a clerk at the D.C. Court

8  of Appeals a long time ago.

9  Q.    Okay.  All right, and have you ever been involved in any

10  trials?

11  A.    No.

12  Q.    Okay.  So is there anything then about your background and

13  experience or your wife's that would affect your ability to be

14  a fair and impartial juror in this case?

15  A.    No.

16  Q.    Okay.  You also answered yes to 12, which is whether you

17  or a family member have been employed or sought employment by

18  -- many government agencies were listed, the Court, the

19  Department of Justice, FBI, et cetera.

20  A.    Yeah, I thought that her clerkship would make that a yes

21  answer.

22  Q.    Got it.  Were you thinking of anything else when you

23  answered yes?

24  A.    No.

25  Q.    Okay.  And then 13, whether you, a family member, or close

1  friend ever been employed by a firm involved in criminal

2  defense work.

3  A.    We both worked for firms that did white collar crime.

4  Neither of us actually did any of that.

5  Q.    Okay.  So anything about that experience that would affect

6  your ability to be a fair juror?

7  A.    No.

8  Q.    Okay.

9       Okay, and you also answered yes to number 20, which is

10  whether you have any views about cooperating witnesses that may

11  give testimony in exchange for possibly a lighter sentence.  Do

12  you have any views about that that would affect your ability to

13  be a fair juror in this case?

14  A.    I believe they would be more prone to lie than the

15  populous as a whole.  So I would tend to discount or weigh

16  their testimony less than I would weigh someone else's.  I

17  don't know how that would play here.

18  Q.    Well, so, one of the things I would do generally is give

19  you jury instructions, and those instructions deal with how to

20  weigh the credibility of the witnesses, and they tell you, you

21  know, as he talked about, everybody stands equally before the

22  Court, and that you are the sole judge of the person's

23  credibility.

24       Similarly, you're permitted to take a person's cooperation

25  into account but you need not.  It's your call based on how the

1    witness testifies, what they testify to, and what you hear in

2    this courtroom.  In that regard, would you be able to follow my

3    instructions?

4    A.    Yes.

5    Q.    Okay.  And so any notions that you have coming in, would

6    you be able to leave them at the door and decide this case

7    based on the evidence you hear and the instructions I give you?

8    A.    Yes.

9    Q.    Okay.  All right, I think that's it.

10              THE COURT:  Let me turn to the government.

11              MR. MOOMAU:  No questions, Your Honor.  Thank you.

12              MR. DAVIS:  No questions, Your Honor.

13              THE COURT:  All right.  Thank you, sir.

14        (Exit juror number 96.)

15        (Enter juror number 104.)

16                   PROSPECTIVE JUROR NO. 104,

17    a prospective juror, having been first duly sworn to answer

18    questions, was examined as follows:

19                        EXAMINATION

20                     BY THE COURT:

21    Q.    Good afternoon, juror number 104.

22    A.    Good afternoon.

23    Q.    I want to follow up with you on some of your yes answers.

24    You checked yes to number nine, which is whether you've ever

25    served as a juror in a grand jury or a criminal trial.  Can you

1   tell us about that?

2   A.   Criminal trial.

3   Q.   Okay.  Tell us some details if you remember.

4   A.   Well, actually, it was a jury -- it was a while back.  It

5   was -- I don't even think it was a criminal trial.  It was --

6   the young man was demanding a company -- he was wrongfully

7   terminated.

8   Q.   I see.  So it was a civil trial.

9   A.   Yes.

10  Q.   Do you remember what courthouse it was in?

11  A.   Washington, D.C.  I'm not quite sure where.

12  Q.   All right.  How long ago was this?

13  A.   It was a few years.  I would say about ten.

14  Q.   Ten?

15  A.   Ten, fifteen years.

16  Q.   Okay.  Did the case go all the way to the end where you

17  decided --

18  A.   Yes, ma'am.

19  Q.   -- either for the plaintiff --

20  A.   Yes, ma'am.

21  Q.   -- the person bringing the case, or the defense?

22  A.   Yes.

23  Q.   What did you end up deciding?

24  A.   The outcome?  We went for the company.

25  Q.   The company, okay.

1   A.    Um-hum.

2   Q.    Was there anything about your experience as a juror in

3   that case that would affect your ability to be fair and

4   impartial as a juror in this case?

5   A.    None whatsoever.

6   Q.    All right.  You also checked yes to number 26.

7   A.    Yes.

8   Q.    Which is whether you read, write, and speak Spanish.

9   A.    I do.

10   Q.    Okay.  Can you tell us a little bit about your proficiency

11   or your --  how well?

12   A.    I read, I write, and understand Spanish quite fluently.

13   Q.    Okay.

14   A.    So I came here when I was -- I came to this country when I

15   was 12 years old.

16   Q.    Okay.

17   A.    So all of my education here has been in the United States

18   pretty much.

19   Q.    So first language was Spanish?

20   A.    Um-hum.

21   Q.    And then you learned English?

22   A.    That's correct.

23   Q.    Do you consider yourself fluent in English?

24   A.    Yes, I do.

25   Q.    Okay.  So we will have Spanish-speaking witnesses;

1    however, the testimony will be translated by an official court

2    interpreter into English, and I'll instruct you to only

3    consider the English testimony.  Would you be able to not

4    translate the Spanish on your own and listen only to the

5    English, take that as the official testimony?

6    A.    Yes, ma'am.

7    Q.    Same question with respect to the written word.  If there

8    is any transcription, my instruction will be follow the

9    official English transcript.  Do not translate on your own.

10   Would you be able to do that?

11   A.    Yes, ma'am.

12   Q.    Okay.

13        All right, and then you also answered yes to 31, which is

14   whether you, a family, or close friend had ever been convicted

15   of a crime, accused of criminal conduct, or been the subject of

16   a criminal investigation.

17   A.    A friend -- well, actually, a family of mine.  My son was

18   convicted.  He's actually doing time right now in Ocean City.

19   Q.    Okay.  In Ocean City?

20   A.    He's in a correctional institute.

21   Q.    Can you tell us, was it a state case?

22   A.    Yes, it was.  Well, it was a criminal pretty much, second

23   degree rape.

24   Q.    Okay.  All right.  That must have been personally very

25   hard for you.

1  A.    Extremely.

2  Q.    All right.  Were you involved?  Not in the -- were you

3  involved with your son in his experience in his case?

4  A.    He was living outside of my home.  Actually, I'm still

5  stuck with the bill.  That's about it.

6  Q.    That's what kids do for you, right.

7        So did you ever have to testify as a witness?

8  A.    No, ma'am.

9  Q.    Did you go to court for any of the proceedings?

10  A.    Actually, we pleaded -- you know, he pleaded, and so never

11  had to go to court or nothing like that.

12  Q.    Okay.  Do you have any views or feelings about the way he

13  was treated that might affect your ability to be fair in this

14  case?

15  A.    No.  I mean, we never went to court or nothing that would

16  make me think that -- would cloud my judgment.

17  Q.    Okay.  And tell me again how long ago was this?

18  A.    2016.

19  Q.    2016.

20        THE COURT:  All right.  Counsel, any follow-up for

21  this juror?

22  BY MR. MOOMAU:

23  Q.    Sir, is there anything about that, the case that was

24  involving your son, anything at all that might make you believe

25  that you can't be fair in this case to both the prosecution and

1  the defense?

2  A.    No, nothing.

3  Q.    Thank you, sir.

4  A.    You're welcome.

5          MR. DAVIS:  No questions, Your Honor.

6          THE COURT:  Okay.  Thank you, sir.  I appreciate your

7  time.

8          JUROR NUMBER 104:  Thank you.

9      (Exit juror number 104.)

10          THE COURT:  Counsel, 88 has conveyed to jury that he

11  now would like to be released by noon on that day.  I'm not

12  moved.  If he's selected, then, you know, we might give him a

13  little bit of breathing room, but I didn't hear anything from

14  him directly that he cannot both serve and accommodate his

15  family commitments.  So I'm not interested in bringing him back

16  up and revisiting this.  Does anybody disagree with that?

17          MR. MOOMAU:  No, Your Honor.

18          THE COURT:  All right.

19          MR. DAVIS:  No, Your Honor; although, I would be

20  interested in whether it was for religious reasons or for his

21  daughter's birthday.  Again, if it's for religious reasons, it

22  may be an issue.

23          THE COURT:  It may but, frankly, he had the

24  opportunity to tell us, and it didn't rise to the level of such

25  concern that when I asked him specifically, you know, would

1    four be okay, it was then, well, maybe three would be better

2    but I'm good.  You know, so I didn't see any need to -- he

3    didn't give me any grounds to say I am somehow infringing on

4    his religious freedom if I try to accommodate him an hour or

5    so.

6         Why don't we see where we are --

7              MR. DAVIS:  That's fine.

8              THE COURT:  -- in the process.

9              MR. DAVIS:  That's acceptable.

10             THE COURT:  Okay, great.

11             MR. DAVIS:  I don't know what that holiday is.  I

12   have no idea what it is.  I don't know if it's like a happy

13   holiday or --

14             THE COURT:  I don't know either.  He also didn't

15   volunteer it.  So I didn't have any real -- I'm assuming, I'm

16   taking him at face value, that it is a religious holiday; but I

17   also accepted his testimony that he could accommodate both in

18   the way we discussed so.

19        All right.  Ready for the next juror?

20        (Enter juror number 110.)

21                  PROSPECTIVE JUROR NO. 110,

22   a prospective juror, having been first duly sworn to answer

23   questions, was examined as follows:

24                      EXAMINATION

25                    BY THE COURT:

1    Q.    Good afternoon.  Juror 110?

2    A.    Yes, ma'am.

3    Q.    All right.  I'm going to ask the lawyers if they have any

4    follow-up questions for you.

5    A.    Okay.

6              THE COURT:  Government?

7              MR. MOOMAU:  Just a minute, Your Honor, please.

8              THE COURT:  Sure.

9         (Brief pause.)

10   BY MR. MOOMAU:

11   Q.    Ma'am, your employment, specifically, what is it?  It says

12   here on the questionnaire healthcare.

13   A.    I'm a medical coder for a hospital in Arizona.

14   Q.    Okay.  And you're able to do that --

15   A.    Typically I do it from home, yes.

16   Q.    All right.

17        And there was one question where you checked yes and then

18   you went to no.

19   A.    Yes.

20   Q.    It was --

21   A.    It was about if anybody had worked for -- immediate

22   family.

23   Q.    Right.

24   A.    My mother formerly worked for an attorney group in

25   Pennsylvania close to 30 years ago.

1  Q.   All right.  Okay.

2          MR. MOOMAU:  All right.  Thanks all, Your Honor.

3  Thank you.

4          THE COURT:  Defense?

5          MR. DAVIS:  Nothing, Your Honor.

6          THE COURT:  All right.  Thank you so much.  I

7  appreciate it.

8          JUROR NUMBER 110:  Thank you.

9      (Exit juror number 110.)

10     (Enter juror number 125.)

11                 PROSPECTIVE JUROR NO. 125,

12 a prospective juror, having been first duly sworn to answer

13 questions, was examined as follows:

14                      EXAMINATION

15                     BY THE COURT:

16 Q.   Hi there.  Juror 125?

17 A.   Yes.

18 Q.   I want to follow up with you on some of your yes answers.

19 You checked yes to number four, which is whether the dates and

20 the times of this trial might pose a problem for you.

21 A.   To be honest, I found the question a little confusing.

22 Q.   Okay.  Sorry about that.

23 A.   So I thought I would just be very straightforward.

24 Q.   All right, well, why don't I lay it out for you.

25 A.   Okay.  So our family is scattered across the country.

1  Q.    Okay.

2  A.    We were hoping to go on vacation starting around

3  July 24th, and I couldn't work out from your instructions if

4  the trial would be over by then.

5  Q.    Okay.

6  A.    While the holidays is important to us, so is the civic

7  duty of being a juror.

8  Q.    Well, thank you.  I very much appreciate that.

9        Do you have plane reservations, or is this something

10 that's a little wiggly?

11 A.    We held off doing the plane reservations until we had this

12 conversation.

13 Q.    Okay.  All right, well, then you really are taking your

14 civic duty very seriously, and we really do appreciate that.

15       So we are scheduled -- let me just tell you where we are.

16 We're scheduled to go this week, Monday through Thursday.

17 A.    Right.

18 Q.    Next week, Monday through Thursday.

19 A.    Okay.

20 Q.    I don't anticipate --

21         THE COURT:  Counsel, you correct me if I'm wrong --

22 that we're going to go in testimony into the next week.  Right?

23 Am I right about that?

24         MR. MOOMAU:  Yes, Your Honor.  That's correct.

25         THE COURT:  But we might have deliberations that go

1  into -- bleed into the next week, and we would start those

2  deliberations the Monday, the 25th.

3  BY THE COURT:

4  Q.   But is your vacation going to be for, I would imagine,

5  longer than a weekend?

6  A.   We would hope so.

7  Q.   And is it flexible in terms of --

8  A.   It could be flexible certainly if needed to be.

9  Q.   Okay.  Because sometimes the case -- you know, it

10  sometimes goes in faster; sometimes not.  So it's a little bit

11  hard to pin down.  I'll tell you for sure we're not sitting on

12  the 15th.  We're not sitting on the 22nd.  And I will and the

13  lawyers will be very mindful of the jury's time.

14  A.   Thank you.

15  Q.   With that, would you extend my thanks to your family and

16  hopefully be able to accommodate us if you're selected?

17  A.   Yes.

18  Q.   Okay.

19       All right, and then you also answered yes to 26, which is

20  whether you read, write, or speak Spanish.

21  A.   I read Spanish very badly.

22  Q.   All right.  So one of my instructions will be there will

23  be Spanish-speaking witnesses.  We will have an official court

24  translator, both for the written and the spoken word, and my

25  instruction will be to follow the English translation.  You'll

1  be able to do that?

2  A.   Yes, understood.

3  Q.   Okay.

4       And then you checked yes to number 32, which is whether

5  you, a family member, or close friend had ever been the victim

6  of a crime, witness to a crime, or a witness for the

7  prosecution or defense in a criminal trial.

8  A.   Yeah, our house got broken into like 25 years ago,

9  30 years ago, and, like, somebody took a VCR.  That sort of

10 thing.

11 Q.   Okay.  Anything ever happen with that case?  Anybody

12 prosecuted?

13 A.   We lived in England at the time.  Eventually someone was

14 arrested and confessed to that and 60 other break-ins.  So

15 we're not really sure about what was going on there, but it was

16 a long, long time ago.

17 Q.   Okay.  Is there anything about that experience that would

18 affect your ability to be fair in this case?

19 A.   No, nothing at all.

20 Q.   Okay.

21          THE COURT:  All right, Government, any follow-up?

22          MR. MOOMAU:  Yes, Your Honor.

23 BY MR. MOOMAU:

24 Q.   Just one question, sir.  According to the information,

25 you're a professor?

1   A.    Yes.

2   Q.    And just wondering what type of courses you teach.

3   A.    I teach courses on introduction to health behavior in

4   human society and the economics of food and malnutrition.

5   Q.    All right.

6           THE COURT:  What was the last part?  Economics --

7           JUROR NUMBER 125:  Of food and malnutrition.

8           THE COURT:  Oh, okay.

9           MR. MOOMAU:  Thank you very much.

10          THE COURT:  Defense, anything?

11          MR. DAVIS:  I think it's just more out of curiosity

12   as opposed to juror qualification --

13          THE COURT:  Can you move your microphone closer,

14   Mr. Davis?

15   BY MR. DAVIS:

16   Q.    I how do you teach at Cornell and live down here?  Just

17   out of curiosity, do you travel back and forth?

18   A.    It is a long commute.

19   Q.    Yes.  I've made that trip before.

20   A.    To be precise, my classroom teaching is all done in one

21   semester.  I was hired primarily to be a researcher.  So my

22   classroom teaching is done within a condensed period of time,

23   and the rest of the year ordinarily I meet with my graduate

24   students remotely, and I also do some international traveling.

25   Q.    Great.  Thank you.

1          THE COURT:  Great.  Thank you so much.  I really

2     appreciate it.

3          JUROR NUMBER 125:  Thank you.

4     (Exit juror number 125.)

5          THE COURTROOM DEPUTY:  Your Honor, we have another

6     five jurors out there.  Is the Jury Department able to let the

7     rest out for lunch a little earlier?

8          THE COURT:  Sure.  Yes, I can't imagine we're going

9     to get through five in ten minutes.

10          THE COURTROOM DEPUTY:  It's only four.

11          THE COURT:  Four?  Oh, right.  Yes.

12     If we can, Counsel, I think it would be great if we could

13     get through these four and then take our break.

14     (Enter juror number 126.)

15                    PROSPECTIVE JUROR NO. 126,

16     a prospective juror, having been first duly sworn to answer

17     questions, was examined as follows:

18                         EXAMINATION

19                       BY THE COURT:

20     Q.   Okay.  Juror number 126.

21     A.   Good afternoon.

22     Q.   Good afternoon.  I just want to follow up with you on some

23     of your yes answers.  You circled number four and wrote down

24     that you have travel for work.  You're a federal employee?

25     A.   That's correct.

1  Q.    Can you tell us about that?

2  A.    So I'm traveling to New York to meet a travel order of

3  Comanche Nation.  I'm working on the repatriation of some human

4  remains back to Comanche Nation, and I've been, unfortunately,

5  working on this for about eight or nine months.

6  Q.    Okay.  And this is pre-scheduled travel and meeting?

7  A.    Yes.

8  Q.    And when is it to occur?

9  A.    I leave on Wednesday and come back on Friday.

10  Q.    Of this week?

11  A.    Of this week.

12  Q.    Okay.  Any chance -- and I know this is a big ask -- if

13  you were selected, could you reschedule that?

14  A.    I couldn't reschedule it.  I would have to just cancel the

15  visit, and I may be able to find somebody else to step in my

16  place.

17  Q.    Okay.  Have you made any calls to see if there is someone

18  who could?

19  A.    I sent a few emails this morning.

20  Q.    All right.

21  A.    I haven't had any return emails yet.

22  Q.    Okay.

23        All right, let's talk about some of your other yes

24  answers.  It says that you checked yes to 11, and it says

25  spouse is an attorney.

1  A.    That's correct.

2  Q.    Okay.  Tell us about what your spouse does.

3  A.    She practices in family law.  She's primarily out of

4  Howard County, but she does roughly five counties worth of

5  work; anything from protective orders to child custody, divorce

6  and modifications, anything in the family law realm.

7  Q.    Okay.  All right, does she talk to you about her work,

8  like the details?

9  A.    Not people but I know the events.

10  Q.    Okay.  All right, anything about what your wife shares

11  with you that would affect your ability to be a fair and

12  impartial juror in this case?

13  A.    I don't think so.

14  Q.    Okay.

15        All right, you also checked yes to number 13, which is

16  whether you, a family member, or friend had been employed with

17  a firm or an organization that does criminal defense work.

18  Were you thinking of your wife or someone else?

19  A.    Yes, my wife, yeah.

20  Q.    Okay.  Has she ever done criminal defense work or simply

21  that her work --

22  A.    Well, so we do have two close friends, one was a Howard

23  County State's Attorney, and, actually, she's now within the

24  federal court system.  I think she does mostly state department

25  work.  I don't really know any details of her current work.

1    Q.    Okay.

2    A.    And then the other good friend of ours is -- does a lot of

3    litigation and criminal work.

4    Q.    Do they talk to you about those experiences that they have

5    in their criminal cases?

6    A.    Not really, no.

7    Q.    No?

8    A.    I know I don't -- you shouldn't be asking so I don't.

9    Q.    Okay, got it.  All right.  So knowing that, is it fair to

10   say that their work really wouldn't affect your ability to be

11   fair and impartial in this case?

12   A.    Yeah, I feel that I could be fair and impartial.

13   Q.    Okay.  Any hesitation or concern about that?

14   A.    No.

15   Q.    Okay.

16             THE COURT:  All right, Government, any follow-up?

17             MR. MOOMAU:  Yes.

18   BY MR. MOOMAU:

19   Q.    Sir, you had talked about the work trip you had planned,

20   and it was part of a project you've been working on for how

21   long?

22   A.    Since roughly last November.

23   Q.    Okay, and is this something that's --

24   A.    I work in the museum industry and so it's -- I'm returning

25   human remains back to -- it's part of a collection, of the

1   museum's collection.  So we're returning those human remains

2   back to the native land.

3   Q.   Is that -- the trip to New York would be driving and

4   returning --

5   A.   No, taking the train.

6   Q.   Okay.  All right, I could think of other questions, but I

7   think I'm going to leave it at that.  Thank you, sir.  That's

8   all I have.

9              THE COURT:  Mr. Davis?

10             MR. DAVIS:  None, Your Honor.

11             THE COURT:  Okay.  Thank you, sir.  I appreciate your

12  time.

13       (Exit juror number 126.)

14             THE COURTROOM DEPUTY:  Your Honor, just to confirm,

15  are we keeping that as a good juror?

16             THE COURT:  Yep.

17             THE COURTROOM DEPUTY:  Thank you.

18       (Enter juror number 131.)

19                      PROSPECTIVE JUROR NO. 131,

20  a prospective juror, having been first duly sworn to answer

21  questions, was examined as follows:

22                          EXAMINATION

23                          BY THE COURT:

24  Q.   Hi there.  Juror number 131?

25  A.   Yes.

1    Q.    Okay.  I just wanted to follow up with you on your yes

2    answers.  You, at number five, checked yes to whether you're

3    taking medication that might affect your ability to pay full

4    attention.

5    A.    I am.  I'm a Type I diabetic, insulin dependent.

6    Q.    Okay.

7    A.    I do use an insulin pump, and I do monitor with a blood

8    glucose monitor.  So I don't know if that would affect it or

9    not.

10   Q.    Okay.  And you're working currently as a dental hygienist?

11   A.    Yes, I work full-time.

12   Q.    All right.  So is it fair to say then you're able to keep

13   your condition under control such that when you're working on

14   people's teeth, you're not making any mistakes.  Am I right?

15   A.    Right.

16   Q.    Okay.  All right, very good.  And if you need -- just so

17   you know, if you're selected and you need, you know, breaks or

18   accommodations, we certainly have lots of, you know, we have

19   space.  We have private bathrooms.  We have ways to help you

20   make sure that you can take care of your health.  Okay?

21   A.    Okay.

22   Q.    All right.

23         THE COURT:  Government, any follow-up for this

24   witness?

25         MR. MOOMAU:  No, Your Honor.  Thank you.

1           THE COURT:  Okay.  Defense?

2           MR. DAVIS:  No.

3           THE COURT:  All right.  Thank you, ma'am.  I

4    appreciate your time.

5           JUROR NUMBER 131:  Thank you.

6        (Exit juror number 131.)

7        (Enter juror number 133.)

8                   PROSPECTIVE JUROR NO. 133,

9    a prospective juror, having been first duly sworn to answer

10   questions, was examined as follows:

11                   EXAMINATION

12                   BY THE COURT:

13   Q.   Hi there.

14   A.   Hi.

15   Q.   Juror number 133?

16   A.   Yes, ma'am.

17   Q.   Okay.  I see you're a phlebotomist.  Is that correct?

18   A.   Yes.

19   Q.   All right.  You must have a very gentle touch.  Do you

20   actually draw people's blood?

21   A.   Um-hum.

22   Q.   Okay, well, I thank you for your service.

23           THE COURT:  Let me ask Counsel if you have any

24   follow-up questions for 133?

25           MR. MOOMAU:  Yes, just a few questions.

```
 1              THE COURT:  Sure.
 2  BY MR. MOOMAU:
 3  Q.   Just for additional information, you had indicated on the
 4  questionnaire that your spouse is an administrative assistant?
 5  A.   Yes, sir.
 6  Q.   In what type of business is that?
 7  A.   He's working in tax accountancy.  It's an Indian company.
 8  Q.   Okay.  All right.  All right, thank you.
 9              MR. DAVIS:  None, Your Honor.
10              THE COURT:  Okay.  Thank you so much.  I appreciate
11  your time.
12       (Exit juror number 133.)
13       (Enter juror number 136.)
14                    PROSPECTIVE JUROR NO. 136,
15  a prospective juror, having been first duly sworn to answer
16  questions, was examined as follows:
17                         EXAMINATION
18                         BY THE COURT:
19  Q.   Hi there.
20  A.   Hello.
21  Q.   Juror 136?
22  A.   Yes, ma'am.
23  Q.   Okay.  I just want to follow up with you on some of your
24  yes answers.  You checked yes as to whether you, a family
25  member, or friend is employed or sought employment with the
```

1    United States Court, Department of Justice, U.S. Attorney's

2    Office, FBI.  Do you remember that question?

3    A.    Yes.

4    Q.    What caused you to check yes?

5    A.    My brother used to work for the Department of Justice.

6    He's applied to the DEA.  He's soon to be hired or go into

7    Quantico probably like August time, and I've also applied to

8    Prince George's County Fire Department.

9    Q.    Okay.  So let's start with your brother.  You said he had

10   worked for the Department of Justice?

11   A.    Yes.

12   Q.    What did he do for them?

13   A.    I'm not entirely sure.  He didn't really tell me.  But now

14   he works as a private military contractor.

15   Q.    Okay.  And he's going into the academy?

16   A.    Yes, ma'am.

17   Q.    All right.  Do you all talk about like his selection of

18   career, why he's deciding to be a DEA agent or go into the DEA?

19   A.    He said that it's a higher purpose to serve and that he

20   would like to fight back on that and really try to get drugs

21   off the street.  That's his purpose.

22   Q.    Okay.

23   A.    Why he wants to do it.

24   Q.    Anything about your brother, you know, talking to you

25   about this stuff that would affect your ability to be fair and

1  impartial in this case?

2  A.   We talk about a lot about the activities that happen

3  around here in the DMV.

4  Q.   Meaning the crimes that you hear about on the news and

5  things like that?

6  A.   Yes.

7  Q.   Okay.  So have you ever served on a jury before?

8  A.   No.

9  Q.   Okay.  So one of the things that I would do if you're

10 selected as a juror is right in the beginning I would tell

11 you -- and at the end -- some jury instructions.  One of those

12 instructions would be anything that you've talked about, any

13 views you might have outside this courtroom, you must leave

14 them outside the courtroom and judge this case based only on

15 the evidence you hear in this court and the instructions that I

16 give you on the law.  Would you be able to follow my

17 instruction in that respect?

18 A.   Truthfully, I'm not sure.

19 Q.   What makes you -- what causes you to hesitate?

20 A.   I've read a lot of cases that have happened in Maryland,

21 in Hyattsville.  I read one case was Hernandez-Guevara, I

22 think.  I don't know if that's the person in this case, per se,

23 but I've read different cases.

24 Q.   When you say you've read different cases, what do you

25 mean?

1  A.    Like, I've read about what happened, like racketeering,

2  killing, murdering, and all that.

3  Q.    All right.  And you're -- so what is -- again, with my

4  instruction being not to consider any of that, what is your

5  concern with respect to following my instructions?

6  A.    I don't know if I would be able to follow your

7  instructions just because I know it's a violent gang, and I

8  know what they're about, and I've heard.  And, respectfully, I

9  don't know if I could like bring myself to not bring that into

10 the courtroom.

11 Q.    Okay.  Well, along those lines, there was a specific

12 question, since you're bringing up gangs, about MS-13 and

13 whether you could -- whether you had any views about that gang,

14 and you didn't check yes to that.  Why not?

15 A.    Honestly, I was half asleep this morning.  I wasn't really

16 thinking right.  But I did check yes that I don't think I would

17 be able to stand on the jury to that question.  I think that

18 was like question 12 or like 13, something like that.

19 Q.    Well, you checked yes to 12, which is whether you have a

20 family member or friends who work in the federal government.

21 You checked yes to whether you have family or friends involved

22 in criminal defense work.  And then you did not check yes to

23 any of the questions that get to whether you could be fair and

24 impartial.

25       So, you know, this process is important, and so that's why

1   I just want to understand why right now you're telling me this

2   but on -- there were other questions, too, and none of them did

3   you check that.  So --

4   A.   Yeah, they said if you were unsure, check yes, but I

5   was -- I was unsure.  So I checked no.  I didn't listen.  I'm

6   sorry.  That's my fault.

7              THE COURT:  Government, do you have any follow-up?

8              MR. MOOMAU:  No, Your Honor.  Thank you.

9              MR. DAVIS:  No, Your Honor.

10             THE COURT:  All right.  Thank you, sir.

11             JUROR NUMBER 136:  Thank you.

12        (Exit juror number 136.)

13             THE COURT:  All right, so that was juror 136.  What

14   are we doing with him?

15             MR. DAVIS:  Well --

16             MR. MOOMAU:  We're going to move to strike, Your

17   Honor, based on his answer to the Court's questions.

18             MR. DAVIS:  We're going to join that also.  I guess

19   some folks just don't want to sit.

20             THE COURT:  Right.

21             MR. DAVIS:  And I think he is one of them.

22             THE COURT:  And they will go to great lengths to

23   shuck and jive with the Court, which doesn't sit well with me.

24             MR. DAVIS:  No, and it doesn't sit well with us, but

25   I don't want him to be sitting here on my jury.

1          THE COURT:  Right.  Exactly.

2     Okay.  All right, 136 is stricken.

3     Okay, Counsel, we're at 20 even with I think the wobbly

4  number 88.  So we're doing pretty well.  Break until 1:35, a

5  quick lunch.  Anything that you all need from me before we

6  break?

7          MR. MOOMAU:  No, Your Honor.

8          THE COURT:  All right.  See you back here in a bit.

9     Thank you.

10          THE COURTROOM DEPUTY:  This Honorable Court now

11  stands in recess.

12     (Recess taken, 1:04 P.M. - 1:41 P.M.)

13          THE COURTROOM DEPUTY:  May I have your attention,

14  please.  The United States District Court resumes in session.

15          THE COURT:  All right, everybody.  Are we ready to

16  continue?

17          MR. MARTIN:  Yes, Your Honor.

18          MR. DAVIS:  Yes, Your Honor.

19          MS. GROSSI:  Yes, Your Honor.

20          THE COURT:  So before we start -- wait a minute.  Oh,

21  I'm sorry.  That's the case agent.  I thought I had another

22  juror.  Okay, before we start, juror number 379, evidently her

23  mother is being taken by ambulance to the emergency room, and

24  so she is asking to be excused.

25          MR. DAVIS:  No objection.

1          THE COURT:  Okay.

2          MR. MOOMAU:  No objection, Your Honor.

3          THE COURT:  All right.  So 379 can go.

4       All right.  And we're up now to 146.

5       (Enter juror number 146.)

6                    PROSPECTIVE JUROR NO. 146,

7    a prospective juror, having been first duly sworn to answer

8    questions, was examined as follows:

9                         EXAMINATION

10                      BY THE COURT:

11   Q.    Hi there, juror number 146?

12   A.    Yes.

13   Q.    Okay.  I just wanted to follow up with you on some of your

14   yes answers.  You checked yes to number four, which is whether

15   the dates and times of this trial might pose a problem for you.

16   A.    Yes.  I'm a research nurse for the National Cancer

17   Institute, and my co-worker who I am supposed to cover for is

18   on leave all next week.  So I worry that my team will be left

19   empty-handed.

20   Q.    Have you reached out to any of your employers,

21   supervisors, co-workers to let them know that you have jury

22   service today?

23   A.    They know I have jury service today, yes.

24   Q.    Okay, and as a research nurse, do you predominantly do

25   your work at home or do you go in?

1  A.    It's mixed.  I go in to see patients, and I'm at home some

2  of the time.

3  Q.    Okay.  So for the following -- for the next two weeks, do

4  you have any flexibility in your schedule where you can go in,

5  for example, on the weekends or at other times to make up for

6  the time you might miss?

7  A.    So when my colleague is away, I'm covering for her.  So if

8  there's patients to see, I -- it's time sensitive matters so I

9  can't really do it at other times.

10  Q.   What would happen, God forbid, you got sick and couldn't

11  go in?  What would they do?

12  A.   They would find someone, I guess, to cover for me.

13  Q.   Okay.  Can you start making at least overtures as to

14  whether they could find a substitute for you if you are

15  selected?

16  A.   Yes, I can.

17  Q.   Okay.  Is there anything else in your schedule that would

18  prevent you from serving?

19  A.   No.  No.

20  Q.   Okay.

21       All right, let's talk about some of your other answers.

22  Number 14 you checked yes, which is whether you, a family

23  member, or close friend had ever been employed with a federal

24  or state court-related agency, such as parole, probation,

25  pretrial.

1    A.    Yeah, my uncle worked for the prison system, but I don't

2    know much detail about what he did.

3    Q.    Okay.  All right, so don't know if it was state or

4    federal?

5    A.    No, I don't know.

6    Q.    Okay.  Fair to say he didn't talk to you much about his

7    job?

8    A.    No.

9    Q.    All right.  So is there anything about his employment that

10   would affect your ability to serve today?

11   A.    No.

12   Q.    Okay.

13         All right, and then 32 you checked yes, and 32 is whether

14   you, a family member, or close friend had ever been the victim

15   of a crime, witness to a crime, or witness for the prosecution

16   or defense in a criminal case.

17   A.    Yes.  I mean, I wasn't alive, but my uncle was murdered in

18   Baltimore City, and it affected my dad, but I don't -- I wasn't

19   alive during that time.

20   Q.    Okay.  The fact that, though, it affected your father,

21   does that -- will that bear at all on your ability to serve as

22   a juror in this case?

23   A.    I don't think so but -- I guess I don't think so.

24   Q.    Okay.  You seem to be hesitant.  So I just want to make

25   sure if there is anything else you want me to know about

```
 1   that --
 2   A.   No, I mean, I just -- no.  I can't think of anything else,
 3   no.
 4   Q.   All right.
 5            THE COURT:  Okay.
 6        Government, any follow-up?
 7            MR. MOOMAU:  No questions, Your Honor.  Thank you.
 8            THE COURT:  Defense?
 9            MR. DAVIS:  No questions, Your Honor.
10            THE COURT:  All right.  Thank you so much.  I
11   appreciate your time.
12            JUROR NUMBER 146:  Thank you.
13        (Exit juror number 146.)
14            THE COURTROOM DEPUTY:  Your Honor, I'm sorry.  I was
15   dealing with some issues.  That's a good juror?  Juror number
16   21?
17            THE COURT:  Yes.
18            THE COURTROOM DEPUTY:  Thank you.
19        (Enter juror number 154.)
20                     PROSPECTIVE JUROR NO. 154,
21   a prospective juror, having been first duly sworn to answer
22   questions, was examined as follows:
23                         EXAMINATION
24                         BY THE COURT:
25   Q.   Good afternoon, 154.
```

```
 1   A.    Good afternoon.
 2   Q.    I'm going to ask the lawyers if they have any follow-up
 3   questions for you.
 4   A.    Sure.
 5              THE COURT:  All right.  Government?
 6              MR. MOOMAU:  Just a second, please, Your Honor.
 7              THE COURT:  Sure.
 8         (Brief pause.)
 9   BY THE COURT:
10   Q.    I see -- while the lawyers are looking, I see your
11   profession is massage practitioner?
12   A.    That's correct.
13   Q.    And it makes me think about how much my back hurts at the
14   end of the day.  So I bet you're well in high demand given how
15   much the world sits.
16   A.    Very busy these days.
17   Q.    Yes.
18              THE COURT:  All right.  Government?
19   BY MR. MOOMAU:
20   Q.    Just a follow-up question on what the judge asked.  How
21   long have you been working in that profession?
22   A.    Five years.
23   Q.    And your previous employer -- or have you worked the
24   entire five years with the current employer?
25   A.    No.  I have had multiple employers.  This is my third
```

1  position in this -- as a massage therapist.

2  Q.    Okay.  And as far as -- just educate me for a second.

3  Like, your scheduling for that?

4  A.    Sure.  I went to Potomac Massage Training Institute, which

5  is located in Silver Spring, for 18 months.  I graduated in

6  spring of 2017.  I got my licensure in Maryland in late -- of

7  that year, and I have practiced at Turn Blue in Silver Spring,

8  Massage Envy in Silver Spring, and now Elements Massage in

9  Bethesda.

10 Q.    All right.  Thank you, sir.

11        THE INTERPRETER:  I can't hear him very well.

12        THE COURT:  Okay.

13 BY THE COURT:

14 Q.    Can you, sir, can you do me a favor and repeat your last

15 answer, just going right into the microphone so we can hear

16 you?

17 A.    Oh, sure.  My apologies.  The question was just as to my

18 history about my profession.  I graduated from Potomac Massage

19 Training Institute in spring of 2017.  Later that year, I

20 obtained my Maryland licensure and have been working in the

21 massage profession since then at Turn Blue in Silver Spring,

22 Massage Envy in Silver Spring, and, finally, Elements Massage

23 in Bethesda.  And those are chronological.

24 Q.    Thank you.

25        THE COURT:  Defense, anything?

1          MR. DAVIS:  Nothing, Your Honor.  Thank you.

2          THE COURT:  All right.

3     Thank you, sir.  I appreciate your time.

4          JUROR NUMBER 154:  Thank you.

5     (Exit juror number 154.)

6     (Enter juror number 172.)

7                    PROSPECTIVE JUROR NO. 172,

8   a prospective juror, having been first duly sworn to answer

9   questions, was examined as follows:

10                        EXAMINATION

11                      BY THE COURT:

12  Q.   All right.  Good afternoon.  Juror 172?

13  A.   Yes.

14  Q.   All right.  I want to follow up with you on some of your

15  yes answers.  You checked yes to number four, which was about

16  whether the dates and times pose a problem, and you wrote, it

17  looks like, 7-14 next to it.

18  A.   Yes.  I have a court order to submit DNA testing for child

19  support on that date.

20  Q.   Okay.  So you have to appear -- where do you have to go?

21  A.   The Temple Hills child support office.

22  Q.   Do you have a particular time you have to show up or is

23  it --

24  A.   1:30 p.m.

25  Q.   I'm sorry?

1    A.    1:30 p.m.

2    Q.    1:30 p.m.  okay.  Have you made any phone calls or emails

3    about whether if you have jury service, would they move it for

4    another date and time?

5    A.    I have not had that conversation, but there is a telephone

6    number that they provide where I could.

7    Q.    There's a telephone number?

8    A.    Yes.

9    Q.    Okay.  So while we're going through this process, when

10   we're done, if you wouldn't mind making a phone call and seeing

11   if -- tell them if you're selected as a juror, can they find

12   another date and time after this trial is over?

13   A.    Yes.

14   Q.    To allow you to come in.  And let someone at the Jury

15   Committee know what you learn.  That would be great.

16   A.    Okay, I will.

17   Q.    Okay.

18         And then you also wrote for number 12, whether you or a

19   family member is employed by a government agency, and you wrote

20   USPS next to it.  What's that?

21   A.    Yes.  I was employed by USPS for seven years between 2012

22   to 2019.

23   Q.    Okay.  What did you do for them?

24   A.    I was a mail processing clerk.

25   Q.    Okay.  And you're no longer with them?

1  A.    No.

2  Q.    Can you share with us what caused you and USPS to part

3  ways?

4  A.    Oh, so I graduated from college and moved on to another

5  career.

6  Q.    Very good.

7        Okay.  Anything else that causes you to check yes to

8  number 12?

9  A.    No.

10 Q.    Okay.

11       And then number 33, the question is, Do you or any of your

12 family members, or close friends, belong to a group that

13 advocates for change in the Criminal Justice System or

14 sentencing guidelines?

15 A.    So I was unsure about that question.  I am not a member of

16 a particular group, but I am in the field of social work, which

17 promotes social justice so.

18 Q.    And where do you work as a social worker?  For Children's

19 National?

20 A.    Children's National.  But I'm not a social worker.  I work

21 with the social work team.

22 Q.    I see.  Got it.

23 A.    I'm not licensed yet.

24 Q.    Okay.  So what kind of work do you do in this area?

25 A.    Helping families connect to resources in the community and

1  resources in the hospital for insurance, transportation, and

2  other social needs.

3  Q.   Does your job put you in touch sort of with the Criminal

4  Justice System or people who are going through the system?

5  A.   No, not really.  Not often.

6  Q.   Okay.  So maybe I missed it.  Tell me again why you

7  were -- you did right by checking yes if you were unsure.  What

8  prompted you to check yes to this question?

9  A.   Just because social justice is a part of our core values

10  in social work.  So that's why.

11  Q.   Okay, got it.  So if you were selected as a juror, one of

12  the primary instructions I would give you is to base your

13  decision in this case on the evidence that you hear in this

14  courtroom and the law as I instruct you.  So the other side of

15  that is any personal feelings you might have about the Criminal

16  Justice System you're to put them to the side and follow the

17  instructions as I give them to you.  Would you be able to do

18  that?

19  A.   Yes.

20  Q.   Okay.  All right, let me see if the government has any

21  follow-up for you.

22         MR. MOOMAU:  No questions, Your Honor.  Thank you.

23         THE COURT:  Defense?

24         MR. DAVIS:  None.

25         THE COURT:  All right, great.

1      MR. MARTIN:  No questions, Your Honor --

2      THE COURT:  I'm sorry?

3      MR. MARTIN:  No questions but a comment.  The

4  juror might -- the prospective juror might want to know that

5  the 15th and the 22nd the Court is not sitting.

6      THE COURT:  Oh, yes, good point.

7  BY THE COURT:

8  Q.   So you have your date right now to appear on the 14th.

9  A.   Yes.

10 Q.   Right.  Mr. Martin raises a good point.  We are not

11 sitting the Friday, the next day, or the 22nd.  So if that

12 works for, you know, where you have to give them a call and see

13 if you can come the next day --

14 A.   Okay, I'll keep those dates in mind.

15 Q.   That would be great.  Okay.  All right, thank you so much.

16 A.   Thank you.

17      (Exit juror number 172.)

18      (Enter juror number 173.)

19                PROSPECTIVE JUROR NO. 173,

20 a prospective juror, having been first duly sworn to answer

21 questions, was examined as follows:

22                     EXAMINATION

23                     BY THE COURT:

24 Q.   Hi there.  Juror number 173?

25 A.   Yes.

1   Q.   I want to follow up with you on your yes answers.  You

2   checked yes to whether a family member, friend, or yourself has

3   received legal training, education, or is in the profession.

4   A.   Yes.   My wife is an attorney.

5   Q.   I see that.

6   A.   And I also have several other relatives that are

7   attorneys.

8   Q.   All right.  Let's start with your wife.  What kind of law

9   does she practice?

10  A.   She practices communication law.

11  Q.   Okay, so not in litigation in court or anything like that?

12  A.   No.

13  Q.   Okay.  Anyone else in your family or circle that practices

14  law?

15  A.   Yes.  I have a niece and a nephew.  Both work -- they are

16  Assistant State's Attorneys for Montgomery County.

17  Q.   Okay.  Do you talk with them about their work?

18  A.   Occasionally, but not often.

19  Q.   All right.  Is there anything about what you've learned

20  from them --

21  A.   No.

22  Q.   -- that would affect your ability to be a fair juror in

23  this case?

24  A.   No, not at all.

25  Q.   Okay.  Anyone else you were thinking about when you

1    checked yes to number 11?

2    A.    I have a brother-in-law who is an attorney as well.

3    Q.    You're surrounded.

4    A.    Right.  I'm surrounded, yes.

5    Q.    All right.  And your brother-in-law, what kind of law does

6    he practice?

7    A.    He's with the government.  That's basically all I can say.

8    Q.    So you don't have any details about what he does?

9    A.    No.

10   Q.    Okay.  Anybody else?

11   A.    No, that's it.

12   Q.    Okay.

13         Now, you also checked yes to number 12 and 13; 12 is about

14   whether you, a family member, or friend is employed by the

15   court.

16   A.    Right.  That's related to what I just said earlier.

17   Q.    Okay.  How about 13, which is you, a family member, or

18   close friend involved in criminal defense work?

19   A.    Well, my wife's law firm does criminal -- I thought that

20   basically covered that but --

21   Q.    I see.

22   A.    But she doesn't.

23   Q.    She doesn't do it?

24   A.    No.

25   Q.    Okay.  All right.

1          You also checked yes to number 32, which is whether you,

2     family member, or close friend had ever been the victim of a

3     crime or a witness to or witness for the prosecution or

4     defense?

5     A.   I've been a victim of a crime but --

6     Q.   Okay.  Can you tell us a little bit about that?

7     A.   I've been -- my car has been broken into several times.

8     Q.   All right.  Did any of that ever result in like finding

9     the person who did it?

10    A.   No.

11    Q.   Pressing charges?

12    A.   Um-um.

13    Q.   Okay.

14          THE COURT:  All right.  Counsel, any follow-up for

15    juror number 173?

16          MR. MOOMAU:  Yes.

17    BY MR. MOOMAU:

18    Q.   Just his occupation.

19    A.   Right now I'm retired.

20    Q.   Okay.  And your previous occupation?

21    A.   Engineer with Hewlett Packard.

22    Q.   Okay.  Thank you, sir.

23    A.   Okay.

24          THE COURT:  Defense?

25          MR. DAVIS:  No, Your Honor, nothing.

1          THE COURT:  All right.  Thank you, sir.  I appreciate

2     your time.

3          (Exit juror number 173.)

4          (Enter juror number 183.)

5                    PROSPECTIVE JUROR NO. 183,

6     a prospective juror, having been first duly sworn to answer

7     questions, was examined as follows:

8                         EXAMINATION

9                       BY THE COURT:

10    Q.    Hi there.

11    A.    Good morning.

12    Q.    Juror 183?

13    A.    Yes, I am.

14    Q.    All right.  I wanted to follow up with you on some of your

15    yes answers.  The first is you answered yes to question number

16    11, which is whether you, a family member, or friend has legal

17    training or education.

18    A.    Correct.

19    Q.    And you wrote ex-husband is an attorney?

20    A.    Yes.

21    Q.    Good friend attended and graduated from AU Law and you

22    worked there?

23    A.    And I also worked as an archivist at American University

24    Washington College of Law.

25    Q.    Okay, so let's start with your ex-husband.  What kind of

1   law did he practice?

2   A.    He's currently a patent examiner; so he does patent law.

3   Q.    Okay.  And when you worked as -- an archivist, you said,

4   at AU Law?

5   A.    Right.

6   Q.    Any of that work have any interaction with criminal

7   defense, criminal law, trials?

8   A.    Technically, yes.  The archives I worked with is the

9   national equal justice library, and the goal of that archive

10  was to document the history of the legal aid system and the

11  legal justice system.  It's now housed at George Washington

12  University School of Law.

13  Q.    Okay.  Are you still doing that work?

14  A.    No.

15  Q.    Okay.  Anything about your experience in that line of work

16  that would affect your ability to be a fair and impartial juror

17  in this case?

18  A.    I don't know.  I can't answer that question.

19  Q.    Okay, why do you say that?

20  A.    I've seen what was -- you know, the work that was done and

21  know that it was important work, but I don't know if what I

22  learned as an archivist and working with those collections

23  would interfere with me doing -- being a fair and impartial

24  juror.

25  Q.    Well, let me ask you this.  Have you ever served on a jury

1  before?

2  A.    No.

3  Q.    Okay.  So one of the things, if you're selected as a

4  juror, is I'll give you instructions.  I will advise you or

5  instruct you on the law.  I'll instruct you on what evidence

6  you can consider, and that evidence is only what you learn in

7  this courtroom.  So I'll specifically instruct you anything

8  you've learned in your prior employment you are to disregard.

9  Decide this case based only on the evidence that you hear in

10 the courtroom and the instructions that I give you.  Would you

11 be able to follow my instruction?

12 A.    I believe so.

13 Q.    Okay.  All right, and then that was question 11.

14       Question 20, which is whether you have views about

15 testimony given by cooperators who may receive a reduced

16 sentence in exchange for their cooperation, and you checked

17 yes, that that may affect your ability to be fair and

18 impartial.  What did you mean when you checked -- what were you

19 thinking about?

20 A.    If someone assisted in creating -- in committing a felony

21 and they received a reduced sentence, I have concerns that if

22 they receive that reduced sentence and they are released early,

23 they may go out and offend again.

24 Q.    Okay.  One of the -- again, one of the things that I'll

25 instruct you on is that you only consider the evidence that you

1  hear here, and you don't speculate or, you know, presume about

2  the future.

3  A.    That's, unfortunately, that's very hard to do.  There is

4  too much happening in the world in terms of people being found

5  guilty of, you know, being involved, and the judges or the

6  juris system saying, okay, go forth and we believe you'll sin

7  no more.

8  Q.    So along those lines, if I were to instruct you that

9  punishment, whether it's punishment of the person who is

10 convicted of punishment of the cooperating witnesses is really

11 not your concern, you are to put that out of your head and deal

12 only with the evidence that you're given, would you be able to

13 do that?

14 A.    Again, I'm not sure because based on the decisions of you

15 or other jurisdictions, that person may be out, and one day I

16 may be walking to my car and that person that was given a

17 reduced sentence can cause problems.

18 Q.    Okay.

19       All right, you also checked yes to number 21, which is

20 whether you have any views about MS-13 that may affect your

21 ability to be fair.

22 A.    I believe that -- I believe it is -- it's equivalent to

23 the mafia and that at least from what I've seen in the media

24 and what I've read about MS-13, that they are a group that

25 systematically works together to benefit themselves using a

1  variety of different methods, some of which are not legal.

2  Q.   And in that regard, again, if I were to tell you you can't

3  consider anything that you've learned outside this courtroom

4  about MS-13, would you be able to do that?

5  A.   I'd like to believe that but I'm not sure I could.

6  Q.   Okay.  And then 32, whether you, a family member, or close

7  friend had ever been the victim of a crime, witness to a crime,

8  or testified in a criminal trial.

9  A.   I don't know about testified in a criminal trial.  I've

10  been robbed once.  I've been raped once.  My mom has been

11  assaulted.  My other -- I've had a car smashed.  So I've had

12  that experience.

13  Q.   Okay.

14       THE COURT:  Government, any follow-up?

15       MR. MOOMAU:  No, Your Honor.  Thank you.

16       THE COURT:  Defense?

17       MR. DAVIS:  Nothing, Your Honor.

18       THE COURT:  All right.  Thank you so much.  I

19  appreciate it.

20       JUROR NUMBER 183:  Thank you.

21    (Exit juror number 183.)

22       THE COURT:  Is there a motion?

23       MR. MOOMAU:  Yes, the government would move, Your

24  Honor, based upon her stated lack of I guess certainty that she

25  would be able to follow the Court's instructions, among other

1  things.

2        MR. DAVIS:  I would join in that.  I think she's

3  traumatized.  I don't think she can put that behind her.

4        INTERPRETER LOPEZ:  I'm sorry, the interpreter cannot

5  hear.  Please speak into the microphone.

6        MR. DAVIS:  I would join in the objection.  I think

7  she's been traumatized, and I don't think she can put that

8  aside and be fair and impartial.

9        THE COURT:  Yes, I agree.  Not only the substance but

10  her demeanor.  So I'll grant the motion.

11        MR. DAVIS:  It's too bad.  She was pretty sharp.

12        THE COURT:  I know.

13      (Enter juror number 187.)

14                    PROSPECTIVE JUROR NO. 187,

15  a prospective juror, having been first duly sworn to answer

16  questions, was examined as follows:

17                         EXAMINATION

18                       BY THE COURT:

19  Q.   Hello.  Juror 187?

20  A.   Yes.

21  Q.   I wanted to follow up with you on your yes answer to

22  whether you read, write, or speak Spanish.

23  A.   I do.

24  Q.   Can you tell us a little bit about your fluency?

25  A.   Well, I learned how to speak Spanish and that's not

1  through school or anything but just through like my parents, my

2  family, community.  And writing, I'm not that proficient, but I

3  can read better than I can write.

4  Q.    Okay.  So growing up did you speak Spanish in your house?

5  A.    Yes, I did.

6  Q.    All right.  Do you speak Spanish currently in your house?

7  A.    I do.

8  Q.    How about at your job or --

9  A.    Sometimes.

10  Q.    Okay.  How do you consider your English?  Do you consider

11  yourself bilingual?  You know, proficient in English?

12  A.    Yes.

13  Q.    Okay.  So we will have Spanish-speaking witnesses;

14  however, all of their testimony will be translated into English

15  by an official court interpreter, and my instruction will be

16  consider only the English testimony.  Would you be able to not

17  translate on your own in Spanish; just focus in on the English

18  testimony?

19  A.    I can.

20  Q.    Okay.  Same with the written word.  There may be written

21  documents which are translated into Spanish.  Would you be able

22  to not translate -- translated into English.  Would you be able

23  to not translate on your own and just look to the English

24  translation?

25  A.    I can.

1    Q.    Okay.

2           THE COURT:  All right, Counsel, any follow-up for

3    juror 187?

4           MR. MOOMAU:  Yes, just a couple of questions.

5           THE COURT:  Okay.

6    BY MR. MOOMAU:

7    Q.    Could you please tell us a little bit about your

8    occupation as a phone operator with University of --

9    A.    Yes, I'm with UMD, and I'm in the facilities maintenance.

10   So it's like a help center where we answer for maintenance if

11   there are any issues in the building, academic or sometimes the

12   residential side.

13   Q.    How long have you been doing that?

14   A.    About four years.

15   Q.    Thank you.

16          MR. DAVIS:  No questions.

17          THE COURT:  All right.  Thank you.  I appreciate your

18   time.

19          JUROR NUMBER 187:  Thank you.

20       (Exit juror number 187.)

21       (Enter juror number 211.)

22                  PROSPECTIVE JUROR NO. 211,

23   a prospective juror, having been first duly sworn to answer

24   questions, was examined as follows:

25

```
1                              EXAMINATION

2                            BY THE COURT:

3    Q.   All right.  Good afternoon, juror 211.

4    A.   Good afternoon.  Yes, ma'am.

5    Q.   I wanted to follow up with you on your yes answers.  You

6    checked yes to whether you had previously served as a juror at

7    a grand jury or petit jury in criminal trials in any court.

8    Can you tell us about that?

9    A.   Upper Marlboro.  It was a rape case.

10   Q.   How long ago was that?

11   A.   Two years ago.

12   Q.   So during COVID or before COVID?

13   A.   Before COVID.

14   Q.   All right.  Did you see it all the way to verdict?

15   A.   No.  I was an alternate, and they let me go before.

16   Q.   Okay.  Anything about that experience that would affect

17   your ability to be a fair and impartial juror in this case?

18   A.   No, ma'am.

19   Q.   All right.  Any other jury service?

20   A.   No.

21   Q.   Okay.

22        All right.  You also checked yes to number 12, which is

23   whether you, a family member, or friend have either been

24   employed or sought employment with the United States Courts,

25   Department of Justice, U.S. Attorneys, FBI.  Who were you
```

1  thinking about when you checked yes to that?

2  A.    My niece.  She used to work in the Upper Marlboro

3  courthouse in the administrative building.

4  Q.    In the administrative building did you say?

5  A.    Yes, ma'am.

6  Q.    Okay.  How long did she work there, if you know?

7  A.    Like 17 years.

8  Q.    Did she talk to you about her job?

9  A.    No.

10 Q.    Anything about the fact she worked for the courts affect

11 your ability to be a fair and impartial juror here?

12 A.    No, Your Honor.

13 Q.    Okay.  Thinking of anything else when you checked yes to

14 that question?

15 A.    No, Your Honor.

16 Q.    Okay.

17       All right.  It looks like you originally checked yes but

18 then checked no to number 13, so let's just make sure.  Number

19 13 was whether you, a family member, or close friend ever

20 worked in a firm involving criminal defense work.

21 A.    Yes, that's no.

22 Q.    Okay, it's a no.  Yes, it's a no.  Very good.

23       And then you checked yes to number 31, which is whether

24 you, a family member, or close friend ever been convicted of a

25 crime, accused of a crime, or been the subject of a criminal

1   investigation.

2   A.    Yes.   My son.

3   Q.    Okay.   Can you tell us a little bit about that?

4   A.    For a vehicular manslaughter.

5   Q.    All right.   When did that happen?   When was the case?

6   A.    It was in Charles County probably about 10, 12 years ago.

7   Q.    Okay.   Were you involved in the case at all, like

8   testified as a witness or went to court?

9   A.    No.

10  Q.    Was there anything about the way your son was treated

11  during that case that would affect your ability to be fair in

12  this case?

13  A.    No, Your Honor.

14  Q.    Okay.

15        THE COURT:   All right, Counsel.   Government, any

16  follow-up?

17  BY MR. MOOMAU:

18  Q.    The information we have doesn't include occupation

19  information or employment information.

20  A.    I'm retired.

21  Q.    Okay, but before that?

22  A.    I worked for the Department of Defense.

23        THE COURT:   I'm sorry, we can't hear you.   Can you

24  speak up a little bit?

25        JUROR NUMBER 211:   Department of Defense, the

1   Pentagon.

2   BY MR. MOOMAU:

3   Q.   And how long?

4   A.   37 years.

5   Q.   37 years, ma'am.  Okay, thank you.  That's all I had.

6           MR. DAVIS:  No questions.

7           THE COURT:  All right.  Thank you so much.  I

8   appreciate your time.

9        (Exit juror number 211.)

10        (Enter juror number 223.)

11                  PROSPECTIVE JUROR NO. 223,

12   a prospective juror, having been first duly sworn to answer

13   questions, was examined as follows:

14                         EXAMINATION

15                       BY THE COURT:

16   Q.   Hi there.  Juror 223?

17   A.   Yes.

18   Q.   Okay.  I wanted to follow up with you on some of your yes

19   answers.  You answered yes to number 11, which is whether you,

20   a family member, or friend have any legal training, law school,

21   paralegal school.

22   A.   Okay.  My niece does.

23   Q.   Okay.  What is -- is she a lawyer?

24   A.   No, not yet.

25   Q.   Is she in law school?

1    A.    She works for one.

2    Q.    She works for a law school?

3    A.    Yeah.  A lawyer.

4    Q.    And what does she do for them?

5    A.    I think she's a paralegal.

6    Q.    Okay.  Does she talk to you about her job?

7    A.    Once in a while.

8    Q.    Okay.  Anything about what she tells you that would affect

9    your ability to be a fair juror in this case?

10   A.    To be honest, sometimes.

11   Q.    Like what?

12   A.    Like what somebody did, you know, if somebody stole

13   something.

14   Q.    So how would that affect your ability to be fair here?

15   A.    It's not going to really affect me.  She just told me.

16   Q.    Yeah, okay.

17   A.    Yeah.

18   Q.    Well, just so I'm clear, if you're picked as a juror, one

19   of the instructions I'll give you is anything you learn outside

20   this courtroom from anyone you're to forget about it; put it to

21   the side.  Decide this case only on the evidence you hear in

22   this courtroom and the instructions as I give you.

23   A.    Okay.

24   Q.    Would you be able to do that?

25   A.    Sure.

1  Q.    Okay.  All right, is there anybody else you were thinking

2  about when you checked yes to number 11 about people in your

3  life with legal training or in the legal profession?

4  A.    No.  But my sister, she works for Upper Marlboro

5  Courthouse.

6  Q.    She works in the courthouse?

7  A.    Yes.

8  Q.    What does she do in the courthouse?

9  A.    She does probation.

10  Q.    She's in the Probation Department?

11  A.    Yes.

12  Q.    How long has she worked for probation?

13  A.    A long time.  I guess like ten years.

14  Q.    Is she an officer?

15  A.    No.  Actually, she works at the front desk.

16  Q.    Okay.

17  A.    But she does things for them.

18  Q.    Got it.  Does she talk to you about her job?

19  A.    Sometimes she does.

20  Q.    All right.  Again, same thing.  If I were to tell you

21  anything you learn from your sister you've got to check at the

22  front door; you can't use it; you can only consider the

23  evidence that you hear in this case --

24  A.    Right.

25  Q.    -- would you be able to do that?

1    A.    Yes, I would.

2    Q.    Okay.  All right, anything else with regard to number 11?

3    A.    No, that's it.

4    Q.    Okay.

5          You also checked yes to number 14, which is about whether

6    a family member, you, close friend worked for a court-related

7    agency.

8    A.    Actually, that was my sister.

9    Q.    That's your sister?

10   A.    Yes.

11   Q.    Anybody else you were thinking of when you checked yes?

12   A.    No.

13   Q.    Okay.

14         And then let's see.  You also checked yes to number 31 --

15   A.    Yes.

16   Q.    -- which is whether you, a family member, or close friend

17   had ever been convicted of a crime, accused of a crime, or been

18   the subject of a criminal investigation.

19   A.    Right.  My brother.

20   Q.    Tell us about that.

21   A.    Well, he was arrested for assault.  Not here but in

22   Florida but still --

23   Q.    Sure.

24   A.    So.

25   Q.    How long ago was that?

1    A.    Last year.

2    Q.    Were you involved in like going to court with him or

3    anything about the proceedings?

4    A.    Not at all.

5    Q.    Was there anything about the way he was treated that would

6    affect your ability to be a fair juror in this case?

7    A.    No.

8    Q.    Okay.  Anything else you were thinking of when you checked

9    yes to that question?

10   A.    That's about it.

11   Q.    Okay.

12          THE COURT:  All right, let me see if the

13   government -- do you have any follow-up?

14          MR. MOOMAU:  No, Your Honor.  Thank you.

15          MR. DAVIS:  None.

16          THE COURT:  All right.  Thank you, sir.  I appreciate

17   your time.

18          JUROR NUMBER 223:  All right.

19      (Exit juror number 223.)

20          THE COURT:  Counsel, if I can, we are -- with juror

21   88, we're at 27 without 26.  The next juror who is not

22   vaccinated is 252, but then we don't have anyone else until

23   actually 333 because it turns out that 307 was mistaken.  So we

24   learned from Jury that sometimes because it's the only yes in a

25   sea of nos, sometimes people mean to check yes but they check

1   no when they're vaccinated.  307 has confirmed that that's what

2   307 did.

3        So in terms of unvaccinated jurors coming up in the next

4   15 potential jurors, it's only, let's see, one, two, three --

5   20 jurors.  It's only 252.

6        Am I getting that right, Mr. Ulander?

7             THE COURTROOM DEPUTY:  Looking at our -- if we don't,

8   if we don't use 252, there are another 16 jurors before --

9             THE COURT:  We get to the next person?

10            THE COURTROOM DEPUTY:  Right, which would be 333.

11            THE COURT:  Wait, wait, wait.  One, two, three -- is

12   it 16?  I count --

13            THE COURTROOM DEPUTY:  It's -- yes.

14            THE COURT:  Okay, it's 16.

15            THE COURTROOM DEPUTY:  Yes, it's 16 if 252 is

16   stricken.

17            THE COURT:  Got it.

18        Do you all want to talk to 252 or strike 252?  That's the

19   question so we know what to do after this next page.

20            MR. MOOMAU:  The government is fine with just

21   removing that person.

22            MR. DAVIS:  Well, he's vaccinated, isn't he?

23            THE COURTROOM DEPUTY:  What's that?

24            MR. DAVIS:  252 is vaccinated, correct?

25            THE COURT:  No, 252 is not next.

1      MR. DAVIS:  Oh.

2      THE COURTROOM DEPUTY:  227 is next.

3      THE COURT:  Yeah, we have this whole page.  We have

4  five jurors, right.  We're at 27 but we're going to need to get

5  to the 252 page, and 252 is the only one in the next, you know,

6  several pages who is not vaccinated.  Are you comfortable,

7  Mr. Davis, with just striking 252?

8      MR. DAVIS:  We are.

9      THE COURT:  Okay.  All right, so we'll roll then when

10  we get to the next page to 260.  Okay?

11      (Enter juror number 227.)

12                  PROSPECTIVE JUROR NO. 227,

13  a prospective juror, having been first duly sworn to answer

14  questions, was examined as follows:

15                      EXAMINATION

16                      BY THE COURT:

17  Q.   Hi, sir.

18  A.   Hi.  Good morning -- good afternoon.

19  Q.   You are 227?

20  A.   I am.

21  Q.   All right.  I'm going to follow up with you on your yes

22  answers.  You checked yes to number three and listed, it

23  appears, a number of potential witnesses.  Am I getting that

24  right?

25  A.   That's correct.

1  Q.    And I see that you're an attorney.  Are you with the

2  Prince George's County State's Attorney's Office?

3  A.    Yes.

4  Q.    Is that in connection how you know some of these folks?

5  A.    Yes.

6  Q.    All right.  Do you know them well enough where it would be

7  odd, to say the least, if you're a juror and they are in the

8  jury box -- they are in the witness stand?

9  A.    Well, it crossed my mind when I got the summons, but it

10 wouldn't be odd -- I mean, they were in different units at the

11 time.

12 Q.    Okay.

13 A.    He was sort of a mentor, you know, but --

14 Q.    And specifically, because I see Chinchilla you've written

15 down.

16 A.    Yes.

17 Q.    And who is -- what do you have right above?

18 A.    Oh, that's Dr. Alan.  I have some cases with her.  She's

19 a -- in connection with my job, I handle motor vehicle

20 manslaughter cases, and I know I have a handful where she's the

21 assistant medical examiner.

22 Q.    And you're the current ASA on those cases?

23 A.    Yes.  I was trying to search my memory.  I closed a few,

24 you know, but I can't recall -- I know that, you know, I just

25 tried to write quickly as the list came down, but she is likely

```
1   a witness.  I've got about ten cases probably open.
2   Q.   Okay, that you have with her?
3   A.   Yes.
4   Q.   Okay.  All right.
5   A.   Not with her alone but of the assistant medical -- I know
6   she's probably the examiner for at least, you know, two of my
7   cases.
8   Q.   Cases.  All right.  And how long have you been with the
9   State's Attorney's Office?
10  A.   Since 2004.
11  Q.   Okay.  All right, if you could do me a favor, sir, and
12  just step out for a minute, that would be great.
13       (Exit juror number 227.)
14           THE COURT:  Counsel, need we go further?
15           MR. DAVIS:  No.  I make a motion.
16           THE COURT:  Okay, granted.  227 is stricken.
17       (Enter juror number 230.)
18                 PROSPECTIVE JUROR NO. 230,
19  a prospective juror, having been first duly sworn to answer
20  questions, was examined as follows:
21                     EXAMINATION
22                     BY THE COURT:
23  Q.   Hi, sir.
24  A.   Good morning -- good afternoon now.
25  Q.   You're juror 230?
```

1    A.    Yes.

2    Q.    Okay.  I just want to follow up with you on your yes

3    answer.  First I want to confirm.  It looked like number eight,

4    which was the question about whether you have difficulty

5    understanding English, it looked like you checked yes but then

6    checked no.  We're clear your answer is no?

7    A.    Yes.  The answer is no.

8    Q.    All right.  Okay, very good.  And if there is any question

9    about your difficulty to understand English, our little

10   exchange right there confirms you have no problem.  Yes, the

11   answer is no.  Got it.

12        All right.  And it appears that you checked yes to 31,

13   which is whether you, a family member, or close friend have

14   ever been convicted of a crime, accused of criminal conduct, or

15   been the subject of a criminal investigation.  Can you tell us

16   a little bit about why you've checked yes?

17   A.    Yes.  So I have family members that have been convicted of

18   crimes.

19   Q.    Okay.  Can you give us a little more detail as to when,

20   what crimes, where?

21   A.    So I have family members that's probably consistently

22   convicted of crimes.  I would say within the last two years I

23   have cousins, and I have a cousin consistently over his life

24   been convicted of crimes.

25   Q.    And is it around here like in D.C. or Maryland?

```
 1  A.    Virginia.

 2  Q.    Virginia?

 3  A.    Um-hum.

 4  Q.    Okay.  Have you been involved in any of those cases?  And

 5  what I mean by that is going to testify as a witness or a

 6  character witness?

 7  A.    No, I have not.

 8  Q.    Okay.  Is there anything about the way your family members

 9  have been treated in those cases that would affect your ability

10  to be a fair juror here?

11  A.    No.

12  Q.    Okay.  Anything else you want to share with us about

13  that -- your answer to that question?

14  A.    No, nothing else related to that question.

15  Q.    Okay.  Let me see if Counsel has any follow-up for you.

16          THE COURT:  Government?

17          MR. MOOMAU:  No questions, Your Honor.  Thank you.

18          MR. MARTIN:  If I may, Your Honor.

19          THE COURT:  Sure.

20  BY MR. MARTIN:

21  Q.    What was your AFSC?

22  A.    My FSC was one and four.  Intelligence analyst.  How do

23  you know that?

24  Q.    We know everything about you at this point.

25  A.    Okay.
```

1          THE COURT:  Okay, Mr. Martin, you have to put on the

2    record how you know that.

3          MR. MARTIN:  I was a YAG for 27 years.

4          JUROR NUMBER 230:  Okay.  Yeah, so I was a one and

5    four analyst, Intel analyst, and I was a 2SO material manager,

6    logistics handler.

7    BY MR. MARTIN:

8    Q.   Okay.  So you were sometimes involved in law enforcement;

9    were you not?

10          THE COURT:  I'm sorry, Mr. Martin.  I can't hear you.

11    Can you speak right into the microphone.

12          MR. DAVIS:  Sometimes -- he asked if he was sometimes

13    involved with law enforcement.

14    BY MR. MARTIN:

15    Q.   You were sometimes involved with law enforcement, no?

16    A.   Not in the roles that I was in.  I was not involved in law

17    enforcement, no.

18    Q.   Okay.  So you never had any cross-dealings with the U.S.

19    Attorney's Office either in Maryland or anywhere else where you

20    were stationed?

21    A.   No.

22          MR. MARTIN:  I have nothing further, Your Honor.

23          THE COURT:  Okay.

24    All right, thank you, sir.  I appreciate your time.

25    (Exit juror number 230.)

 1          MR. DAVIS:  For the record, Your Honor, we noticed

 2   that he was a program analyst, and his wife is in the military.

 3          THE COURT:  I'm sorry?

 4          MR. DAVIS:  We noticed he was a program analyst, and

 5   we noticed his wife is in the military.  So we kind of assumed.

 6          THE COURT:  Put two and two together.  Yeah, that

 7   makes total sense.  And you know I was giving you a hard time,

 8   Mr. Martin, tongue in cheek.  The record doesn't reflect that

 9   but I'm smiling.

10          MR. DAVIS:  And Mr. Martin knows the right questions

11   to ask when they're in the military.

12          THE COURT:  Yes, he does.

13          (Enter juror number 234.)

14                    PROSPECTIVE JUROR NO. 234,

15   a prospective juror, having been first duly sworn to answer

16   questions, was examined as follows:

17                         EXAMINATION

18                        BY THE COURT:

19   Q.   Okay.  Good afternoon.  Jury 234?

20   A.   Yes, ma'am.

21   Q.   All right.  I want to follow up with you and actually turn

22   it over to the lawyers.

23          THE COURT:  Government, do you have any questions for

24   234?

25          MR. MOOMAU:  No, Your Honor.  No questions.

1          THE COURT:  Defense?

2          MR. DAVIS:  We have no questions, Your Honor.

3          THE COURT:  Okay.  Thank you so much.

4          JUROR NUMBER 234:  Thank you.

5          THE COURT:  All right.

6      (Exit juror number 234.)

7      (Enter juror number 236.)

8                    PROSPECTIVE JUROR NO. 236,

9  a prospective juror, having been first duly sworn to answer

10 questions, was examined as follows:

11                    EXAMINATION

12                    BY THE COURT:

13 Q.   Hi there.  Jury 236?

14 A.   Yes.

15 Q.   All right.  I just want to follow up with you on some of

16 your yes answers.  You checked yes to number four, which is

17 whether the dates and times of this trial might be a problem

18 for you.

19 A.   Well, I am scheduled to be out of town from the 17th and

20 come back on the 19th.

21 Q.   Okay, so the 17th -- help me out.

22 A.   Is a Sunday.

23 Q.   Sunday.  Coming back -- tell me a little bit about why you

24 are going to be out of town for those dates?

25 A.   My wife and I for her birthday purchased an Airbnb out of

1    town.

2    Q.    Out of town?

3    A.    Yes.

4    Q.    You're going to drive there?

5    A.    Yeah, we're driving.

6    Q.    Okay.  And I know it's a big ask, and so I say this with a

7    healthy appreciation.  If you're chosen as a juror, would you

8    be able to reschedule that getaway?

9    A.    I believe we may have reached the time we can get a full

10   refund but I -- it's possible, yeah.

11   Q.    Okay.

12   A.    Yeah.

13   Q.    Let's talk about some other stuff, and if in the

14   meanwhile, when we're done here, if you would check on what the

15   cancellation and refund policy is and see if you can get away

16   -- because we'll be done -- number one, we're not sitting on

17   the Friday.

18   A.    Okay.

19   Q.    Okay?  So you've got the Friday, Saturday, Sunday.

20         And number two, we'll be done shortly after that probably

21   the following week.  So it wouldn't -- you're not going to be

22   out-of-pocket for that much longer.  If you would check, I

23   would very much appreciate it.

24   A.    Okay.

25   Q.    Okay?

1      Anything else you were thinking about when you checked yes

2   to number four?

3   A.    Not really, no.

4   Q.    Okay.

5      You also checked yes to number 12, which is whether you or

6   a family member have been employed or sought employment with --

7   and there were a bunch of government federal agencies.  What

8   were you thinking of?

9   A.    Yeah, actually, I wasn't a hundred percent sure but I used

10  to work or I interned at the D.C. courthouse a long time ago.

11  Q.    All right.  What did you do at the courthouse?

12  A.    I was with the juvenile parole officers.  We kind of --

13  Q.    I'm sorry.  Can you speak up a little bit?

14  A.    Sure.  Yeah, I was with the juvenile parole officers.  We

15  went to different court cases and kind of followed up with some

16  of the juveniles at home.

17  Q.    Was that when you were a student?

18  A.    I was -- I think it was my last year of high school going

19  into college.

20  Q.    Okay.  Anything about that experience that you think might

21  affect your ability to be a fair juror in -- this is a criminal

22  case?

23  A.    No.

24  Q.    Okay.  Were you thinking of anything else when you checked

25  yes to that?

1   A.    That was the only thing.  I just -- yeah.

2   Q.    Okay.

3         And then you also checked yes to number 16, which is

4   whether you have any opinions, favorable or unfavorable, about

5   -- and it lists a bunch of agencies; FBI, postal service,

6   Prince George's County Police Department, Montgomery County

7   Police Department, law enforcement, administration of justice.

8   A.    I mean, unfortunately, I don't have a favorable opinion of

9   the police.  I don't know if it would affect anything, but I

10  just wanted to be honest about that.

11  Q.    Well, I appreciate that.  One of the very important

12  instructions that I would give you -- have you ever served on a

13  jury before?

14  A.    I have not.  Almost but then I got dismissed.

15  Q.    Okay.  Well, if you were selected, I would give you the

16  instruction that you have to take all of your personal feelings

17  and any information you've learned in life really and keep them

18  outside the courtroom and decide this case based only on the

19  evidence that you hear in this court and the witnesses you hear

20  it from and the instructions that I give you.  Would you be

21  able to do that?

22  A.    I believe so.  I'm not a hundred percent sure but I could

23  try.

24  Q.    Okay.

25             THE COURT:  All right.  Let me ask Counsel, let's

1  start with the government, if you have any follow-up for 236?

2  BY MR. MOOMAU:

3  Q.   Sir, what grades or subjects do you teach?

4  A.   I teach pre-K through eighth grade.

5  Q.   Okay.  Okay, thank you.

6  A.   No problem.

7          MR. DAVIS:  No questions.

8          THE COURT:  Okay.  All right, thank you, sir.  I

9  appreciate your time.

10         JUROR NUMBER 236:  No problem.  Thank you.

11      (Exit juror number 236.)

12         MR. DAVIS:  If we have enough jurors, I would be

13 inclined to let him go.  I'm not so certain about the

14 impartiality.  I think that's more of an expression of his

15 desire to stay married and go on this three-day vacation.  I'm

16 just calling it as I see it.

17         THE COURT:  I think you might be right, that that was

18 the demeanor that suggested this was a plan B if plan A didn't

19 work.

20     Government, what's your view on this?  I mean, we're doing

21 well.  We're at 29.

22         MR. MOOMAU:  Yeah, I'm fine with either removing him

23 or putting him down.

24         THE COURT:  Yeah.  I mean, I'm concerned in

25 combination with the plans, I mean, he put on the record that

1    he has a healthy skepticism for law enforcement and that he was

2    not really moving away from.  So I say we -- if you're going to

3    move, I'll strike.

4              MR. MOOMAU:  Government will move.

5              MR. DAVIS:  We'll move.

6              THE COURT:  All right.

7         (Enter juror number 240.)

8                   PROSPECTIVE JUROR NO. 240,

9    a prospective juror, having been first duly sworn to answer

10   questions, was examined as follows:

11                        EXAMINATION

12                        BY THE COURT:

13   Q.   Good afternoon.

14   A.   Hi.  Good afternoon.

15   Q.   Juror 240?

16   A.   Yes.

17   Q.   Just wanted to follow up with your yes answer.  You said

18   yes that you read, write, or speak Spanish.

19   A.   Correct.

20   Q.   Can you tell us sort of how you learned Spanish, what your

21   level of fluency is?

22   A.   It's my first language.

23   Q.   So you spoke it, read, and wrote growing up?

24   A.   Yes.

25   Q.   Do you still?

1  A.    Yes, I do.

2  Q.    Okay.  Tell me about learning English.

3  A.    I was born in Washington, D.C. and raised in Prince

4  George's County.  So I went to Prince George's County schools.

5  Q.    So you're just as fluent in English as in Spanish; is that

6  fair?

7  A.    Correct, yes.

8  Q.    So in this case, there will be witnesses testifying in

9  Spanish, but we will have an official court translator.  Would

10  you be able to accept only the English translation and not

11  translate the testimony on your own?

12  A.    That's correct.

13  Q.    You would be able to do that?

14  A.    Yes, I will.

15  Q.    Same with regard to the written.  If there are written

16  exhibits that are translated into English, will you accept the

17  English translation and not translate it yourself?

18  A.    Yes, I will.

19  Q.    Okay.

20        THE COURT:  All right.  Government, any follow-up for

21  this witness?

22        MR. MOOMAU:  No, Your Honor.  Thank you.

23        MR. DAVIS:  None.

24        THE COURT:  Okay.  Thank you so much.

25        JUROR NUMBER 240:  You're welcome.  Thank you.

1          (Exit juror number 240.)

2          THE COURT:  And, Mr. Ulander, that was juror number

3    240 and also number 30 if we're keeping in 88.  Am I right?

4          THE COURTROOM DEPUTY:  Correct.

5          THE COURT:  Okay.

6          (Enter juror number 260.)

7                    PROSPECTIVE JUROR NO. 260,

8    a prospective juror, having been first duly sworn to answer

9    questions, was examined as follows:

10                    EXAMINATION

11                    BY THE COURT:

12   Q.   All right.  Juror number 260.  Hi.

13   A.   Hello.

14   Q.   I want to follow up with you on your yes answers.  You

15   checked yes to number 11, whether you, a family member, or

16   friend have any legal training.

17   A.   So --

18   Q.   Yeah, go ahead.

19   A.   I don't necessarily have any formal legal training, but I

20   guess I just wanted to note that I've taken law classes in

21   college.  I didn't know if that would apply, but I decided to

22   check it anyway.

23   Q.   Sure.  What kind of law have you taken?

24   A.   Just introductory constitutional law and whatnot, because

25   I plan to go to law school once I graduate, but I'm not in

1  pre-law or anything.

2  Q.    Okay.  So if you're selected as a juror, one of the

3  instructions I will give you is to put any knowledge that

4  you've gained elsewhere outside of your head and listen to the

5  facts as you hear them in this case, the evidence that's

6  presented, and the law as I instruct.  Would you be able to do

7  that?

8  A.    I would.

9  Q.    Okay.  Was there anything else you were thinking about

10 when you checked yes to number 11?

11 A.    No, nothing.

12 Q.    Okay.

13     You also checked yes to number 31, which is whether you, a

14 family member, or close friend have ever been convicted of,

15 accused of a crime, or been the subject of a criminal

16 investigation.

17 A.    A close friend of mine has been convicted of a crime.

18 Q.    Okay.  What crime was that?

19 A.    It was a drug charge this past year.

20 Q.    This past year?

21 A.    Yeah.

22 Q.    Was it -- what court was it in?

23 A.    If I had to guess, I would say -- I don't know actually.

24 Q.    Not sure?

25 A.    No.

1 Q.   So you didn't accompany your friend to court or weren't

2 involved in --

3 A.   No.  I just figured I would note it anyway.

4 Q.   What's that?

5 A.   I just figured I would note it anyway.

6 Q.   Sure.  Was there anything about the way your friend was

7 treated in that case that would affect your ability to be a

8 fair and impartial juror here?

9 A.   I don't think so.

10 Q.   Okay.

11      All right.  You also checked yes to 32, which is whether

12 you, a family member, or close friend ever been the victim of a

13 crime, witness to a crime, or witness in a criminal trial.

14 A.   Yeah, my aunt was a victim of a crime.

15 Q.   Okay.  What kind of crime was that?

16 A.   Assault.

17 Q.   And how long ago was that?

18 A.   I would say 20 years ago, a long time ago.

19 Q.   All right.  So you didn't have a whole lot of involvement

20 in that case, I would imagine?

21 A.   No.

22 Q.   Is there anything about that case that would affect your

23 ability to be fair here?

24 A.   I don't think so, no.

25 Q.   No?  Okay.

1      And then, finally, you checked yes to number 35.  It

2  reads, "If you were selected as a juror, you would be

3  instructed not to consider punishment in deciding whether the

4  government has proven its case against the defendant."  And the

5  question is, would you have any difficulty following my

6  instruction.  You checked yes.  What were you thinking about?

7  A.    I was thinking something that would make it difficult for

8  me would be if the punishment was life in prison or not and

9  that's something that I would have a hard time considering

10  outside of whether they are guilty or not guilty.  That's my

11  thought process.

12  Q.    Okay.  Now, you will not get any evidence on what the

13  punishment is because in our system, the punishment is left up

14  to the judge, and that's why the instruction you'll [sic.]

15  give is you aren't to think about or speculate as to what the

16  punishment will be.  You're to decide whether the government

17  has proven the case with evidence beyond a reasonable doubt.

18  Could you follow my instruction?

19  A.    I could do that.

20  Q.    Okay.

21         THE COURT:  All right.  Government, any follow-up for

22  this witness?

23         MR. MOOMAU:  Your Honor, no questions right now but

24  there was a matter -- I think we need -- based on what the

25  Court just said --

1          THE COURT:  Do you want me to ask the juror to step

2    out so we can discuss it?

3          MR. MOOMAU:  Yes, please.

4          THE COURT:  Okay.

5      (Exit juror number 260.)

6          THE COURT:  Okay.

7          MR. MOOMAU:  Your Honor, during the cross-examination

8    of some of the government's witnesses, it is going to come out

9    that they are subject to a mandatory life sentence, and I'm not

10   sure -- so it would be easy to figure out that this defendant

11   is facing that also.  And with that, maybe we need to ask some

12   more questions of this potential juror to see how that would

13   affect him.

14         THE COURT:  Mr. Davis, what's your position on that?

15   I mean, I'll give you follow-up on it.

16         MR. DAVIS:  There will be cross-examination on the

17   offenses that the cooperating witnesses have pled guilty to,

18   but I almost like it to derivative use and use, direct use

19   evidence.  I mean, it's one step removed to figure out that

20   Mr. Navarro is looking at --

21         THE COURT:  And no one is going to be making that

22   argument, obviously.  You're not going to highlight it, but I

23   think Mr. Moomau's immediate question is, you know, is anyone

24   going to have any heartburn or objections if the government

25   follows up with more pointed questions with this witness.  Is

1  that what you're asking, Mr. Moomau?

2          MR. MOOMAU:  Yes, Your Honor.

3          THE COURT:  Okay.  Well, I think that's fair,

4  Mr. Davis.

5          MR. DAVIS:  I have no objection to that.

6          THE COURT:  Okay.  All right, then we'll expect

7  you'll explore that, Mr. Moomau.

8          MR. MOOMAU:  Thank you, Your Honor.

9      (Re-enter juror number 260.)

10          THE COURT:  Okay.  Thank you, sir.

11      Mr. Moomau.

12          MR. MOOMAU:  Yes.  Thank you, Your Honor.

13  BY MR. MOOMAU:

14  Q.    Sir, if during the course of the trial you did hear

15  something that caused you to believe that maybe, if found

16  guilty, the sentence could be mandatory life imprisonment, how

17  would that affect you?  Would you still be able to sit as a

18  juror and judge guilt or innocence without considering what the

19  penalty could be?

20  A.    I think that I would be able to.  It would just take a bit

21  of a mental toll, but I think that I would be able to do that.

22  Q.    Okay.  When you say it would take a mental toll, can you

23  explain that a little bit?

24  A.    So if I were to determine in my mind that this person is

25  guilty or innocent, regardless of whether I believe they are

1   going to be sentenced or not, I think it would be difficult for

2   me to -- if in the situation I found that they were guilty, I

3   think it would be difficult for me to say it, but I would be

4   able to.

5   Q.   Okay.  What you're saying is knowing what the possible

6   penalty could be, it would make it difficult for you but you --

7   A.   It would but I think I would still be able to.

8   Q.   And, of course, we always cut everything up.  And when you

9   say you think you could, are you certain you could still make

10  the decision as to guilty or not guilty without allowing those

11  other feelings to influence you?

12  A.   I could do it.

13  Q.   All right.  Thank you, sir.

14          THE COURT:  Mr. Davis, any follow-up?

15          MR. DAVIS:  No, Your Honor.

16          THE COURT:  All right.  Thank you, sir.  I appreciate

17  your time.

18          JUROR NUMBER 260:  Thank you, Your Honor.

19          THE COURT:  All right.

20      (Exit juror number 260.)

21      (Enter juror number 262.)

22              PROSPECTIVE JUROR NO. 262,

23  a prospective juror, having been first duly sworn to answer

24  questions, was examined as follows:

25

1                        EXAMINATION

2                    BY THE COURT:

3    Q.    Hello, juror 262.

4    A.    How are you doing today?

5    Q.    Good.  How are you?

6    A.    I'm good.

7    Q.    Good.  I wanted to follow up with you on your yes answers.

8    A.    Okay.

9    Q.    You checked yes to whether you, a family member, or friend

10   has any training in the law, law school, paralegal work.

11   A.    Yes, my uncle and my aunt.

12   Q.    What do they do?

13   A.    My uncle is a retired police officer, and my aunt works

14   for P.G. County in the Sheriff's Office.

15   Q.    In the Sheriff's Office?

16   A.    Um-hum.

17   Q.    Have either of them talked to you about their jobs?

18   A.    No.

19   Q.    Is there anything about the fact that they are in law

20   enforcement would affect your ability to be fair in this case?

21   A.    Oh, no.  Was that the question?

22   Q.    What's that?

23   A.    Was that like me saying yes to me saying it would

24   interfere?

25   Q.    No, it was just telling us that you have people in your

1  circle who have had careers in the law.

2  A.    Okay.  Then yes.

3  Q.    Okay.  So you checked yes to two questions.  One was

4  about, you know, having family or friends in -- -- having legal

5  training, like being a lawyer or paralegal.  You also checked

6  yes to whether you had family or friends who are involved in

7  criminal defense work, defense work.

8  A.    Oh, yes, my aunt.

9  Q.    Your aunt.  Is that a different aunt?

10  A.    No, it's the same one.

11  Q.    The one who is in the Sheriff's Office?

12  A.    Yes, ma'am.

13  Q.    Has she ever worked in like a private defense firm or done

14  anything not in law enforcement with the Sheriff's Office but

15  on the other side for the defendant?

16  A.    No, I do not know that.

17  Q.    Okay.

18        And then you checked number 12 yes but then you crossed it

19  out no, and this was about whether you had any family or

20  friends who worked for a bunch of government agencies, U.S.

21  Attorney, FBI.  Were you thinking about your aunt and uncle

22  when you were --

23  A.    I was.

24  Q.    Okay.  All right, anybody else you were thinking of?

25  A.    No.  I was thinking about that answer and then when

1  someone else asked to hear the answer -- I mean, to hear that

2  question, then I truly understand what that meant so I crossed

3  it out.

4  Q.   Got it.  Okay.

5      All right, let me see if the government has any follow-up

6  for you.

7           MR. MOOMAU:  No, Your Honor.  Thank you.

8           THE COURT:  All right.  Defense?

9           MR. DAVIS:  Nothing, Your Honor.

10           THE COURT:  All right.  Thank you, sir.  I appreciate

11  your time.

12           JUROR NUMBER 262:  You, too.  Enjoy the rest of y'all

13  day.

14           THE COURT:  You, too.

15      (Exit juror number 262.)

16      (Enter juror number 274.)

17                PROSPECTIVE JUROR NO. 274,

18  a prospective juror, having been first duly sworn to answer

19  questions, was examined as follows:

20                        EXAMINATION

21                       BY THE COURT:

22  Q.   Hi there.  Juror number 274.

23  A.   Yes.

24  Q.   All right.  I just want to follow up with you on some of

25  your yes answers.  You checked yes to whether you, a family

1  member, or friend had any legal training, law school,

2  paralegal, stuff like that.

3  A.    Yes.

4  Q.    Who were you thinking of when you checked yes to that?

5  A.    Somebody in my family been in jail.  That's what you're

6  referring to?

7  Q.    I'm sorry.  This is the question that says have you, a

8  member of your family, or a friend ever attended law school,

9  received legal training --

10 A.    Oh, yes, yes, yes.

11 Q.    Yeah, that one.

12 A.    Yes, I have a lot of family.  I got three family that's

13 lawyers and stuff.

14 Q.    Okay.  Three family members?

15 A.    Yes.

16 Q.    And who are they in your family?  Like, brother, sister?

17 A.    First cousins.

18 Q.    First cousins?

19 A.    My younger little cousins, they're all lawyers.

20 Q.    Okay.  Do you know what kind of law they practice?

21 A.    Not right off.  One is criminal.  One is in Florida doing

22 criminal law, and the other one is in Baltimore doing I think

23 criminal, too.

24 Q.    Okay.  So the ones who are in criminal law, do they talk

25 to you about their job?

1  A.    No.

2  Q.    Okay.  So you don't know if they are prosecutors, defense

3  attorneys?

4  A.    No.  If I need advice, I would go to them.

5  Q.    All right.  Is the fact that you've got lawyers in your

6  family that do criminal law, would that affect your ability to

7  be a fair and impartial juror in this case?

8  A.    No.

9  Q.    Okay.  You also checked yes to whether you have -- you, a

10 family member, or friend employed with the courts, this court,

11 Department of Justice, U.S. Attorneys, State's Attorneys.

12 A.    Yes.  I have a cousin who works for Upper Marlboro Court.

13 Q.    You have, I'm sorry, a cousin did you say?

14 A.    Yes.  She works at Upper Marlboro Court.

15 Q.    What does your cousin do for the Court?

16 A.    I know she's in the court system but I don't know her --

17 Q.    No details?

18 A.    Yeah.  I don't ask that question.  They don't tell me; I

19 don't ask.

20 Q.    Okay, very good.

21       Same question.  Is there anything about the fact that you

22 have a cousin in the court system that would affect your

23 ability to be fair here?

24 A.    No.

25 Q.    Okay.

1       And then you also checked yes to number 13, which is about

2  whether you have anybody in your circle who does criminal

3  defense work.  Were you thinking of anybody else besides the

4  cousins we talked about?

5  A.   Well, I have a friend.  She used to be in parole and

6  stuff, and I think she might have retired.

7  Q.   All right.  Again, you talk to her about her job?

8  A.   No.  They don't say nothing.  I don't ask nothing.

9  Q.   Got it.  All right, very good.

10      And then you also checked yes to 14, which is about having

11  friends or family in parole, probation.  Was that the friend

12  you were --

13  A.   Yeah, that's the friend.

14  Q.   -- just talking about?

15  A.   Yes.

16  Q.   Okay.

17      All right.  And then you also checked yes to number 31,

18  which is whether you, a family member, or friend had ever been

19  convicted of a crime.

20  A.   Friends, not me.

21  Q.   Okay.  Accused of a crime or been --

22  A.   Yes, accused of crimes and stuff.

23  Q.   All right.  So tell us -- let's start with the friends who

24  you say have been convicted.  Anyone specifically that you can

25  think of?

1   A.   A lot of members, a lot of members been in jail.  I've got

2   a big family.

3   Q.   And you're saying you've had family members?

4   A.   Yeah, they have been in but not me.

5   Q.   Have you been involved in any of those cases, meaning gone

6   to court as a witness or followed it --

7   A.   My mother ran the jail for 30 years.  No way.

8   Q.   What's that?

9   A.   My mother ran the jail for 30 years.

10  Q.   Your mother ran the jail, did you say?

11  A.   Yes.

12  Q.   For 30 years?

13  A.   Yes.  So I've never been in no trouble.

14  Q.   So let's talk about that.  You say your mom ran the jail.

15  Was she like the Warden or the --

16  A.   She was the head of St. Mary's Correctional Facility.

17  Q.   And this was when you were growing up?

18  A.   Yes.

19  Q.   Okay.  That's quite a strong lady, huh?

20  A.   Yeah.

21  Q.   Okay.  For 30 years?

22  A.   Yes.

23  Q.   All right.  Did she bring her work home and talk to you

24  about her work?

25  A.   No, no, no, no.

1    Q.    No?   Okay.   All right, but you did say you have some

2    family members who have been convicted?

3    A.    Yeah.

4    Q.    But no details about that?

5    A.    No details.

6    Q.    All right.

7          Anybody else who you know is either under investigation or

8    accused of a crime?

9    A.    No.   I don't know now, no.

10   Q.    Okay.

11         All right.   And then 32, whether you, a family member, or

12   close friend had ever been the victim of a crime or a witness

13   to a crime.

14   A.    Yeah, we have some people who witness crimes, but, you

15   know, we still don't talk about it.

16   Q.    Like what kind of stuff -- what were you thinking of when

17   you checked yes to this question?

18   A.    Like, back years ago people for like selling drugs and

19   somebody seen something and somebody says something and then

20   they have to tell on the next person.

21   Q.    Okay.

22   A.    Yeah, that's all that was about.

23   Q.    But this is stuff that happened way in the past?

24   A.    Yeah, yeah.   Yeah, it's past.   Yes.

25   Q.    Is there anything about any of these experiences that

```
 1   would affect your ability to be a fair juror here?
 2   A.   No.
 3   Q.   Okay.
 4           THE COURT:  All right.  Government, any follow-up?
 5           MR. MOOMAU:  No, Your Honor.  Thank you.
 6           MR. DAVIS:  None.
 7           THE COURT:  All right.  Thanks so much, sir.  I
 8   appreciate it.
 9       (Exit juror number 274.)
10       (Enter juror number 283.)
11                   PROSPECTIVE JUROR NO. 283,
12   a prospective juror, having been first duly sworn to answer
13   questions, was examined as follows:
14                       EXAMINATION
15                       BY THE COURT:
16   Q.   Hi there.
17   A.   Hello.
18   Q.   Juror 283?
19   A.   Yes.
20   Q.   Okay.  I want to see if the lawyers have any follow-up for
21   you.
22           THE COURT:  Government?
23           MR. MOOMAU:  Yes, Your Honor.
24           THE COURT:  Sure.
25
```

1   BY MR. MOOMAU:

2   Q.   We don't have -- I have to ask some questions because I

3   just want to find out a little bit about you.  Just tell me

4   about your occupation, how long you've been doing that, and

5   what exactly you do?

6   A.   Okay.  I am an admin, and I work for the Peterson Company

7   and that's down at National Harbor, and I've been there since

8   February.

9   Q.   Okay.  Like, every day, like, what do you do every day at

10  your job?

11  A.   I answer the phones.  I do emails.  It's a lot of

12  construction type of thing.  So I will do letters of intent,

13  certificates of insurance.  I'll ask the companies for

14  certificates of insurance and things like that.

15  Q.   Okay.  And before that?

16  A.   I worked in the -- I'm new to Maryland.  So I worked in

17  Illinois, and I worked as a lunch lady there.

18  Q.   As a -- excuse me?

19  A.   Lunch lady there.

20  Q.   Okay.  All right, thank you, ma'am.

21  A.   You're welcome.

22          MR. DAVIS:  No questions.

23          THE COURT:  All right.  Thank you, ma'am.  I

24  appreciate your time.

25          (Exit juror number 283.)

1              (Enter juror number 288.)

2                           PROSPECTIVE JUROR NO. 288,

3     a prospective juror, having been first duly sworn to answer

4     questions, was examined as follows:

5                                EXAMINATION

6                              BY THE COURT:

7     Q.    Hi there.

8     A.    Hello.

9     Q.    Juror 288?

10    A.    Yes.

11    Q.    All right.  I just want to follow up with you on your yes

12    answer.  You checked yes to number 12, which is whether you, a

13    family member, or friend either has worked or works with the

14    courts, the United States Court, Department of Justice, U.S.

15    Attorney's Office, State's Attorney's Office, or agencies,

16    federal or state.

17    A.    Um-hum.  I sought employment with the FBI.

18    Q.    You did.  Okay.  How long ago was that?

19    A.    That was at least ten years ago.

20    Q.    Okay.  Anything about that experience that would affect

21    your ability to be fair if you heard from an FBI agent or

22    witness?

23    A.    No.

24    Q.    Okay.  All right, anything else you were thinking of when

25    you checked yes to number 12?

1  A.    No.

2  Q.    All right.  Let me see if the government has any follow-up

3  for you.

4            MR. MOOMAU:  No, Your Honor.  Thank you.

5            THE COURT:  Defense?

6            MR. DAVIS:  Yes.

7  BY MR. DAVIS:

8  Q.    Ma'am, did you seek any other positions, federal positions

9  other than with the FBI over the years?

10  A.    I have worked for a federal government agency, yes.

11  Q.    DEA or any --

12  A.    No.

13  Q.    ATF or any of the other agencies?

14  A.    Nothing of that sort.

15            MR. DAVIS:  Nothing further.  Thank you.

16            THE COURT:  Thanks so much.

17            JUROR NUMBER 288:  Thank you.

18        (Exit juror number 288.)

19            THE COURTROOM DEPUTY:  All right, Your Honor, that

20  makes 35.  Did you want to go for 36 or 37 with 88 in mind?

21            THE COURT:  All right, before we bring in the next

22  one, Counsel, what's your preference?  If we want 4 alternates,

23  right, and we want to strike 88, we need two more.

24            MR. DAVIS:  I thought we were doing three.

25            THE COURT:  We said three.  You're right that we

1    initially said three.  Mr. Ulander just raised, though, that if

2    we want four, it's only one more person.  I personally think

3    that we will be fine, but with COVID and BA57 and -- I leave it

4    up to you all to tell me what you prefer.

5              MR. DAVIS:  It makes no difference to me, Your Honor.

6              MR. MOOMAU:  No, I'm fine.  I think we're okay with

7    three.

8              THE COURT:  With three?

9              MR. MOOMAU:  Yes.

10             THE COURT:  Okay.  All right, well, then, do you want

11   to do one more so we can get rid of 88?

12             MR. DAVIS:  Sure.

13             THE COURT:  Yes?

14             MR. DAVIS:  Yes.

15             THE COURT:  Okay.  All right, let's see if we can get

16   one more in the box.  Yes?

17             MR. MOOMAU:  And this includes making -- did we

18   move -- oh, never mind.  I remember.  Never mind.

19             THE COURT:  Yeah, so there is one that we just put an

20   asterisk.  She would be stricken.  She's not in the count right

21   now.

22             MR. MOOMAU:  Okay.

23             THE COURT:  And after this one, if we seat this one,

24   we'll go through and confirm.

25        (Enter juror number 301.)

1              PROSPECTIVE JUROR NO. 301,

2   a prospective juror, having been first duly sworn to answer

3   questions, was examined as follows:

4                    EXAMINATION

5                    BY THE COURT:

6   Q.    Hello.

7   A.    Hi.

8   Q.    Juror 301?

9   A.    Yes.

10  Q.    All right.  I want to follow up with you on your yes

11  answers.  You checked yes to number 15, which is whether you, a

12  family member, or friend have ever been involved in a legal

13  dispute with the United States Government or an agency of the

14  government.

15  A.    Yes.

16  Q.    Okay.  Can you tell me about that?

17  A.    It happened I want to say within the last two years.  One

18  of my friends was in Baltimore.  He got arrested.

19  Q.    Okay.

20  A.    And I believe he was charged with marijuana and an illegal

21  firearm.

22  Q.    Okay.  So you're saying that friend, based on the criminal

23  charges, is why you checked yes?

24  A.    Yes.

25  Q.    Or is there something else that happened?

1   A.   That was it.

2   Q.   That was it?  Okay.  Were you with that person when the

3   person was arrested?

4   A.   No.

5   Q.   Are you involved in any way in that case?

6   A.   No.

7   Q.   Is the fact that your friend had these charges, would that

8   affect your ability to be fair and impartial in this case as a

9   juror?

10  A.   No.

11  Q.   Okay.  Anything else you were thinking of with regard to

12  15?

13  A.   That was all.

14  Q.   That was it?  Okay.

15       You also checked 31, which is about whether a family

16  member or friend or you have ever been convicted of or accused

17  of a crime.  Were you thinking about the friend you just --

18  A.   Yes.

19  Q.   -- discussed when you checked yes to that question?

20  A.   Yes.

21  Q.   Anybody else you were thinking of?

22  A.   Just him.

23  Q.   Okay.  And then you also checked yes to number 33, which

24  is whether you, a family member, or close friend belonged to

25  any group that advocates for change in the Criminal Justice

1   System or in the Sentencing Guidelines.

2   A.    Yes.   I have some friends that are part of BLM and other

3   advocacy groups.

4   Q.    Okay.  Do you participate at all in that?

5   A.    No.

6   Q.    Okay.  Do you talk to your friends about their advocacy

7   work that they do?

8   A.    Yeah, from time to time, like what policies they want and

9   what they want to see implemented and stuff and how that would

10  change the rate of like incarceration and stuff like that and

11  better ways of improving that, things along those lines.

12  Q.    Okay.  So a couple of things about that.  If you were

13  selected as a juror, one of my instructions would be that any

14  feelings you might have about the laws, whether they should

15  change or not, you have to keep them outside the courtroom and

16  that you must follow my instructions on the law even if you

17  disagree with them.  Would you be able to follow my

18  instructions?

19  A.    Yes.

20  Q.    Okay.  Any hesitation about that?

21  A.    No.

22  Q.    Okay.

23        The other thing, since you raised it, just to be clear,

24  I'll instruct you that any possible punishment that could

25  follow if the government proves the case against the defendant

1  is not for you to consider.  You are to put the question of

2  punishment totally out of your head.  Would you be able to do

3  that?

4  A.  Yeah.

5  Q.  Okay.

6      All right, you also -- oh, no -- that was 33.

7          THE COURT:  All right.  Government, any follow-up?

8          MR. MOOMAU:  No, Your Honor.

9          THE COURT:  All right.

10         MR. DAVIS:  None.

11         THE COURT:  Okay.  Thank you so much, sir.  I

12 appreciate it.

13         JUROR NUMBER 301:  Thank you.

14     (Exit juror number 301.)

15         THE COURT:  All right.  Counsel, let's hold up

16 because we're at 36, and I'm going to read off who I see is in,

17 and if everyone can follow along.

18         THE COURTROOM DEPUTY:  And, Your Honor, just to

19 confirm, is this with 88 out or with 88 in?

20         THE COURT:  This is with 88 out.

21         THE COURTROOM DEPUTY:  Okay.

22         THE COURT:  Okay.  So I've got in number 5, 9, and 11

23 on the first page; 30, 31, 38 on the second page; 57, 64 on the

24 third page; 78, 85, 87 on the next page; 89, 96, 104, 110, 125,

25 so the whole next page; 126, 131, 133 on the next page; 146,

1  154, 172, 173, 187, 211, 223, 230, 234, 240, 260, 262, 274,

2  283, 288, and 301.  And that brings us to 35.

3       Do you all have the same count?  Government?

4            MR. MOOMAU:  Yes, Your Honor.

5            THE COURT:  Okay.  Defense?

6            MR. DAVIS:  Yes.

7            THE COURT:  Mr. Ulander?

8            THE COURTROOM DEPUTY:  Yes, Your Honor.

9            THE COURT:  Okay.  And let's make sure we are doing

10  the math right.  So we have 35 in the box.  We need 12 plus 3

11  is 15.  10, 6, 1 and 1 or 2 and 2 for alternates.  I can't

12  remember, Mr. Ulander.

13            THE COURTROOM DEPUTY:  Two strikes per alternate.

14            THE COURT:  So two strikes per alternate?

15            THE COURTROOM DEPUTY:  There are seven jurors in the

16  alternate pool.  Counsel, each side, gets two strikes, taking

17  out four alternate jurors, leaving three remaining.

18            THE COURT:  Got it.  Okay.  So that would mean we

19  need -- all right.  I'm messing up the math.  Mr. Ulander, you

20  give it to us.

21            THE COURTROOM DEPUTY:  What I can say at this point

22  for ease of counting --

23            THE COURT:  Yep.

24            THE COURTROOM DEPUTY:  We have 28 jurors --

25            THE COURT:  Yep --

1        THE COURTROOM DEPUTY:  -- in between jurors number 5

2    and 234.

3        THE COURT:  Okay.

4        THE COURTROOM DEPUTY:  That's 12 jurors with 10

5    strikes for the defense, 6 for the government.

6        THE COURT:  Yep.

7        THE COURTROOM DEPUTY:  Then the alternate panel will

8    be starting at juror 240.  There will be 7 alternate jurors

9    between 240 and 301 --

10        THE COURT:  Yep.  Got it.

11        THE COURTROOM DEPUTY:  -- making a seven-member

12    alternate panel.

13        THE COURT:  Yep.  That looks right to me.  Any

14    question or concern from either side?

15        MR. DAVIS:  No.

16        MR. MOOMAU:  None.

17        THE COURT:  All right.  So are we ready to get you

18    what you need to start exercising your preemptories?  Yes?

19        MR. MOOMAU:  Yes.

20        MR. DAVIS:  Yes, we're ready.

21        THE COURT:  All right.  Mr. Ulander.

22        THE COURTROOM DEPUTY:  I would just need a minute or

23    two to fix up the paperwork, and I'll get it to the parties so

24    we can start strikes.

25        THE COURT:  Okay.  So you just let me know when

1    you're ready for me.

2             THE COURTROOM DEPUTY:  Yes, Your Honor.

3             THE COURT:  All right.  Thanks so much.

4             THE COURTROOM DEPUTY:  This Honorable Court now

5    stands in recess.

6        (Recess taken, 3:06 P.M. - 3:38 P.M.)

7             THE COURTROOM DEPUTY:  May I have your attention,

8    please.  This Honorable Court now resumes in session.

9             THE COURT:  All right, everybody, I understand that

10   you all have exercised your strikes, and we have our jurors.

11   I'm going to have Mr. Ulander just confirm who he has for the

12   jurors and the alternates; and once we do that, if there's no

13   issues, we'll get them up here, and I'll talk to you all about

14   scheduling while we wait.

15       Mr. Ulander.

16            THE COURTROOM DEPUTY:  Currently, with all of our

17   strikes in place, juror number 30 is going to be juror number

18   1; juror number 31 is going to be juror number 2; juror number

19   64 is going to be juror number 3; juror number 78 is going to

20   be juror number 4; juror number 85 is going to be juror number

21   5; juror number 87 is going to be juror number 6; juror number

22   131 is going to be juror number 7; juror number 154 is going to

23   be juror number 8; juror number 172 is going to be juror number

24   9; juror number 187 is going to be juror number 10; juror

25   number 211 is going to be juror number 11; juror number 223 is

1  going to be juror number 12; juror number 240 is going to be

2  alternate juror number 1; juror number 262 is going to be

3  alternate juror number 2; and juror number 274 is going to be

4  alternate juror 3.

5              THE COURT:  Okay.

6              MR. MARTIN:  Mr. Ulander, would you be so kind to

7  tell us who juror number 2 is again, please.

8              THE COURTROOM DEPUTY:  Juror number 2?

9              MR. MARTIN:  Please.

10             MR. DAVIS:  31.

11             THE COURTROOM DEPUTY:  Juror number 31 is going to be

12  juror number 2.

13             MR. MARTIN:  Thank you.

14             THE COURT:  Okay.  Are we ready to bring them up?

15             MR. DAVIS:  We are.

16             THE COURT:  All right.

17       And so while we wait for them, I do have preliminary

18  instructions.  They are the standard ones once they're sworn

19  in.  We should be done by ten to four.  Do you all wish to

20  break for the day and start fresh with openings?

21             MR. MOOMAU:  We would, Your Honor.

22             THE COURT:  Okay.  How long will openings be in the

23  morning?

24             MR. MOOMAU:  For the government, Your Honor, it's

25  longer than I want it to be, but it's going to be about a half

1      an hour.

2               THE COURT:  Okay.  All right, Defense?

3               MR. MARTIN:  Five minutes.

4               THE COURT:  Okay.  All right, so then we'll start

5      promptly at 9:30, and we'll expect testimony before the morning

6      break.

7           All right.  Have you all come to some agreement as to

8      exchange of witnesses so that there's at least a rough

9      understanding of the lineup?

10              MR. MOOMAU:  We've already done that, Your Honor.

11              THE COURT:  Okay.  Great.

12              MR. MOOMAU:  And the government, we'll be using a

13     PowerPoint in opening.  I shared that with the defense.

14              THE COURT:  Okay.

15              MR. MOOMAU:  I think there's no objection.

16              THE COURT:  All right, great.  Okay, so then -- this

17     will be good because we'll have time to make sure everything

18     works well so we can roll in the morning.

19              MR. MOOMAU:  Your Honor, as far as the time for the

20     trial, we really expect we're going to finish maybe even

21     substantially earlier than what we thought, and that's based on

22     our conversation with the defense.  We really have been rushing

23     to make sure we can use all the time.  Like, say, tomorrow, so

24     there's a possibility like, say, tomorrow we could finish

25     earlier than -- because we will have put on all of our

1    witnesses.

2           THE COURT:  Okay.

3           MR. MOOMAU:  We were hoping -- because we have

4    witnesses like the medical examiner.

5           THE COURT:  That's scheduled.

6           MR. MOOMAU:  Yes, and can't come in until Wednesday

7    morning.

8           THE COURT:  Okay.

9           MR. MOOMAU:  And then we have a cooperator that's

10   going to testify Wednesday that we think will -- with direct

11   and cross might take most of the day, and then that would

12   probably finish that day; but we might have another police

13   officer witness.

14       But what I'm saying is there might be some days we finish

15   early, but the trial isn't going to go on longer than what the

16   allotted time is.

17          THE COURT:  Okay.

18          MR. MOOMAU:  It's going to be --

19          THE COURT:  And it may even be shorter?

20          MR. MOOMAU:  Yes.

21          THE COURT:  Okay.

22          MR. MOOMAU:  Yes.

23          THE COURT:  All right.  Well, you know, you're

24   seasoned attorneys.  You know how to fill the day as best you

25   can, and if you run out, you run out.  I'm not -- and I'm

 1   expecting that that happens sometimes; but as long as we're not

 2   super behind and we're getting to the end of the week talking

 3   about another week and plus, I'm okay.

 4          MR. MOOMAU:  Thank you, Your Honor.

 5          THE COURT:  So while we wait, Counsel, we're going

 6   to, for a couple of reasons, seat the second -- we're going to

 7   put five, five, and five, and we're going to seat the second

 8   and third row one over from the end of the jury box.  First,

 9   because it gives you all a little social distancing; and

10   second, because that way the jurors can see better.  They can

11   see everyone for the defense, as well as the government.  So I

12   don't anticipate there's going to be a problem with it.

13          And, you know, if past is prologue, as soon as a juror

14   gets his or her seat, they know where their seat is and we

15   don't have a problem so.

16          THE COURTROOM DEPUTY:  All rise for the jury.

17      (Open Court - Jurors Present.)

18          THE COURT:  All right, everyone, you could have a

19   seat.

20      (Members of the Jury Panel complied.)

21          THE COURTROOM DEPUTY:  Members of the jury panel, as

22   I call your juror number, please stand, vocally acknowledge

23   your presence, and then be seated.

24      Juror number 30.

25          JUROR NUMBER 30:  Here.

1          THE COURTROOM DEPUTY:  Juror number 31.

2          JUROR NUMBER 31:  Here.

3          THE COURTROOM DEPUTY:  Juror number 64.

4          JUROR NUMBER 64:  Present.

5          THE COURTROOM DEPUTY:  Juror number 78.

6          JUROR NUMBER 78:  Here.

7          THE COURTROOM DEPUTY:  Juror number 85.

8          JUROR NUMBER 85:  Here.

9          THE COURTROOM DEPUTY:  Juror number 87.

10         JUROR NUMBER 87:  Here.

11         THE COURTROOM DEPUTY:  Juror number 131.

12         JUROR NUMBER 131:  Here.

13         THE COURTROOM DEPUTY:  Juror number 154.

14         JUROR NUMBER 154:  Here.

15         THE COURTROOM DEPUTY:  Juror number 172.

16         JUROR NUMBER 172:  Present.

17         THE COURTROOM DEPUTY:  Juror number 187.

18         JUROR NUMBER 187:  Present.

19         THE COURTROOM DEPUTY:  Juror number 211.

20         JUROR NUMBER 211:  Here.

21         THE COURTROOM DEPUTY:  Juror number 223.

22         JUROR NUMBER 223:  Here.

23         THE COURTROOM DEPUTY:  Juror number 240.

24         JUROR NUMBER 240:  Present.

25         THE COURTROOM DEPUTY:  Juror number 262.

1          JUROR NUMBER 262:  Here.

2          THE COURTROOM DEPUTY:  Juror number 274.

3          JUROR NUMBER 274:  Present.

4          THE COURTROOM DEPUTY:  Members of the jury panel, as

5    I call your juror number, will you please stand, come forward

6    to our jury box, and take a seat in the jury box.

7          Juror number 30 is now juror number 1.  Please come

8    forward and take a seat in the furthest seat in the front row.

9          Juror number 31 is now juror number 2.

10         Juror number 64 is now juror number 3.

11         Juror number 78 is now juror number 4.

12         Juror number 85 is now juror number 5.

13         Juror number 87 is now juror number 6.  Please take a seat

14   in the second to last seat in the second row.

15         Juror number 131 is now juror number 7.

16         Juror number 154 is now juror number 8.

17         Juror number 172 is now juror number 9.

18         Juror number 187 is now juror number 10.

19         Juror number 211 is now juror number 11.  Please take a

20   seat in the second to the last seat in the back row.

21         Juror number 223 is now juror number 12.

22         Juror number 240 is now alternate juror 1.

23         Juror number 262 is now alternate juror 2.

24         And juror number 274 is now alternate juror 3.

25              THE COURT:  All right, Counsel, let's try out our

1  remote devices, if you would.

2      (Bench conference on the record:

3          THE COURT:  Can you all hear me?

4      (No response.)

5          THE COURT:  All right.  Can you all hear me?

6      (No response.)

7          THE COURT:  All right, Ms. Grossi, can you say

8  something?  Let me just make sure I hear you.

9          MS. GROSSI:  Your Honor, can you hear me?

10          THE COURT:  I think into this microphone.  Into the

11  microphone in front of you.

12          MS. GROSSI:  Your Honor, can you hear me?

13          THE COURT:  I sure can.

14      Mr. Moomau?

15          MR. MOOMAU:  Yes.  Good afternoon.

16          THE COURT:  Okay.  Mr. Davis?

17          MR. DAVIS:  I can hear, yes.

18          THE COURT:  All right.  And if you would speak into

19  the microphone.

20      And Mr. Martin, how are you doing with yours?

21      (No response.)

22          THE COURT:  All right.  Mr. Martin, can you hear us?

23          MR. MARTIN:  I can, yes.

24          THE COURT:  All right.  And when you respond, you

25  need to speak into one of the table microphones.

1          MR. MARTIN:  Thank you, Your Honor.

2          THE COURT:  Okay.

3      All right, so while we're all on this record, does the

4  government have any objections to our jury?

5          MR. MOOMAU:  We do not, Your Honor.

6          THE COURT:  Okay.  Defense, are they acceptable?

7          MR. DAVIS:  Yes.

8          THE COURT:  Good.  Okay, we'll swear them in.

9  Thanks.)

10      (The bench conference was concluded.)

11          THE COURTROOM DEPUTY:  Members of the Jury Panel

12  selected in the present case, please stand and raise your right

13  hand.

14      (Members of the Jury Panel complied.)

15          THE COURTROOM DEPUTY:  You and each of you do

16  solemnly promise, declare, and/or affirm that you shall well

17  and truly try the issues joined in the case of the United

18  States of America versus Jose David Navarro-Cervellon and give

19  a true verdict according to the evidence?

20      Please state "I do."

21      (Members of the Jury Panel reply, "I do.")

22          THE COURTROOM DEPUTY:  Thank you.  You may be seated.

23  Jury sworn, Your Honor.

24          THE COURT:  All right.

25      Well, thank you so much for your service in advance of

1  this trial and also throughout today.  You have been wonderful.

2  We very much appreciate it.

3       As probably you've figured out, we are -- we put your

4  safety and your time as paramount.  So if there is anything in

5  terms of your safety that you're concerned about, you just let

6  us know.  We've got Hepa filters in the courtroom.  We're all

7  going to stay masked when we're not speaking.  The plexiglass

8  is up for that reason, and you'll see back in the jury room we

9  have similar protection for you all.

10      What we're going to do now is I'm going to give you some

11 preliminary instructions, which will help guide you as jurors

12 throughout the case.  That should probably take about 15 or

13 20 minutes and then we're going to let you go for the day and

14 get some rest, figure out how things work in the back in your

15 jury room, because when you come back in the morning, you will

16 not come through this door; you'll come through a side door

17 that Mr. Ulander will show you that goes right into the jury

18 room.  Okay?

19      All right, so with that, let's start.

20      Now that you've been sworn, I'll give you the preliminary

21 instructions to guide you in your participation in this trial.

22 This is a criminal case in which the defendant, Jose David

23 Navarro-Cervellon, is charged with three counts; conspiracy to

24 use facilities of interstate commerce in the commission of

25 murder for hire; second, use of facilities in interstate

commerce in the commission of murder for hire; and third,
murder resulting from the use, carrying, brandishing, and
discharging of a firearm during and in relation to a crime of
violence.

These charges relate to the murder of Ramiro Moya that
occurred on November 30, 2016, on Crittenden Street in
Hyattsville, Maryland.

It will be your duty to find from the evidence what the
facts are.  You and you alone will be the judges of the facts.
You will then have to apply the facts to the law as I instruct
you.  You must follow the law whether you agree with it or not.

Nothing that I may say or do during the trial is intended
to indicate or should it be taken by you as indicating what
your verdict should be.  The evidence from which you'll find
the facts will consist of testimony of witnesses, documents,
and other things received into the record as exhibits and any
facts the lawyers agree to stipulate to or that I might
instruct you to find.

Now, certain things are not evidence and must not be
considered by you, and I'll list them for you now.  Statements,
arguments, and questions by the lawyers are not evidence.
Objections to questions are not evidence.  Lawyers have an
obligation to their clients to make objections when they
believe evidence being offered is improper under the Rules of
Evidence.  You should not be influenced by the objection or by

1  my ruling on it.  If the objection is sustained, ignore the

2  question.  If it is overruled, treat the answer like any other.

3       If you are instructed that some item of evidence is

4  received for a limited purpose only, you must follow that

5  instruction.  Testimony that I have excluded or told you to

6  disregard is not evidence and must not be considered.  Anything

7  that you may have seen or heard outside the courtroom is not

8  evidence and must be disregarded.  You are to decide this case

9  solely on the evidence presented here in this courtroom.

10      Now, there are two kinds of evidence, direct and

11 circumstantial.  Direct evidence, as the name suggests, is

12 direct proof of a fact such as testimony of an eyewitness.

13 Circumstantial evidence is proof of facts from which you may

14 infer or conclude that other facts exist.  I'll give you

15 further instructions on these as well as other matters in the

16 case, but keep in mind that you may consider both kinds of

17 evidence.

18      It will be up to you to decide which witnesses to believe,

19 which witnesses not to believe, and how much of a witness'

20 testimony to accept or reject.  I'll give you some guidelines

21 for determining the credibility of the witnesses at the end of

22 the case.

23      Now, as you know, this is a criminal case, and there are

24 three basic rules about a criminal case that you must keep in

25 mind.  First, the defendant is presumed innocent until proven

1  guilty.  The indictment brought by the government against the

2  defendant is only an accusation and nothing more.  It is not

3  proof of guilt or anything else.  The defendant, therefore,

4  starts out with a clean slate.

5      Second, the burden of proof is on the government until the

6  very end of the case.  The defendant has no burden to prove

7  their innocence or to present any evidence or to testify.

8  Since the defendant has the right to remain silent, the law

9  prohibits you from arriving at your verdict by considering that

10  the defendant may not have testified.

11      Third, the government must prove the defendant's guilt

12  beyond a reasonable doubt.  I'll give you further instructions

13  on this point later, but bear in mind in this respect a

14  criminal case is different than a civil case.

15      Now, a few words about your conduct as jurors.  You as

16  jurors must decide the case based solely on the evidence

17  presented here within the four walls of this courtroom.  This

18  means from now until we meet again and during the trial, you

19  must not conduct any independent research about this case, the

20  matters in the case, and the individuals or entities involved

21  in the case.

22      In other words, you should not consult dictionaries or

23  reference materials.  You should not search the incident, the

24  internet, social media, websites, blogs, or any, use any other

25  electronic tools to obtain information about this case or to

1   help you decide the case.  Please, do not try to find out any

2   information from any source outside the confines of this

3   courtroom.

4        Until you retire to deliberate, you may not discuss the

5   case with anyone, even each other, your fellow jurors.  After

6   you retire to deliberate, you may begin discussing this case

7   with your fellow jurors, but you cannot discuss the case with

8   anyone else until you have returned a verdict and the case is

9   at an end.

10        If anyone should try to approach you or talk to you about

11  this case, or if any information about this case is brought to

12  your attention in any form other than what you hear in this

13  courtroom, please do not discuss that with anyone, including

14  each other, your fellow jurors.  Rather, please write a note

15  regarding such matter and give it to Mr. Ulander, the courtroom

16  deputy, so that he may bring it to the Court's attention

17  promptly.

18        I know that many of you use cell phones, Smart Phones,

19  iPhones, and other personal data devices.  You use the internet

20  and social media sites frequently and take advantage, as many

21  of us do, with the many tools of technology.  You simply may

22  not use them during the trial in any way related to this case.

23  You also must not talk to anyone at any time about the case or

24  use the tools, these tools to communicate electronically with

25  anyone about the case.  This includes family or friends.

1      You may not communicate with anyone about the case on your

2  cell phone, through email, BlackBerry, iPhone, text messaging,

3  Twitter, through any blog or website including Facebook,

4  Instagram, Snap Chat, Google, MySpace, LinkedIn, or YouTube.  I

5  think you get the point.  You may not use any similar

6  technology or social media even if I have not specifically

7  mentioned it here.

8      I expect you to inform me as soon as you become aware of

9  another juror's violation of these instructions.  A juror who

10  violates these instructions jeopardizes the fairness of these

11  proceedings and a mistrial could result, which would require

12  the entire process to start over.

13      Finally, do not form any opinion until all the evidence is

14  in.  Keep an open mind until you start your deliberations at

15  the end of the case.

16      Now, if you want to take notes during the trial, you may

17  do so on the notepads provided to you by Mr. Ulander; however,

18  it may be difficult to take detailed notes and pay attention to

19  what the witnesses are saying at the same time.  If you do take

20  notes, be sure that your note-taking does not interfere with

21  your listening to and considering all of the evidence.  Also,

22  if you do take notes, do not discuss them with anyone before

23  you begin your deliberation.

24      You may not take your notes home with you at the end of

25  the day or at the end of trial.  You must leave them with us at

1   the end of each day and at the end of each trial.  And

2   Mr. Ulander will give you more instructions on that.

3        If you choose not to take notes, remember, it is your own

4   individual responsibility to listen carefully to the evidence.

5   You cannot give that responsibility to someone else who is

6   taking notes.  Our system depends on the judgment of all the

7   members of the jury, and so you all must remember the evidence

8   in this case.

9        Now, trial will begin each morning at 9:30 and end around

10  5 p.m.  So be sure to get here, you know, 9:25, no later, so

11  that we can start on time because I will, as I know the parties

12  will, be very mindful of your time and very respectful of it.

13  So we want to make sure that you get in and out on time.

14       As I mentioned in the open voir dire, we'll take a morning

15  break, an afternoon break, and lunch for one hour.  Sometimes

16  we'll end early and that's a benefit because you'll get on the

17  road faster, but you should at least budget that we'll stay

18  until five for those jury days.

19       Please park in the open lot closest to the entryway.

20  Lighting is best there.  I guess in the summertime that's not

21  as much of a concern, but these instructions are given in the

22  winter, too, and it gets dark really early.  And so in that

23  regard, if at any point you want a court security person to

24  walk you to your car, we're here; just let Mr. Ulander know.

25       Now, in the morning, we'll first hear from the government

1   who will make what's called an opening statement.  Now, an

2   opening statement is simply an outline to help you understand

3   the evidence as it comes in.  Next, counsel for the defendant

4   may, but does not have to make an opening statement.  Opening

5   statements are not evidence, and they are not permitted to be

6   arguments either.

7       The government will then present its witnesses, and

8   counsel for the defendant may cross-examine those witnesses.

9   Following the government's case, the defendant may, if he

10  wishes, present witnesses whom the government may

11  cross-examine.  And after all the evidence is in, I will

12  instruct you on the law, and then the attorneys will present

13  their closing arguments to summarize and interpret the evidence

14  for you.  At that point, after that is when you will retire to

15  deliberate on your verdict.

16      Obviously, that's all not going to happen tomorrow.  What

17  will happen first thing in the morning is opening statements,

18  and we'll begin promptly at 9:30.

19      So those are my instructions for you.  I'll just remind

20  you as you leave today, no talking about this case.  You can

21  talk about -- get to know each other in other ways.  Get home

22  safely.  No researching, no internetting, no texting, no

23  tweeting, no nothing about this matter.  We'll see you back

24  here bright and early.

25      Does anyone have any questions before Mr. Ulander takes

1    you back to the jury room?  All right.  Yeah?

2          A JUROR:  Will we be called for the next nine

3    consecutive days, or are we breaking for the weekend?

4          THE COURT:  So let me go over that again, because I

5    understand from others that was a little bit confusing during

6    voir dire.  So we're going to sit tomorrow, Wednesday, and

7    Thursday, 9:30 to 5:00.  We will not sit on Friday.  Come back

8    on Monday.  Monday, Tuesday, Wednesday, Thursday, not sit on

9    Friday.  We may or may not need all of those days.  And

10   whenever the case ends, you'll begin deliberations.

11       So that's at least the next two weeks that we know of

12   locked.  Obviously, something that may affect how long you're

13   here is deliberations but that -- we have a few days before

14   we're -- and what I'll try to do also, to the best we can, is

15   just keep you posted so that you know if we're ahead of

16   schedule or not.  Okay?

17       Does that answer your question?  Okay.  So you know your

18   Fridays are free.  All right.

19       Okay.  We'll have Mr. Ulander take you back.  We'll see

20   you bright and early 9:25, and we'll be ready to go at 9:30.

21   Thank you so much.

22          THE COURTROOM DEPUTY:  All rise for the jury.

23       (Open Court - Jury Not Present.)

24          THE COURT:  All right, everybody.  Does the

25   government need anything from me?

1        MR. MOOMAU:  No.

2        THE COURT:  No?

3        MR. MOOMAU:  See you tomorrow, Your Honor.  Thank

4  you.

5        THE COURT:  All right, very good.

6     Defense?

7        MR. DAVIS:  Nothing, Your Honor.

8        THE COURT:  All right.  See you bright and early.

9  We'll start at 9:30.  Thanks so much.

10     (The proceedings were adjourned at 4:09 P.M.)

11     I, Marlene Kerr, FCRR, RPR, CRR, RMR, certify that the

12  foregoing is a correct transcript of the stenographic record of

13  proceedings in the above-entitled matter.

14

15                    Dated this 2nd day of January, 2023.

16

17                    _____
                            /s/
                         Marlene Kerr
18                  Federal Official Court Reporter

19

20

21

22

23

24

25